## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| The University of the Arts, *et al.*,[1] | Case No. 24-12140 (BLS) (Jointly Administered) |
| Debtors. | **Hearing Date: TBD – Expedited Consideration Requested** **Objections Due: TBD – Expedited Consideration Requested** |

## MOTION OF CHAPTER 7 TRUSTEE FOR ENTRY OF ORDER APPROVING CERTAIN EXPENSE REIMBURSEMENTS, STALKING HORSE PROCEDURES, AND OTHER GENERAL BID PROCEDURES IN CONNECTION WITH THE SALE OF THE DEBTORS' REAL ESTATE AND GRANTING RELATED RELIEF

Alfred T. Giuliano, the duly appointed chapter 7 trustee (the "**Trustee**") of the estates (the "**Estates**") of the above-captioned debtors (collectively, the "**Debtors**"), hereby files this motion (the "**Motion**") under sections 105(a) and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") for entry of an order substantially in the form annexed hereto as **Exhibit A** (the "**Bid Procedures Order**"): (i) approving certain expense reimbursements, Stalking Horse Procedures (defined below), and other general bid procedures (the "**Bid Procedures**")[2] by which the Trustee will solicit and select the highest or otherwise best offer(s) for the Real Property (as defined below); and (ii) granting related relief (the "**Bid Procedures Relief**"). The Trustee will file separate motions for the approval of the sales of Real Property.

---

[1]    he debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors, where applicable, are:  The University of the Arts (9911); and U of Arts Finance LLC (9911).

[2]    A copy of the Bid Procedures is annexed as **Exhibit 1** to the Bid Procedures Order.

In support of this Motion, the Trustee respectfully represents as follows:

## **JURISDICTION**

1.       This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Pursuant to Local Rule 9013-1(f), the Trustee consents to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.        Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.       The statutory predicates for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code, as complimented by Bankruptcy Rules 2002 and 6004, and Local Rule 6004-1.

## **BACKGROUND**

4.       On September 13, 2024 (the "**Petition Date**"), the Debtors each filed a voluntary petition under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Court**").

5.       Alfred T. Giuliano has been appointed as chapter 7 trustee for the Debtors' estates. The Section 341 meeting of creditors was held and concluded.

6.       Prior to the Petition Date, Debtor The University of the Arts ("**UArts**") was a Pennsylvania nonprofit corporation serving as an institute of higher learning focusing on the arts.

7.       The Trustee has retained Jones Lang  LaSalle Americas, Inc. ("**JLL**"), as the Trustee's exclusive real estate broker to assist with the sale of the nine properties in Philadelphia,

Pennsylvania owned by UArts: (i) Anderson Hall – 329-335 S. Broad Street; (ii) Furness Hall & Outer Structures – 320R. S. Broad Street; (iii) Hamilton Hall & Outer Structures – 320 S. Broad Street; (iv) Spruce Hall – 1224-1234 Spruce Street; (v) Gershman Hall/Student Center – 401 S. Broad Street; (vi) Juniper Hall – 311 S. Juniper Street; (vii) Arts Bank – 601 S. Broad Street; (viii) Philadelphia Arts Alliance – 251 S. 18th Street; and (ix) Terra Hall – 201-211 S. Broad Street (collectively, the "**Real Property**").

8.       Since the retention of JLL was approved on November 1, 2024, JLL has been aggressively marketing the Real Property.  JLL has distributed more than 27,000 emails to potential buyers, has signed up more than 150 CA/NDAs, and has already completed approximately 40 property tours.  Potential buyers have been asked to submit preliminary offers by December 11, 2024.  After the preliminary offers have been reviewed by the Trustee and JLL (in consultation with the Prepetition Secured Creditors[3]), potential buyers will be instructed to submit more formal offers by December 17, 2024, and to provide additional information in connection with their ability to close on a transaction.

9.        As the sale process involves nine separate parcels of Real Property, the Trustee and JLL require maximum flexibility in connection with the process to be used for each particular parcel of Real Property, as each parcel is unique.

10.      While certain parcels of Real Estate may require more diligence and time to sell than others, the Trustee's goal is to close on the sale of all of the Real Property by May 31, 2025, in order to avoid ongoing administrative expenses associated with maintaining the Real Property.

---

[3]    As defined in the Final Order (A) Authorizing the Trustee to Use Cash Collateral, (B) Granting Adequate Protection, (C) Modifying the Automatic Stay, (D) Approving Sharing Arrangement Under Federal Rule of Bankruptcy Procedure 9019, and (E) Granting Related Relief [Dkt. No. 93] (the "**Final Cash Collateral Order**").

