# EXHIBIT A

**(*Proposed* Order)**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| The University of the Arts, *et al.*,[1] | Case No. 24-12140 (BLS) |
| Debtors. | (Jointly Administered) |
| | Re: Dkt. No. |

### ORDER APPROVING CERTAIN EXPENSE REIMBURSEMENTS, STALKING HORSE PROCEDURES, AND OTHER GENERAL BID PROCEDURES IN CONNECTION WITH THE SALE OF THE DEBTORS' REAL ESTATE AND GRANTING RELATED RELIEF

Upon the Motion (the "**Motion**")[2] of Alfred T. Giuliano, the chapter 7 trustee (the "**Trustee**") of the bankruptcy estates of the above-captioned debtors (collectively, the "**Debtors**"), pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") for entry of an order, *inter alia*, (i) approving certain expense reimbursements, Stalking Horse Procedures, and other general bid procedures (the "**Bid Procedures**")[3] by which the Trustee will solicit and select the highest or otherwise best offer(s) for the Real Property; and (ii) granting related relief; and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this matter constitutes a core proceeding pursuant to 28 U.S.C. §§

---

[1] The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors, where applicable, are: The University of the Arts (9911); and U of Arts Finance LLC (9911).

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

[3] A copy of the Bid Procedures is annexed hereto as **Exhibit 1**.

157(b)(2); and this Court having found that venue of these proceedings and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and no other or further notice hereof being necessary or required; and the Court having found that the Trustee has articulated good and sufficient reasons in support of the relief requested in the Motion regarding the Sale process, including without limitation, approval of the Bid Procedures; and it appearing to the Court that, based upon the representations contained in the Motion, the issuance of this Order is in the best interest of the Estates and creditors; and after due deliberation and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1  The Motion is GRANTED.

2  All objections to the Motion (and all reservations of rights included therein) are overruled to the extent they have not been withdrawn, waived or otherwise resolved.

3  The Bid Procedures attached hereto as **Exhibit 1** are approved. The process for soliciting Bids set forth in the Bid Procedures (i) is designed to maximize the value to be achieved for the Real Property; (ii) will ensure a competitive and efficient bidding process; and (iii) is fair and reasonable under the circumstances. The Bid Procedures shall govern the submission, receipt and analysis of all Bids for any of the Real Property and any party desiring to submit a Bid shall do so strictly in accordance with the terms of the Bid Procedures and this Order.

4  <u>Bid Procedures Notice</u>. A copy of this Order and the Bid Procedures shall be served within two (2) business days following the entry of this Order or as soon as reasonably practicable thereafter, via e-mail, first class mail postage pre-paid, or, for those parties who have consented to receive notice by the Electronic Case Files ("**ECF**") system, by ECF, upon (i) all entities reasonably known to have expressed an interest in a transaction with respect to all or part of the

Real Property; (ii) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon any of the Acquired Assets; (iii) the Office of the United States Trustee for the District of Delaware; (iv) the Pennsylvania Attorney General's Office; and (v) any other party entitled to notice pursuant to Bankruptcy Rule 2002. To the extent email addresses are available, such parties may be served by email.

5.  The Trustee is authorized to provide a Due Diligence Reimbursement pursuant to the terms and conditions as set forth in the Motion.

6.  The Trustee may, as he deems necessary or appropriate, and after consulting with his advisors, the Prepetition Secured Creditors, and their advisors, enter into one or more asset purchase agreements with one or more "stalking horse" bidders that the Trustee designates to serve as such (each such agreement, a "**Stalking Horse Agreement**" and, each such bidder, a "**Stalking Horse Bidder**" and, the bid of any such Stalking Horse Bidder, a "**Stalking Horse Bid**"). The Trustee also may determine, in consultation with his advisors, the Prepetition Secured Creditors, and their advisors, to provide certain bidding protections to designated Stalking Horse Bidders, including a "break-up" fee and an expense reimbursement (together, a "**Termination Payment**"), in each case, in accordance with the terms of the applicable Stalking Horse Agreement. The following Stalking Horse Procedures are hereby approved:

> a.  <u>Stalking Horse Notice</u>. Within two business days after executing a Stalking Horse Agreement, the Trustee will file with the Court, serve on the Stalking Horse Notice Parties, a notice setting forth the material terms of the proposed Stalking Horse Agreement, including (a) the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly-formed entity, then the Stalking Horse Bidder's parent company or sponsor); (b) the specific Real Property subject to the Stalking Horse Bid; (c) the amount of the Stalking Horse Bid and what portion is cash (the "**Stalking Horse Bid Amount**"); (d) the terms and conditions of any Termination Payment to be provided under the Stalking Horse Agreement; and (e) the deadline to object to the Stalking Horse Bidder designation and any relevant Termination Payment (each such notice, a "**Stalking Horse Notice**").

b. <u>Stalking Horse Objections</u>.  Any objection to the designation of a Stalking Horse Bidder or provision of a Termination Payment thereto, in accordance with these Stalking Horse Procedures (each such objection, a "**Stalking Horse Objection**") must (a) be in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; and (b) be filed with the Court and served on the applicable Objection Notice Parties (as defined below) within three calendar days after service of the applicable Stalking Horse Notice.  If the parties are unable to consensually resolve a Stalking Horse Objection, such Stalking Horse Objection will be heard and resolved by the Court at the Stalking Horse Hearing (defined below).  The "**Objection Notice Parties**" are the following: (i) the Chapter 7 Trustee, Alfred T. Giuliano, 2301 East Evesham Road, Pavilion 800, Suite 210, Vorhees, New Jersey 08043 (atgiuliano@giulianomiller.com); (ii) counsel for the Chapter 7 Trustee, Chipman Brown Cicero & Cole, LLP, 1313 North Market Street, Suite 5400, Wilmington, Delaware 19801 (Attn: David W. Carickhoff (carickhoff@chipmanbrown.com) and Alan M. Root (root@chipmanbrown.com); (iii) counsel to the Bridge Noteholder Representative, Bridge Notes Collateral Agent, Bond Trustee, Bonds/TD Collateral Agent, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Amy Caton (acaton@kramerlevin.com) and Douglas Buckley (dbuckley@kramerlevin.com), Klehr Harrison Harvey Branzburg LLP, 919 North Market Street, Suite 1000, Wilmington, Delaware (Attn: Domenic E. Pacitti (dpacitti@klehr.com) and 1835 Market Street, Suite 1400, Philadelphia Pennsylvania 19103 (Attn: Morton R. Branzburg (mbranzburg@klehr.com); (iv) counsel to TD Bank, N.A., Ballard Spahr, LLP, 919 North Market Street, 11th Floor, Wilmington, Delaware 19801-3034 (Attn: Nicholas J. Brannick (brannickn@ballardspahr.com) and 1735 Market Street, 51st Floor, Philadelphia, Pennsylvania 19103 (Attn: Diane E. Vuocolo (vuocolod@ballardspahr.com); and (v) if applicable, counsel for any relevant Stalking Horse Bidder.

c. <u>Stalking Horse Hearing</u>.  Provided a timely Stalking Horse Objection has been filed and has not been consensually resolved, the Trustee will request that the Court schedule a hearing (the "**Stalking Horse Hearing**") to be held, at the Court's earliest availability, to consider approval of any applicable Stalking Horse Agreement(s) and the provision of any Termination Payment to be provided thereunder.

d. <u>Failure to File a Timely Stalking Horse Objection</u>.  If no timely Stalking Horse Objection is filed and served in accordance with these Stalking Horse Procedures, the Trustee may file, upon certification of counsel and after consulting with the Consultation Parties, a proposed order authorizing and approving the Trustee's selection of the Stalking Horse Bidder, entry into the applicable Stalking Horse Agreement and the provision of a Termination Payment thereunder in lieu of holding a Stalking Horse Hearing.