4936-8229-4020, v. 2

The Trustee also expects that the sale of some parcels of Real Property may close well before such date.

## **RELIEF REQUESTED**

11.     By this Motion, the Trustee seeks entry of the Bid Procedures Order: (i) approving certain expense reimbursements, Stalking Horse Procedures, and other general bid procedures by which the Trustee will solicit and select the highest or otherwise best offer(s) for the Real Property; and (ii) granting related relief.

12.     Following completion of the Bidding Process (defined below) for each parcel of Real Property, the Trustee intends to file a motion to approve the sale of such parcel of Real Property free and clear of all liens.  The Trustee anticipates filing such sale motions on a rolling basis.

## A.    **The Proposed Bid Procedures**

13.     The Trustee seeks approval of the Bid Procedures, which have been designed to be flexible and open to all bids for any and all of the Real Property. and to facilitate a robust sales process, thereby generating the greatest value for the estate of UArts (the "**Estate**") under the circumstances.

14.     As set forth above, potential bidders are being asked to submit preliminary bids by December 11, 2024, and more formal bids by December 17, 2024, with additional information concerning their ability to close.

15.     **Interested bidders that submit a formal bid by December 17, 2024, and propose a purchase price that is consistent with the Trustee's view of the value of the Real Property subject to the bid will be deemed a "Preliminary Qualified Bidder" under the Bid Procedures. "Preliminary Qualified Bids" <u>may</u> have due diligence contingencies.  Final bids**

- 4 -

**will be due after a Preliminary Qualified Bidder has conducted due diligence. At the end of the due diligence period, a party that submits a binding bid with no contingencies substantially in the form of the Asset Purchase Agreement in the data room may have its bid selected by the Trustee as a "Final Qualified Bid."**

16.     The Bid Procedures describe, among other things, the requirements and manner in which bidders and bids become "qualified," the coordination of due diligence efforts, the receipt and negotiation of bids received, and the selection and approval of any ultimately successful bidders (the "**Bidding Process**").

17.     Set forth below is a summary of certain key terms of the Bid Procedures as required under Local Rule 6004-1(c)(i):[4]

i.     <u>Due Diligence</u>: To receive access to due diligence, a party must submit an executed NDA to JLL.[5] The Trustee will afford any interested bidder that has executed an NDA access to the data room and will attempt to accommodate any requests for a tour of the Real Property. The Trustee reserves the right to withhold any diligence materials that the Trustee, in consultation with his advisors, determines are business-sensitive or otherwise not appropriate for disclosure to an interested bidder. Neither the Trustee nor his representatives shall be obligated to furnish information of any kind whatsoever to any person. Bidders shall conduct their own due diligence and shall not have any claims or causes of action against the Trustee, JLL or their professionals, representatives, agents or independent contractors for the completeness or accuracy of any information provided to them by the Trustee, JLL or their professionals, representatives, agents or independent contractors.

ii.     <u>Participation and Preliminary Qualified Bid Requirements</u>: To ensure that only bidders with a serious interest in purchasing some or all of the Real Property participate in the Bidding Process, the Bid Procedures provide for certain minimal requirements for a potential bidder to become a

---

[4]     This is meant to be summary in nature only. In the event of any inconsistencies between this summary and the Bid Procedures, the terms of the Bid Procedures shall control. Capitalized terms used in this summary which are not otherwise defined in the Motion shall have the meanings ascribed to them in the Bid Procedures.

[5]     To be clear, execution of an NDA is only required to receive access to diligence material in the data room. The failure to execute an NDA will not necessarily preclude an interested bidder from submitting a bid or becoming a Preliminary Qualified Bidder or Final Qualified Bidder if such bidder determines to submit a bid without access to diligence material.

"**Preliminary Qualified Bidder**". These requirements, which are set forth more fully in the Bid Procedures, include: (i) providing the Trustee with certain corporate information regarding the bidder and certain financial assurances as to such bidder's ability to close a transaction for the subject Real Property; and (ii) the submission of a proposal regarding the subject Real Property, which may contain a due diligence contingency, and the consideration to be paid, which (y) must be consistent with the Trustee's view of value for the subject Real Property and (z) if a Bid comprises two or more parcels of Real Estate, include the allocation of the total consideration to be paid that is attributable to each parcel of Real Estate contemplated by the Bid.

iii. <u>Access Agreement</u>. Preliminary Qualified Bidders that execute an Access Agreement shall be permitted to conduct due diligence on the Real Property that is subject to their Preliminary Qualified Bid through February 1, 2025.