- 4 -

- 5 -

7      The Trustee is authorized to execute and deliver all instruments and documents, and take such other action as may be necessary or appropriate to implement and effectuate the transactions contemplated by this Order.

8      Notwithstanding anything herein or in the Bid Procedures to the contrary, the Trustee, after consulting with the Consultation Parties, may proceed with a private sale for any parcel of Real Property at any time. Approval of any such sale shall be sought by motion and shall be subject to notice and a hearing.

9      To the extent there is any inconsistency between the terms of this Order and the Bid Procedures, the terms of this Order shall control.

10      Notwithstanding any applicability of Rule 6004(h) of the Bankruptcy Rules, the terms and conditions of this Order shall be immediately effective and enforceable upon entry of this Order.

11      This Court retains jurisdiction with respect to all matters, claims, rights or disputes arising from, based upon or related to this Order.

# **EXHIBIT 1**

## BID PROCEDURES

The University of the Arts (the "Debtor") filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") on September 13, 2024, in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

Prior to the Petition Date, the Debtor was Pennsylvania nonprofit corporation serving as an institute of higher learning focusing on the arts. The Debtor's assets consist primarily of real estate. Additionally, the Debtor is a party to a number of contracts, leases and other agreements, some of which may have value for a particular buyer. The Bid Procedures are intended to cover the proposed sale of the Debtor's real estate assets and related contracts and leases.

The Trustee has engaged Jones Lang LaSalle Americas, Inc. ("JLL") to assist in the sale of the Debtor's real estate. Among other things, JLL has created a virtual data room and is conducting tours of the real estate assets.

By Motion dated December 13, 2024 (the "Sale Procedures Motion"),[1] Alfred T. Giuliano (the "Trustee"), as the chapter 7 trustee of the bankruptcy estate (the "Estate") of the Debtor sought approval of, among other things, the procedures through which he will determine the highest or otherwise best offer(s) to sell the Debtor's various real estate and related assets (collectively, the "Real Property") to the party or parties that submit, in the Trustee's business judgment, the highest or otherwise best offer(s) for the Real Property (a "Sale Transaction").

A form asset purchase agreement (the "Form APA") will be uploaded to JLL's virtual data room.

On December ___, 2024, the Bankruptcy Court entered an order (the "Bid Procedures Order") which, among other things, authorized the Trustee to determine the highest or otherwise best offer(s) for the Real Property through the process and procedures set forth below (these "Bid Procedures"). **Subject to the Bid Procedures set forth below, the Trustee will consider Bids for all of the Real Property or a parcel of the Real Property.**

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Sale Procedures Motion.

**Access to Diligence Materials**

To participate in the bidding process and to receive access to due diligence (the "Diligence Materials"), a party must submit to the JLL an executed non-disclosure agreement (an "NDA") in a form and substance acceptable to the Trustee.[2] Parties interested in receiving access to the Diligence Materials should contact the Trustee's exclusive real estate broker, JLL, Attn: James Galbally (James.Galbally@jll.com), Fran Coyne (Fran.Coyne@jll.com) and Samantha Kupersmith (Samantha.Kupersmith@jll.com ).

A party who qualifies for access to Diligence Materials shall be an "Interested Bidder." The Trustee will afford any Interested Bidder the time and opportunity to conduct reasonable due diligence under the time constraints provided herein; provided, however, that the Trustee shall not be obligated to furnish any due diligence information after the Due Diligence Deadline (as defined below). The Trustee reserves the right to withhold any Diligence Materials that the Trustee, in consultation with his advisors, determines are business-sensitive or otherwise not appropriate for disclosure to an Interested Bidder. Neither the Trustee nor his representatives, professionals, agents or independent contractors shall be obligated to furnish information of any kind whatsoever to any person. Bidders shall conduct their own due diligence and shall not have any claims or causes of action against the Trustee, JLL or their representatives, professionals, agents or independent contractors for the accuracy or completeness of any information provided to them by the Trustee, JLL or their representatives, professionals, agents or independent contractors.