iv. <u>Reimbursement for Due Diligence</u>. In consultation with his advisors, and the Prepetition Secured Creditors and their advisors, the Trustee may select not more than three Preliminary Qualified Bidders per parcel of Real Property to be eligible for reimbursement for due diligence (and may choose less or none). If a Preliminary Qualified Bidder is selected for reimbursement for due diligence ("**Due Diligence Reimbursement**"), in order to be eligible for reimbursement of its documented due diligence expenses not to exceed $50,000, such Preliminary Qualified Bidder must submit a Final Qualifying Bid (defined below) that the Trustee, in consultation with his advisors and the Prepetition Secured Creditors and their advisors, determines is still a competitive offer for the respective Real Property relative to the other Final Qualifying Bids for the applicable Real Property. Any Due Diligence Reimbursement shall be payable solely from the proceeds of a closing on the sale of the subject Real Property under a Successful Bid for the subject property. For the avoidance of doubt, any Successful Bid(s) shall not be eligible for the Due Diligence Reimbursement.

v. <u>Final Qualified Bid Requirements</u>: To ensure that only bidders with a serious interest in purchasing some or all of the Real Property participate in the final bidding process, certain minimal requirements must be met for such bid to become a "**Final Qualified Bid**" (and such bidder to become a "**Final Qualified Bidder**") and must include:

1. <u>Good Faith Deposit</u>: A Bid must be accompanied by a deposit in the amount of ten percent (10%) of the purchase price contained in the Asset Purchase Agreement (as defined below), to a segregated account to be identified and established by the Trustee (the "**Good Faith Deposit**").

2. <u>Executed Agreement</u>:  A Bid must be based on the Form APA[6] and must include binding, executed transaction documents, signed by an authorized representative of such Bidder, pursuant to which the Bidder proposes to effectuate a Sale Transaction (an "**Asset Purchase Agreement**").  **Any Asset Purchase Agreement must provide that the Bidder will close on a sale of the Real Property by no later than May 31, 2025, or earlier as instructed by the Trustee as per such parcel of Real Property.**  A Bid also must include a copy of a redline reflecting all of the changes to the Form APA requested by the Bidder (a "**Redline APA**").

3. <u>Purchase Price</u>:  The proposed purchase price for the subject Real Property must be consistent with the Trustee's view of the value for the subject Real Property (*i.e.*, a low-ball offer will not be considered Final Qualifying Bid).

4. <u>Real Property to be Purchased</u>: A Bid may be for any parcel of Real Property or for all of the Real Property and must identify with particularity any parcel of Real Property that the Bidder proposes to purchase and, if two or more parcels of Real Property are identified, provide the allocation of the Purchase Price that is attributable to each parcel of Real Property.

5. <u>Designation of Assigned Contracts</u>:  A Bid must identify with particularity each and every contract and lease with respect to which the Bidder seeks assignment from the Trustee.

6. <u>Designation of Assumed Liabilities</u>.  A Bid must identify with particularity any and all liabilities that the Bidder proposes to assume.

7. <u>Corporate Authority</u>:  A Bid must include written evidence reasonably acceptable to the Trustee demonstrating appropriate corporate authorization to consummate the proposed Sale Transaction; *provided that*, if the Bidder is an entity specially formed for the purpose of effectuating the Sale Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Trustee of the approval of the Sale Transaction by the equity holder(s) of such Bidder.

8. <u>Disclosure of Identity of Bidder</u>:  A Bid must fully disclose the identity of each entity that will be bidding for or purchasing the Real Property, including any equity holders, in the case of a Bidder which

---

[6]    A Word copy of the Form APA will be available in the data room.  Also, a party can request a copy by contacting counsel to the Trustee, Chipman Brown Cicero & Cole, LLP, Attn: David Carickhoff (carickhoff@chipmanbrown.com) and Alan Root (root@chipmanbrown.com).

is an entity specially formed for the purpose of effectuating the contemplated transaction, or otherwise participating in connection with such Bid, and the complete terms of any such participation, including any agreements, arrangements or understandings concerning a collaborative or joint bid or any other combination concerning the proposed Bid. A Bid must also fully disclose any connections or agreements with the Debtors, or any other known, potential or prospective Bidder or Final Qualified Bidder, and/or any current or former officer, director or equity holder of the Debtors.