Each Interested Bidder, Preliminary Qualified Bidder (as defined below), and Final Qualified Bidder (as defined below) shall comply with all reasonable requests for additional information and due diligence access by the Trustee or his advisors regarding such Interested Bidder, Preliminary Qualified Bidder, or Final Qualified Bidder, as applicable, and its contemplated transaction for the Real Property. Failure by an Interested Bidder, Preliminary Qualified Bidder, or Final Qualified Bidder to comply with requests for additional information and due diligence access may be a basis for the Trustee to determine that any Bid (as defined below) submitted by such Interested Bidder, Preliminary Qualified Bidder, or Final Qualified Bidder is not a Preliminary Qualified Bid (as defined below) or Final Qualified Bid (as defined below), as applicable. Bidders (as defined below) must complete all due diligence by no later than the Due Diligence Deadline (as defined below).

**Real Property to Be Sold Free and Clear**

Except as otherwise provided in the asset purchase agreement submitted by any Successful Bidder(s) (as defined below) (including any exhibits or schedules thereto), the Trustee will seek to sell all of the Estate's right, title and interest in and to the Real Property subject thereto free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "Liens") to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Liens to attach to the net proceeds of the sale of the Real

---

[2] To be clear, execution of an NDA is only required to receive access to diligence material and tours of the Real Property. The failure to execute an NDA will not necessarily preclude an interested bidder from submitting a bid or becoming a Final Qualified Bidder if such bidder determines to submit a bid without access to diligence material.

Property with the same validity and priority as such Liens applied against the Real Property, subject to the rights and defenses of the Trustee or any party in interest.

## Bidding Process

The Trustee and his advisors shall (i) determine whether any person is a Qualified Bidder (as defined below), (ii) coordinate the efforts of Interested Bidders in conducting their due diligence investigations, (iii) receive offers from Qualified Bidders, and (iv) negotiate any offers made to purchase the Real Property.

Potential buyers have been asked to submit preliminary offers by December 11, 2024. After the preliminary offers have been reviewed by the Trustee and JLL (in consultation with the Prepetition Secured Creditors), potential buyers will be instructed to submit more formal offers by December 17, 2024, and to provide additional information in connection with their ability to close on a transaction for review by the Trustee and JLL (in consultation with the Prepetition Secured Creditors).

**Interested bidders that submit a formal bid by December 17, 2024, and propose a purchase price that is consistent with the Trustee's view of the value of the Real Property subject to the bid will be deemed a "Preliminary Qualified Bidder" under the Bid Procedures. "Preliminary Qualified Bids" may have due diligence contingencies. Final bids will be due after a Preliminary Qualified Bidder has conducted due diligence. At the end of the due diligence period, a party that submits a binding bid with no contingencies substantially in the form of the Asset Purchase Agreement in the data room may have its bid selected by the Trustee as a "Final Qualified Bid."**

*Bid Submission Process*

To be eligible to be considered by the Trustee in the bid submission process, each offer, solicitation or proposal (each, a Bid"), and each party submitting such a Bid (each, a "Bidder"), must be determined by the Trustee, in consultation with his advisors and the Prepetition Secured Creditors and their advisors, to satisfy each of the following conditions:

(a) Participation and Preliminary Qualified Bid Requirements: To ensure that only bidders with a serious interest in purchasing some or all of the Real Property participate in the Bidding Process, the Bid Procedures provide for certain minimal requirements for a potential bidder to become a "Preliminary Qualified Bidder". These requirements include: (i) providing the Trustee with certain corporate information regarding the bidder and certain financial assurances as to such bidder's ability to close a transaction for the subject Real Property; and (ii) the submission of a proposal regarding the subject Real Property, which may contain a due diligence contingency, and the consideration to be paid, which must (y) be consistent with the Trustee's view of value for the subject Real Property and (z) if a Bid comprises two or more parcels of Real Estate, include the allocation of the total consideration to be paid that is attributable to each parcel of Real Estate contemplated by the Bid.