9. <u>Proof of Financial Ability to Perform</u>: A Bid must include written evidence that demonstrates, as determined by the Trustee in consultation with his advisors and the Prepetition Secured Creditors, that the Bidder has the necessary financial ability to close the Sale Transaction and provide adequate assurance of future performance under all contracts and leases to be assumed and assigned in the Sale Transaction.

10. <u>Contact Information and Affiliates</u>: The Bid must provide the identity and contact information for the Bidder and full disclosure of any affiliates of the Bidder.

11. <u>No Contingencies</u>: A Bid may <u>not</u> be conditioned on obtaining financing, any internal approvals or credit committee approvals, or on the outcome or review of unperformed due diligence.

12. <u>No Collusion</u>: Each Bidder submitting a Bid must confirm in writing that it has not engaged in any collusion with respect to the bidding or the Sale.

13. <u>Irrevocable</u>: A Bid must be irrevocable until five (5) business days after the Sale Hearing for the subject Real Property, *provided that* if such Bid is accepted as the Successful Bid or the Backup Bid (each as defined herein) for one or more parcel of Real Property, such Bid shall continue to remain irrevocable, subject to the terms and conditions of the Bid Procedures.

14. <u>Compliance with Diligence Requests</u>: A Bidder submitting a Bid must have complied with reasonable requests for additional information and due diligence access from the Trustee to the satisfaction of the Trustee.

vi. <u>Evaluation of Final Qualified Bids</u>: The Trustee, in consultation with his advisors and the Prepetition Secured Creditors and their advisors, reserves the right to determine the value of any Final Qualified Bid (either by itself or in connection with one or more other Final Qualified Bid), and which

- 8 -

Final Qualified Bid(s) constitutes the highest, best and otherwise financially superior offer(s) for the subject Real Property.  If one or more Final Qualified Bid is received for any parcel of Real Property, the Trustee and his advisors, in consultation with the Prepetition Secured Creditors and their advisors, will review and evaluate each Final Qualified Bid.

vii.  <u>Selection of Successful Bid(s)</u>: If one or more Final Qualified Bid is timely received, the Trustee and his advisors, in consultation with the Prepetition Secured Creditors, will (i) identify and certify the bid(s) that constitutes the highest and best offer for the subject Real Property (such bid(s), the "**Successful Bid(s)**" and such person(s) submitting such bid(s) the "**Successful Bidder(s)**"), and (ii) identify and may, in their discretion, certify the bid(s) that constitutes the next highest or best offer(s) for the subject Real Property (such bid the "**Backup Bid(s)**" and such person(s) submitting such bid(s) the "**Backup Bidder(s)**"), and, in each case, so notify the Successful Bidder(s) and Backup Bidder(s).  The determination of which Final Qualified Bid(s) is to be selected as the Successful Bid(s) will take into account any factors the Trustee reasonably deems relevant to the value of the Final Qualified Bid(s) to the Estate and may include, but are not limited to, the following:  (a) the amount of the consideration and the resulting recovery to holders of general unsecured claims; (b) the number, type and nature of any changes to the Form APA requested by each Bidder; (c) the extent to which such modifications are likely to delay closing of the sale of the subject Real Property and the cost to the Estate of such modifications or delay; (d) the total consideration to be received by the Estate, including the assumption of any liabilities of the Estate; (e) the Bidder's ability to close a transaction and the timing thereof; and (f) the net benefit to Estate.

viii.  <u>Stalking Horse Bidder and Breakup Protections</u>.  To ensure Final Qualified Bidders are willing to proceed to closing, the Trustee, in consultation with his advisors and the Prepetition Secured Creditors and their advisors, may designate a Successful Bid as a "**Stalking Horse Bid**" (and such bidder a "**Stalking Horse Bidder**") which may provide, in the Trustee's discretion (in consultation with his advisors and the Prepetition Secured Creditors and their advisors), such Stalking Horse Bidder any of the following breakup fee protections: (a) a breakup fee not to exceed 3% of the purchase price (the "**Breakup Fee**"), (b) an expense reimbursement for documented expenses not to exceed 2% of the purchase price ("**Breakup Expense Reimbursement**"), (c) the right to credit bid the Breakup Fee and Breakup Expense Reimbursement at any subsequent auction before the sale hearing, and (d) a requirement that any topping bid must be not less than 6% of the Successful Bid's purchase price (collectively, the "**Breakup Protections**").  To be eligible for payment of any Breakup Fee and Breakup Expense Reimbursement, the Stalking Horse Bidder must not be in breach of its obligations under the APA, the APA must be terminated only on the basis

that competing transaction was higher and better (a "**Competing Transaction**"), and the Trustee must close on such Competing Transaction. Any Breakup Fee and Breakup Expense Reimbursement shall be payable solely from the proceeds of a closing on the sale of the subject Real Property under a Competing Transaction.