3

(b) <u>Access Agreement</u>.  Preliminary Qualified Bidders that execute an Access Agreement shall be permitted to conduct due diligence on the Real Property that is subject to their Preliminary Qualified Bid through February 1, 2025 (the "<u>Due Diligence Deadline</u>").

(c) <u>Reimbursement for Due Diligence</u>.  In consultation with his advisors and the Prepetition Secured Creditors and their advisors, the Trustee may select not more than three Preliminary Qualified Bidders per parcel of Real Property to be eligible for reimbursement for due diligence (and may choose less or none).  If a Preliminary Qualified Bidder is selected for reimbursement for due diligence ("<u>Due Diligence Reimbursement</u>"), in order to be eligible for reimbursement of its documented due diligence expenses not to exceed $50,000, such Preliminary Qualified Bidder must: submit a Final Qualifying Bid (defined below) that the Trustee, in consultation with his advisors and the Prepetition Secured Creditors and their advisors, determines is still a competitive offer for the respective Real Property relative to the other Final Qualifying Bids for the applicable Real Property).  Any Due Diligence Reimbursement shall be payable solely from the proceeds of a closing on the sale of the subject Real Property under a Successful Bid (defined below) for the subject property.  For the avoidance of doubt, any Successful Bid(s) (as defined below) shall not be eligible for the Due Diligence Reimbursement.

(d) <u>Final Qualified Bid Requirements</u>: To ensure that only bidders with a serious interest in purchasing some or all of the Real Property participate in the final bidding process, certain minimal requirements must be met for such bid to become a "<u>Final Qualified Bid</u>" (and such bidder to become a "<u>Final Qualified Bidder</u>") and must include:

(i) <u>Good Faith Deposit</u>:  A Bid must be accompanied by a deposit in the amount of ten percent (10%) of the purchase price contained in the Asset Purchase Agreement (as defined below), to a segregated account to be identified and established by the Trustee (the "<u>Good Faith Deposit</u>")

(ii) <u>Executed Agreement</u>:  A Bid must be based on the Form APA[3] and must include binding, executed transaction documents, signed by an authorized representative of such Bidder, pursuant to which the Bidder proposes to effectuate a Sale Transaction (an "<u>Asset Purchase Agreement</u>").  **Any Asset Purchase Agreement must provide that the Bidder will close on a sale of the Real Property by no later than May 31, 2025, or earlier as instructed by the Trustee as per such parcel of Real Property.**  A Bid also must include a copy of a redline reflecting all of the changes to the

---

[3] A Word copy of the Form APA will be available in the data room.  Also, a party can request a copy by contacting counsel to the Trustee, Chipman Brown Cicero & Cole, LLP, Attn: David Carickhoff (carickhoff@chipmanbrown.com) and Alan Root (root@chipmanbrown.com).

4

        Form APA requested by the Bidder (a "Redline APA").

(iii)   Purchase Price: The proposed purchase price for the subject Real Property must be consistent with the Trustee's view of the value for the subject Real Property (i.e., a low ball offer will not be considered Final Qualifying Bid).

(iv)   Real Property to be Purchased: A Bid may be for any parcel of Real Property or for all of the Real Property and must identify with particularity any parcel of Real Property that the Bidder proposes to purchase and, if two or more parcels of Real Property are identified, provide the allocation of the Purchase Price that is attributable to each parcel of Real Property.

(v)   Designation of Assigned Contracts: A Bid must identify with particularity each and every contract and lease with respect to which the Bidder seeks assignment from the Trustee.

(vi)   Designation of Assumed Liabilities. A Bid must identify with particularity any and all liabilities that the Bidder proposes to assume.