ix.  "<u>As Is, Where Is</u>":  Any sale(s) of the Real Property will be on an "as is, where is" basis and without representations of any kind, nature or description by the Trustee, the Estate or their respective agents, professionals or representatives, except to the extent set forth in the operative purchase agreement of a Successful Bidder.  By submitting a bid, each Final Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the subject Real Property prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Real Property in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Real Property to which their Final Qualified Bid applies, or the completeness or accuracy of any information provided in connection therewith, except as expressly stated in the purchase agreement of a Successful Bidder.

x.  <u>Sale Free and Clear of Liens</u>:  Except as otherwise provided in the purchase agreement of a Successful Bidder, all of the Estate's right, title and interest in and to the Real Property proposed to be sold shall be sold free and clear of any and all liens against such Real Property to the maximum extent permitted by Section 363 of the Bankruptcy Code, with such liens to attach to the net proceeds of the Real Property subject to the Sale with the same validity and priority as such liens applied against such Real Property.

xi.  <u>Modification of Bid and Auction Procedures</u>: Except as otherwise provided in the Bid Procedures or the Bid Procedures Order the Trustee reserves the right as he may reasonably determine to be in the best interest of the Estate to: (a) determine which bidders are Preliminary Qualified Bidders and Final Qualified Bidders; (b) determine which Bids are Preliminary Qualified Bids and Final Qualified Bids; (c) determine which Final Qualified Bid(s) constitutes the highest or best proposal(s) and which constitutes the next highest or best proposal(s); (d) reject any Bid that is (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bid Procedures or the requirements of the Bankruptcy Code or (3) contrary to the best interests of the Estate; (e)  waive non-compliance with any of the terms and conditions set forth in the Bid Procedures as he determines to be in the best interests of the Estate, creditors, and other parties in interest; (f) impose additional terms and conditions with respect to all potential bidders;  (g) extend  the  deadlines  set  forth  in  the  Bid  Procedures;

- 10 -

(h) continue or cancel a sale hearing in open court, or by filing a notice on the docket of the Debtors' bankruptcy cases, without further notice to creditors or other parties in interest; and (i) implement additional procedural rules that the Trustee determines, in his business judgment, will better promote the goals of the bidding process and discharge the Trustee's fiduciary duties; *provided, however*, that any modification or additions to the Bid Procedures shall be disclosed to each Final Qualified Bidder.

**B.**    **The Proposed Bid Procedures Notice**

18.    The Trustee requests that the Court approve the proposed bid procedures notice set forth below.

19.    Within two (2) business days following the entry of the Bidding Procedures Order or as soon as reasonably practicable thereafter (the "**Mailing Date**"), the Trustee will serve the Bidding Procedures Order and the Bidding Procedures by e-mail, first-class mail, postage prepaid, or, for those parties who have consented to receive notice by the Electronic Case Files ("**ECF**") system, by ECF, upon (i) all entities reasonably known to have expressed an interest in a transaction with respect to all or part of the Real Property; (ii) all entities known to have asserted any lien in or upon any of the Real Property; (iii) the Office of the United States Trustee for the District of Delaware; (iv) the Pennsylvania Attorney General's Office; and (v) all parties who have requested notice pursuant to Federal Rules of Bankruptcy Procedure Rule 2002.

20.    The Trustee requests that such notice be deemed sufficient and proper notice of the Bid Procedures with respect to known interested parties.

**C.**    **Stalking Horse Procedures**

21.    The following procedures are referred to herein as the "**Stalking Horse Procedures**."  The Trustee may, as he deems necessary or appropriate, and after consulting with his advisors, the Prepetition Secured Creditors, and their advisors, enter into one or more asset purchase agreements with one or more "stalking horse" bidders that the Trustee designates to serve

- 11 -

as such (each such agreement, a "**Stalking Horse Agreement**" and, each such bidder, a "**Stalking Horse Bidder**" and, the bid of any such Stalking Horse Bidder, a "**Stalking Horse Bid**").  The Trustee also may determine, in consultation with his advisors, the Prepetition Secured Creditors, and their advisors, to provide certain bidding protections to designated Stalking Horse Bidders, including a "break-up" fee and an expense reimbursement (together, a "**Termination Payment**"), in each case, in accordance with the terms of the applicable Stalking Horse Agreement.