(vii)   Corporate Authority: A Bid must include written evidence reasonably acceptable to the Trustee demonstrating appropriate corporate authorization to consummate the proposed Sale Transaction; provided that, if the Bidder is an entity specially formed for the purpose of effectuating the Sale Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Trustee of the approval of the Sale Transaction by the equity holder(s) of such Bidder.

(viii)   Disclosure of Identity of Bidder: A Bid must fully disclose the identity of each entity that will be bidding for or purchasing the Real Property, including any equity holders, in the case of a Bidder which is an entity specially formed for the purpose of effectuating the contemplated transaction, or otherwise participating in connection with such Bid, and the complete terms of any such participation, including any agreements, arrangements or understandings concerning a collaborative or joint bid or any other combination concerning the proposed Bid. A Bid must also fully disclose any connections or agreements with the Debtors, or any other known, potential or prospective Bidder or Final Qualified Bidder, and/or any current or former officer, director or equity holder of the Debtors.

(ix)   Proof of Financial Ability to Perform: A Bid must include written evidence that demonstrates, as determined by the Trustee in consultation with his advisors and the Prepetition Secured Creditors, that the Bidder has the necessary financial ability to close the Sale Transaction and provide adequate assurance of future performance under all contracts and leases to be assumed and assigned in the Sale Transaction.

(x)   Contact Information and Affiliates: The Bid must provide the identity and contact information for the Bidder and full disclosure of any affiliates of the

5

Bidder.

(xi) No Contingencies: A Bid may not be conditioned on obtaining financing, any internal approvals or credit committee approvals, or on the outcome or review of unperformed due diligence.

(xii) No Collusion: Each Bidder submitting a Bid must confirm in writing that it has not engaged in any collusion with respect to the bidding or the Sale.

(xiii) Irrevocable: A Bid must be irrevocable until five (5) business days after the Sale Hearing for the subject Real Property, provided that if such Bid is accepted as the Successful Bid or the Backup Bid (each as defined herein) for one or more parcel of Real Property, such Bid shall continue to remain irrevocable, subject to the terms and conditions of the Bid Procedures.

(xiv) Compliance with Diligence Requests: A Bidder submitting a Bid must have complied with reasonable requests for additional information and due diligence access from the Trustee to the satisfaction of the Trustee.

(e) Submission of Bids: The following parties must receive a Final Qualifying Bid in writing (in both PDF and Word format): (1) the Trustee, Alfred T. Giuliano (atgiuliano@giulianomiller.com); (2) bankruptcy counsel to the Trustee, Chipman Brown Cicero & Cole, LLP, Attn: David Carickhoff (carickhoff@chipmanbrown.com) and Alan Root (root@chipmanbrown.com); (3) the Trustee's exclusive real estate broker, JLL, Attn: James Galbally (James.Galbally@jll.com), Fran Coyne (Fran.Coyne@jll.com) and Samantha Kupersmith (Samantha.Kupersmith@jll.com). All such Final Qualifying Bids received shall be shared by bankruptcy counsel to the Trustee with the Prepetition Secured Creditors through their legal and financial advisors.

(f) Evaluation of Final Qualified Bids: The Trustee, in consultation with his advisors and the Prepetition Secured Creditors and their advisors, reserves the right to determine the value of any Final Qualified Bid (either by itself or in connection with one or more other Final Qualified Bid), and which Final Qualified Bid(s) constitutes the highest, best and otherwise financially superior offer(s) for the subject Real Property. If one or more Final Qualified Bid is received for any parcel of Real Property, the Trustee and his advisors, in consultation with the Prepetition Secured Creditors and their advisors, will review and evaluate each Final Qualified Bid.