a.  <u>Stalking Horse Notice</u>.  Within two business days after executing a Stalking Horse Agreement, the Trustee will file with the Court, serve on the Stalking Horse Notice Parties (as defined below), a notice setting forth the material terms of the proposed Stalking Horse Agreement, including (a) the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly-formed entity, then the Stalking Horse Bidder's parent company or sponsor); (b) the specific Real Property subject to the Stalking Horse Bid; (c) the amount of the Stalking Horse Bid and what portion is cash (the "**Stalking Horse Bid Amount**"); (d) the terms and conditions of any Termination Payment to be provided under the Stalking Horse Agreement; and (e) the deadline to object to the Stalking Horse Bidder designation and any relevant Termination Payment (each such notice, a "**Stalking Horse Notice**").

b.  <u>Stalking Horse Objections</u>.  Any objection to the designation of a Stalking Horse Bidder or provision of a Termination Payment thereto,  in accordance with these Stalking Horse Procedures (each such objection, a "**Stalking Horse Objection**") must (a) be in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; and (b) be filed with the Court and served on the applicable Objection Notice Parties (as defined below) within three calendar days after service of the applicable Stalking Horse Notice.  If the parties are unable to consensually resolve a Stalking Horse Objection, such Stalking Horse Objection will be heard and resolved by the Court at the Stalking Horse Hearing (defined below).  The "**Objection Notice Parties**" are the following: (i) the Chapter 7 Trustee, Alfred T. Giuliano, 2301 East Evesham Road, Pavilion        800,        Suite        210,        Vorhees,        New        Jersey        08043 (atgiuliano@giulianomiller.com); (ii) counsel for the Chapter 7 Trustee, Chipman Brown Cicero & Cole, LLP, 1313 North Market Street, Suite 5400, Wilmington, Delaware 19801 (Attn: David W. Carickhoff (carickhoff@chipmanbrown.com) and Alan M. Root (root@chipmanbrown.com); (iii) counsel to the Bridge Noteholder Representative, Bridge Notes Collateral Agent, Bond Trustee, Bonds/TD Collateral Agent, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Amy Caton (acaton@kramerlevin.com) and Douglas Buckley (dbuckley@kramerlevin.com), Klehr Harrison Harvey Branzburg LLP, 919 North Market Street, Suite 1000, Wilmington, Delaware (Attn: Domenic E. Pacitti (dpacitti@klehr.com) and 1835 Market Street, Suite 1400, Philadelphia  Pennsylvania 19103 (Attn: Morton R.

Branzburg (mbranzburg@klehr.com); (iv) counsel to TD Bank, N.A., Ballard Spahr, LLP, 919 North Market Street, 11th Floor, Wilmington, Delaware 19801-3034 (Attn: Nicholas J. Brannick (brannickn@ballardspahr.com) and 1735 Market Street, 51st Floor, Philadelphia, Pennsylvania 19103 (Attn: Diane E. Vuocolo (vuocolod@ballardspahr.com); and (v) if applicable, counsel for any relevant Stalking Horse Bidder.

c.  <u>Stalking Horse Hearing</u>.  Provided a timely Stalking Horse Objection has been filed and has not been consensually resolved, the Trustee will request that the Court schedule a hearing (the "**Stalking Horse Hearing**") to be held, at the Court's earliest availability, to consider approval of any applicable Stalking Horse Agreement(s) and the provision of any Termination Payment to be provided thereunder.

d.  <u>Failure to File a Timely Stalking Horse Objection</u>.  If no timely Stalking Horse Objection is filed and served in accordance with these Stalking Horse Procedures, the Trustee may file, upon certification of counsel and after consulting with the Prepetition Secured Creditors and their advisors (the "**Consultation Parties**"), a proposed order authorizing and approving the Trustee's selection of the Stalking Horse Bidder, entry into the applicable Stalking Horse Agreement and the provision of a Termination Payment thereunder in lieu of holding a Stalking Horse Hearing.

e.  <u>Stalking Horse Notice Parties</u>.  The "**Stalking Horse Notices Parties**" include the following persons and entities:  (i) counsel to the Prepetition Secured Creditors; (ii) counsel to any Stalking Horse Bidder; (iii) parties known by the Trustee to have expressed an interest in the subject Real Property to JLL; (iv) any party who has requested notice in these cases pursuant to Bankruptcy Rule 2002; and (v) the Office of the United States Trustee.