(g) Stalking Horse Bidder and Breakup Protections. To ensure Final Qualified Bidders are willing to proceed to closing, the Trustee, in consultation with his advisors and the Prepetition Secured Creditors and their advisors, may designate a Successful Bid as a "Stalking Horse Bid" (and such bidder a "Stalking Horse Bidder") which may provide, in the Trustee's discretion (in consultation with his advisors and the Prepetition Secured Creditors and their advisors), such Stalking Horse Bidder any of the following breakup fee protections: (a) a breakup fee not to exceed 3% of the

purchase price (the "Breakup Fee"), (b) an expense reimbursement for documented expenses not to exceed 2% of the purchase price ("Breakup Expense Reimbursement"), (c) the right to credit bid the Breakup Fee and Breakup Expense Reimbursement at any subsequent auction before the sale hearing, and (d) a requirement that any topping bid must be not less than 6% of the Successful Bid's purchase price (collectively, the "Breakup Protections").  To be eligible for payment of any Breakup Fee and Breakup Expense Reimbursement, the Stalking Horse Bidder must not be in breach of its obligations under the APA, the APA must be terminated only on the basis that competing transaction was higher and better (a "Competing Transaction"), and the Trustee must close on such Competing Transaction.  Any Breakup Fee and Breakup Expense Reimbursement shall be payable solely from the proceeds of a closing on the sale of the subject Real Property under a Competing Transaction.

A timely Bid received from a Bidder that meets the requirements of paragraph d above, as determined by the Trustee in consultation with his advisors and the Prepetition Secured Creditors, shall constitute a "Final Qualified Bid," and such Bidder shall constitute a "Final Qualified Bidder"; provided that if the Trustee receives a Bid that is not a Qualified Bid, the Trustee may provide the Bidder with the opportunity to remedy any deficiencies; provided, further, that, if any Final Qualified Bidder fails to comply with reasonable requests for additional information and due diligence access from the Trustee to the satisfaction of the Trustee, the Trustee may, after consulting with his advisors and the Prepetition Secured Creditors and their advisors, disqualify any Final Qualified Bidder and Final Qualified Bid, in the Trustee's discretion. **A Final Qualified Bid may be for all or any parcel of the Real Property.**

**Each Final Qualified Bidder, by submitting a Bid, shall be deemed to acknowledge and agree that it is not relying upon any written or oral statements, representations, promises, warranties or guarantees of any kind whether expressed or implied, by operation of law or otherwise, made by any person or party, including the Trustee, JLL, the Prepetition Secured Creditors, and their professionals, agents, representatives, and independent contractors (other than as may be set forth in a definitive agreement executed by the Trustee), regarding the Debtors, the Real Property, these Bid Procedures or any information provided in connection therewith.**

### Selection of a Successful Bid and a Backup Bid

If one or more Final Qualified Bid is timely received, the Trustee and his advisors, in consultation with the Prepetition Secured Creditors and their advisors, will (i) identify and certify the bid(s) that constitutes the highest and best offer for the subject Real Property (such bid(s), the "Successful Bid(s)" and such person(s) submitting such bid(s) the "Successful Bidder(s)"), and (ii) identify and may, in their discretion, certify the bid(s) that constitutes the next highest or best offer(s) for the subject Real Property (such bid the "Backup Bid(s)" and such person(s) submitting such bid(s) the "Backup Bidder(s)"), and, in each case, so notify the Successful Bidder(s) and Backup Bidder(s).  The determination of which Final Qualified Bid(s) is to be selected as the Successful Bid(s) will take into account any factors the Trustee reasonably deems relevant to the value of the Final Qualified Bid(s) to the Estate and may include, but are not limited to, the following:  (a) the amount of the consideration and the resulting recovery to holders of general

unsecured claims; (b) the number, type and nature of any changes to the Form APA requested by each Bidder; (c) the extent to which such modifications are likely to delay closing of the sale of the subject Real Property and the cost to the Estate of such modifications or delay; (d) the total consideration to be received by the Estate, including the assumption of any liabilities of the Estate; (e) the Bidder's ability to close a transaction and the timing thereof; and (f) the net benefit to Estate (collectively, the "Bid Assessment Criteria").