## BASIS FOR RELIEF REQUESTED

### A.  Entry of the Bid Procedures Order is Necessary and Appropriate Under the Facts and Circumstances of these Cases

22.  After notice and a hearing, a trustee may sell assets outside the ordinary course of business.  11 U.S.C. § 363(b).  Generally, to obtain approval of a proposed sale of assets under section 363(b), a trustee should demonstrate that the proffered purchase price is the highest or best offer under the circumstances of the case.  *See Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-65 (8th Cir. 1997) (holding that in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Integrated Res.*, 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that

the . . . Debtors' duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (*quoting Cello Bay Co. v. Champion Int'l Corn. (In re Atlanta Packaging Prods., Inc.*), 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988)).

23.     The implementation of competitive bidding procedures to facilitate the sale of a debtor's assets outside the ordinary course of business is routinely approved by bankruptcy courts as a means of ensuring that such sale will generate the highest or best recovery for a debtor's estate. The proposed Bid Procedures and the opportunity for competitive bidding embodied therein are both reasonable and designed to maximize the value received for the Real Property by facilitating a competitive bidding process in which all potential and qualified bidders are encouraged to participate and submit competing bids.

24.     The Trustee desires to receive the greatest value possible for the Real Property.  The Bid Procedures were developed so as to be consistent with the Trustee's need to expedite the sale process but with the object of promoting active bidding that will result in the highest and/or best offer(s) possible under the circumstances.

25.     In the event one or more Final Qualified Bids are timely received, the Trustee may select the highest and/or best Final Qualified Bid(s) for some or all of the Real Property.  **ALL BIDS SELECTED BY THE TRUSTEE SHALL BE SUBJECT TO THE APPROVAL OF THE BANKRUPTCY COURT UNDER A SEPARATE MOTION.**

26.     Given the current circumstances of these cases, and the marketing process that has occurred to date, the Trustee believes that implementation of an orderly sale process is the best way to maximize the value of the Real Property and otherwise avoid accrual of ongoing administrative expenses associated with maintaining the Real Property.  Prompt entry of the Bid

Procedures Order will permit the sale process contemplated by the Bid Procedures to proceed with certainty.

**B.**    **The Due Diligence Reimbursement Should be Approved**

27.    As part of Bid Procedures Order, the Trustee is also requesting approval of the Due Diligence Reimbursement and the Breakup Protections.

28.    The pursuit of a closing on a real estate transaction is an expensive endeavor and requires the commitment of substantial due diligence and human capital of the prospective buyer. Outside of bankruptcy, parties are often afforded an exclusive period within which to conduct due diligence after they have submitted a proposal.  To avoid losing potential buyers due to a lack of an exclusive period, the Trustee proposes to compensate certain Preliminary Qualified Bidders for their due diligence efforts through the Due Diligence Reimbursement.  If a Preliminary Qualified Bidder is selected for Due Diligence Reimbursement, in order to be eligible for reimbursement of its documented due diligence expenses not to exceed $50,000, such Preliminary Qualified Bidder must submit a Final Qualifying Bid that the Trustee, in consultation with his advisors and the Prepetition Secured Creditors and their advisors, determines is still a competitive offer for the respective Real Property relative to the other Final Qualifying Bids for the applicable Real Property.  Any Due Diligence Reimbursement shall be payable solely from the proceeds of a closing on the sale of the subject Real Property under a Successful Bid for the subject property. The Due Diligence Reimbursement shall not exceed $50,000 for any bidder.  For the avoidance of doubt, any Successful Bid(s) shall not be eligible for the Due Diligence Reimbursement.

29.    The Trustee respectfully submits that encouraging additional parties to conduct due diligence by offering the Due Diligence Reimbursement is a sound exercise of his business judgment and should be approved under section 363 of the Bankruptcy Code.  The eligibility

requirements for the Due Diligence Reimbursement ensure that only parties driving a more-competitive bidding process will be compensated for their efforts. Further, the Prepetition Secured Creditors would have consulted with the Trustee and his advisors as to which Preliminary Qualified Bidders should be offered a Due Diligence Reimbursement.

**C.**     **The Stalking Horse Procedures Should Be Approved**

30.     Additionally, the Trustee requests approval of Stalking Horse Procedures. The logic is the same as set forth above with respect to the Due Diligence Reimbursement. Outside of bankruptcy, parties are often afforded an exclusive period within which to conduct due diligence after they have submitted a proposal for real property. To avoid losing potential buyers due to the lack of an exclusive period or the risk of subjecting their offers to further bidding, the Trustee proposes to compensate Stalking Horse Bidders for setting a meaningful floor and subjecting their offer to higher and better bids.