Any Backup Bidder(s) shall be required to keep their Bid(s) (the "Backup Bid(s)") open and irrevocable until the earlier of: (i) the closing of the transaction with the Successful Bidder(s); or (ii) 30 days after the Sale Hearing for the subject Real Property.

The Trustee shall file a motion seeking approval of each Successful Bid.

Following the Sale Hearing, if a Successful Bidder fails to consummate the purchase of the Real Property, the Trustee may deem the applicable Backup Bidder to have the new prevailing bid, and the Trustee will be authorized, without further order of the Bankruptcy Court, to consummate the transaction with such Backup Bidder. In such case of a failure to consummate the purchase of the Real Property on the part of such Successful Bidder, the defaulting Successful Bidder's Good Faith Deposit shall be forfeited to the Trustee for the benefit of the Estate. In addition, the Trustee, on behalf of the Estate, specifically reserves the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Backup Bidder designated as a Successful Bidder) in accordance with the terms of the Bid Procedures.

## Sale Is As Is/Where Is

Except as otherwise set forth in the Asset Purchase Agreement of the Successful Bidder or the Sale Order, any sale of the Real Property pursuant to the Bid Procedures shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Trustee, his, professionals, representative, agents or independent contractors or the Estates. **By submitting a Bid, each Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Real Property prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Real Property in making its Bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Real Property, or the completeness or accuracy of any information provided in connection therewith, except as expressly stated in these Bid Procedures or as set forth in the Asset Purchase Agreement of a Successful Bidder or the Sale Order.**

## Sale Hearing

The Successful Bid(s) and the Backup Bid(s) will be subject to approval by the Bankruptcy Court. A hearing to approve the Successful Bid(s) and any Backup Bid(s) (the "Sale Hearing") shall take place at the Court's earliest convenience after a sale motion is filed. The Sale Hearing may be adjourned by the Trustee from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date

scheduled for the Sale Hearing, or by filing a notice on the docket of Debtors' chapter 7 cases.

## Return of Good Faith Deposits

The Good Faith Deposits of all Qualified Bidders shall be held in one or more segregated accounts by the Trustee. The Good Faith Deposit of any Final Qualified Bidder that is neither a Successful Bidder nor a Backup Bidder shall be returned to such Final Qualified Bidder not later than ten (10) business days after the Sale Hearing for the subject Real Estate. The Good Faith Deposit of any Backup Bidder shall be returned to any Backup Bidder the earlier of: (i) five (5) business days after the closing of the transaction with the Successful Bidder; or (ii) 45 days after the Sale Hearing. If a Successful Bidder timely closes the winning transaction, its Good Faith Deposit shall be credited towards the purchase price, in accordance with the Successful Bidder's Asset Purchase Agreement.

## Reservation of Rights of the Trustee

Except as otherwise provided in these Bid Procedures or the Bid Procedures Order, the Trustee reserves the right, in his sole discretion, as he may reasonably determine to be in the best interest of the Estates, to: (a) determine which bidders are Final Qualified Bidders; (b) determine which Bids are Final Qualified Bids; (c) determine which Final Qualified Bid(s) constitute the highest or best proposal(s) and which constitute the next highest or best proposal(s); (d) reject any Bid that is (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bid Procedures or the requirements of the Bankruptcy Code or (3) contrary to the best interests of the Debtor and the Estate; (e) waive non-compliance with any of the terms and conditions set forth herein as he determines to be in the best interests of the Estate, creditors, and other parties in interest; (f) impose additional terms and conditions with respect to all potential bidders; (g) extend the deadlines set forth herein; (h) continue or cancel the Sale Hearing in open court, or by filing a notice on the docket of the Debtors' chapter 7 cases, without further notice to creditors or other parties in interest; and (i) implement additional procedural rules that the Trustee determines, in his business judgment, will better promote the goals of the bidding process and discharge the Trustee's fiduciary duties; provided, however, that any modification or additions to the Bid Procedures shall be disclosed to each Final Qualified Bidder.