31.     Approval of breakup fees in connection with asset sales pursuant to section 363 of the Bankruptcy Code is an established practice. In the Third Circuit, bid protections are considered administrative expenses and, therefore, the payment of such fees must provide a postpetition benefit to the bankruptcy estate. *See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 191 F.3d 527, 533 (3d Cir. 1999).

32.     The Trustee respectfully submits that offering a Termination Payment to encourage parties to pursue a sale process that involves further bidding is a sound exercise of his business judgment and should be approved under section 363 of the Bankruptcy Code.

33.     The Stalking Horse Procedures proposed herein provides parties with an opportunity to object to a proposed Termination Payment to a Stalking Horse Bidder and streamlines the process for approval in the absence of any objection. The Trustee submits that the Stalking Horse Procedures proposed herein are similar to those recently approved by this Court in

- 16 -

*In re Meier's Wine Cellars Acquisition, LLC, et al.*, Case No. 24-11575 (MFW) (Bankr. D. Del.

Aug. 21, 2024) (D.I. 181).  In *Meier's Wine*, the Court authorized the debtors to submit an order

approving stalking horse protections without a hearing after the debtors filed a "Stalking Horse

Notice" setting forth the material terms of the proposed stalking horse APA, including (a) the

identity of the Stalking Horse Bidder, (b) any past or present connections or agreements with the

debtors, any other known prospective bidder or qualified bidder, any secured party, or any director

or officer of the foregoing, (c) the specific assets subject to the Stalking Horse Bid, (d) the amount

of the Stalking Horse Bid, (e) the terms and conditions of any stalking horse protections, and (f)

the deadline to object to the Stalking Horse Notice.  *See id*. (Exhibit A - Bid Procedures, Section

II – Stalking Horse Procedures).  Parties were provided three calendar days to object after the

service of the Stalking Horse Notice.  *See id*.  If no objections were timely filed, the debtors could

submit a proposed order under Certification of Counsel authorizing and approving the debtors'

entry into the applicable Stalking Horse Agreement and the provision of stalking horse protections

thereunder in lieu of holding a hearing on the same.  *See id*.

34.     The Trustee respectfully submits that the Stalking Horse Procedures will enable

him to provide certainty to Stalking Horse Bidders regarding any Termination Payments without

unduly delaying a sale motion seeking approval of the subject transaction.

**D**     <u>**Notice of the Bid Procedures is Reasonable Under the Circumstances**</u>

35.     In order to receive the highest and/or best price for the Real Property under the

circumstances, the Trustee is seeking to conduct a thoughtful sale process.

36.     The Trustee has established a detailed and comprehensive process for providing

notice to all interested parties, as set forth above.  The Trustee submits that the notice to be

provided to parties in interest is reasonable and appropriate and will be adequate to ensure that the value of the Real Property has been tested in the marketplace.

**E.    The Automatic Fourteen Day Stay Under Bankruptcy Rules 6004(h)
        Should be Waived**

37.    Pursuant to Bankruptcy Rule 6004(h), unless the Court orders otherwise, all orders authorizing the use, sale or lease of property, other than cash collateral, are automatically stayed for fourteen days after entry of the order.

38.    To enable the Trustee to offer the Due Diligence Reimbursement to motivate multiple buyers to pursue due diligence, the Trustee requests a waiver of the stay.  The Trustee respectfully submits that waiver of any applicable stay afforded by the Bankruptcy Rule 6004(h) is appropriate under the facts and circumstances of these cases.

## NOTICE

39.    Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Prepetition Secured Creditors; and (iii) any party who has requested notice in these cases pursuant to Bankruptcy Rule 2002.  In light of the nature of the Bid Procedures Relief requested herein, the Trustee submits that no other or further notice is necessary or required prior to entry of the proposed Bid Procedures Order and proposed Bid Procedures.

## NO PRIOR REQUEST

40.    No prior motion for the relief requested herein has been made to this or any other Court.

4936-8229-4020, v. 2

**WHEREFORE**, for the foregoing reasons, the Trustee respectfully requests entry of: an order substantially in the form annexed as **Exhibit A** hereto (i) approving the Bid Procedures; (ii) authorizing the Trustee to provide Due Diligence Reimbursement and approving payment of the same; (iii) authoring the Trustee to provide the Breakup Fee Protections and approving the same; and (iv) granting such other and further relief as is just and proper.

Dated:  December 13, 2024
         Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/ David W. Carickhoff*
David W. Carickhoff (No. 3715)
Alan M. Root (No. 5427)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0191
Email:    carickhoff@chipmanbrown.com
             root@chipmanbrown.com

*Counsel for the Chapter 7 Trustee*