IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| The University of the Arts, *et al.*,[1] | Case No. 24-12140 (BLS) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: 2/5/25 @ 11:00 a.m. (ET)<br>Objection Deadline: 1/27/25 @ 4:00 p.m. (ET)<br>Overbid Deadline: 1/27/25 @ 4:00 p.m. (ET) |

**MOTION OF THE CHAPTER 7 TRUSTEE FOR ENTRY OF AN ORDER
(I) AUTHORIZING AND APPROVING THE SALE OF CERTAIN REAL PROPERTY
AND RELATED ASSETS LOCATED AT 201-211 S. BROAD STREET,
PHILADELPHIA, PA (TERRA HALL) FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES AND OTHER INTERESTS, (II) AUTHORIZING THE
ASSUMPTION AND ASSIGNMENT OF THE ASSUMED LEASES, AND
<u>(III) GRANTING OTHER RELATED RELIEF</u>**

Alfred T. Giuliano, the duly appointed chapter 7 trustee (the "**Trustee**") of the estates (the "**Estates**") of the above-captioned debtors (collectively, the "**Debtors**"), hereby moves this Court (the "**Motion**")[2] for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), (i) authorizing and approving the sale of certain real property and related assets located at 201-211 S. Broad Street, Philadelphia, PA (Terra Hall) to Temple University – of the Commonwealth System of Higher Education ("**Buyer**") pursuant to the terms and conditions of the Asset Purchase Agreement attached as **Exhibit B** (as subsequently amended or modified, the "**Purchase Agreement**"), free and clear of Liens, Claims, Interests and Encumbrances (collectively, "**Liens**"), except as set forth in the Purchase Agreement, (ii) authorizing the

---

[1] The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors, where applicable, are: The University of the Arts (9911); and U of Arts Finance LLC (9911).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Purchase Agreement (as defined below).

assumption and assignment of certain leases, and (iii) granting related relief.  In support of this Motion, the Trustee respectfully represents as follows:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over the chapter 7 cases, the Debtors, property of the Debtors' Estates, and this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).  Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Trustee consents to the entry of a final judgment or order with respect to this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2. Venue of these cases in this District is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested are sections 105(a), 363 and 365 of title 11 of the United States Code (the "**Bankruptcy Code**").  The relief is also appropriate under Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rule 6004-1.

## BACKGROUND

A. **GENERAL BACKGROUND.**

4. On September 13, 2024 (the "**Petition Date**"), the Debtors each filed a voluntary petition under chapter 7 of the Bankruptcy Code in the Court, thereby commencing these cases (the "**Chapter 7 Cases**").

5. Alfred T. Giuliano has been appointed as chapter 7 trustee for the Debtors' Estates. The Section 341 meeting of creditors was held and concluded.

6.      Prior to the Petition Date, Debtor The University of the Arts ("**UArts**") was a Pennsylvania nonprofit corporation serving as an institute of higher learning focusing on the arts.

7.      Prior to the Petition Date, UArts entered into a lease agreement with JPMorgan Chase Bank, N.A. dated January 30, 2024 (the "**Chase Lease**"), pursuant to which UArts, as landlord, rents certain of its space at Terra Hall to JPMorgan Chase Bank, N.A., as tenant. While the Chase Lease was signed on January 30, 2024, the lease did not commence until December 3, 2024, as certain improvements were required before commencement. Under the Chase Lease, UArts is required to pay commissions to broker Metro Commercial Real Estate, Inc. ("**Metro**"). The listing agreement with Metro requires half of the fee due upon signing of the lease and the second half due upon the earlier of commencement of the lease or tenant opening for business. The Trustee believes that the current amount owed to Metro under the Chase Lease is $229,000 (the "**Chase Lease Cure Amount**").

8.      Prior to the Petition Date, UArts entered into an Equipment Services Contract No. 500-50178474 for HVAC cooling systems with Engie Resources LLC dated March 31, 2021, which contract was assigned by Engie Resources LLC to De Lage Landen Financial Services, Inc. (the "**DLL Lease**" and together with the Chase Lease, the "**Assumed Leases**"). The Trustee believes that the current amount owed to De Lage Landen Financial Services, Inc. under the DLL Lease is $230,132.79 (the "**DLL Lease Cure Amount**" and together with the Chase Lease Cure Amount, the "**Cure Amounts**").

9.      The Trustee has retained Jones Lang LaSalle Americas, Inc. ("**JLL**"), as the Trustee's exclusive real estate broker to assist with the sale of the nine properties in Philadelphia, Pennsylvania owned by UArts: (i) Anderson Hall – 329-335 S. Broad Street; (ii) Furness Hall & Outer Structures – 320R. S. Broad Street; (iii) Hamilton Hall & Outer Structures – 320 S. Broad Street; (iv) Spruce Hall – 1224-1234 Spruce Street; (v) Gershman Hall/Student Center – 401 S.

Broad Street; (vi) Juniper Hall – 311 S. Juniper Street; (vii) Arts Bank – 601 S. Broad Street; (viii) Philadelphia Arts Alliance – 251 S. 18th Street; and (ix) Terra Hall – 201-211 S. Broad Street.

10.  Since the retention of JLL was approved on November 1, 2024, JLL has been aggressively marketing the real property. JLL has distributed more than 27,000 emails to potential buyers, has signed up more than 150 CA/NDAs, and has already completed more than 40 property tours. Potential buyers were asked to submit preliminary offers by December 11, 2024. After the preliminary offers were reviewed by the Trustee and JLL (in consultation with the Prepetition Secured Creditors[3]), potential buyers were asked to submit more formal offers by December 17, 2024, and to provide additional information in connection with their ability to close on a transaction.

11.  On December 13, 2024, the Trustee filed a motion seeking approval of certain due diligence reimbursements, approval of certain bid procedures, and approval of certain stalking horse procedures (the "**Bid Procedures Motion**"). On December 20, the Court entered an order approving the Bid Procedures Motion.

**B.   THE PROPOSED SALE**

12.  As set forth above, the Trustee and JLL have been focused on maximizing the value of the Real Property of UArts' bankruptcy estate (the "**Estate**") and have been engaged with various potential bidders.

13.  The Buyer provided the Trustee and JLL with an indication of interest, which after JLL's various discussions with other potential bidders, was the highest and best offer received. The Trustee, together with his professionals, engaged in substantial arm's length negotiations with

---

[3]  As defined in the Final Order (A) Authorizing the Trustee to Use Cash Collateral, (B) Granting Adequate Protection, (C) Modifying the Automatic Stay, (D) Approving Sharing Arrangement Under Federal Rule of Bankruptcy Procedure 9019, and (E) Granting Related Relief [Dkt. No. 93] (the "**Final Cash Collateral Order**").

the Buyer, resulting in the execution of the Purchase Agreement. After these negotiations, the Trustee determined, in his business judgment, that the current bid by the Buyer for the Property (as defined in the Purchase Agreement) constituted the highest and otherwise best bid under the circumstances. The Trustee likewise determined, in his business judgment and based on the same criteria, that a further marketing and/or bid procedures process would not be in the best interest of the Estate given the efforts already taken and the attendant delay and costs associated with a further process.

14. Accordingly, the Trustee seeks to sell the Property to the Buyer pursuant to the Purchase Agreement via a private sale free and clear of all Liens (except as set forth in the Purchase Agreement). Notwithstanding the foregoing, as set forth in section 3.A of the Purchase Agreement, the Trustee reserves the right to pursue any binding proposal for a competing transaction for the Property that the Trustee determines, in his business judgment is higher and/or better than the transaction contemplated by the Purchase Agreement (a "**Competing Transaction**"), <u>provided however</u> that any proposals for a Competing Transaction must be submitted in writing to the Trustee no later than **January 27, 2025 at 4:00 p.m. (ET)** (the "**Overbid Deadline**"). In the event that the Trustee receives a binding Competing Offer by the Overbid Deadline, the Trustee shall conduct an open call auction for the Property within two business days of the Overbid Deadline.

15. In accordance with Local Rule 6004-1, below is a summary of the proposed sale.[4]

| **Seller/Debtor** | Alfred T. Giuliano, solely as chapter 7 trustee for the bankruptcy estate of The University of the Arts |
|---|---|
| **Purchaser/Buyer** | Temple University – of the Commonwealth System of Higher Education |

---

[4] The following summary is qualified in its entirety by reference to the Purchase Agreement, which shall control in the event of any inconsistency. All parties are encouraged to review the full terms of the Purchase Agreement. Capitalized terms used but not otherwise defined shall have the meaning ascribed in the Purchase Agreement.

| | |
|---|---|
| **"As Is, Where Is" Sale** | The sale of the Property is on an "as is, where is" basis and without representations of any kind, nature or description by the Trustee, JLL, the Estate or their respective agents, professionals or representatives, except to the extent set forth in the Purchase Agreement. |
| **Property** | At the Closing, and upon the terms and conditions set forth in the Purchase Agreement, Seller shall sell to Buyer, and Buyer shall acquire from Seller, the Premises, including all buildings and other improvements located thereon (the "**Improvements**"), together with (i) all of Seller's right, title, and interest in and to any and all equipment, machinery and personal property located at the Premises and used in conjunction with the use, operation and maintenance of the Premises and Improvements, (ii) any land lying in the bed of any street, road or alley, open or proposed, in front, abutting or adjoining the subject property, (iii) any easement, privilege, license or right-of-way relating to the subject property, (iv) the appurtenances and hereditament belonging or otherwise pertaining to the subject property, and and (v) to the extent assignable, all of Seller's right, title and interest in and to the licenses, permits, certificates and other intangible personal property relating to the use, operation or ownership of the Premises and the Improvements (collectively, along with the Premises and Improvements, the "**Property**"). Seller shall make such sale to Buyer free and clear of all Liens, Claims, Interests and Encumbrances. |
| **Excluded Assets** | Any assets that are not Property are excluded assets. |
| **Assignment of Contracts and Leases** | The Chase Lease and the DLL Lease are to be assumed and assigned under the Purchase Agreement. |
| **Purchase Price** | The aggregate consideration for the sale and transfer of the Property is the amount of $18,000,000.00 US Dollars in cash (the "**Purchase Price**"), plus payment of the Cure Amounts. The Purchase Price shall be payable and deliverable in accordance with Section 4.C of the Purchase Agreement. |
| **Assumption of Liabilities** | None other than those in connection with the Assumed Leases |
| **Other Highlighted Terms Under Del. Bankr. L.R. 6004-1(b)(iv)** | **Sale to an Insider**: The Buyer is not an insider (as defined in the Bankruptcy Code) of the Debtor.<br><br>**Agreements with Management**: No agreements in connection with the proposed sale have been entered into between Buyer and the Debtors' prior management.<br><br>**Releases**: Not applicable. The Purchase Agreement does not contain any releases.<br><br>**Private Sale/No Competitive Bidding**: The Sale is a private sale. No additional marketing or competitive bidding is contemplated. However, as set forth above and in Section 3.A of the Purchase Agreement, the Trustee may consider bids for Competing Transactions submitted by the Overbid Deadline and, if a bid for a Competing Transaction is timely received, the Trustee shall hold an open call auction within 2 business days of the Overbid Deadline.<br><br>**Closing**: Closing shall occur within 10 days following entry of the Approval Order, unless extended by the Trustee and Buyer by mutual agreement. |

|  | **Deposit:** The Buyer has delivered a deposit of $1,800,000.00. If the Purchase Agreement is terminated without the Closing occurring, the Deposit shall be disbursed in accordance with Section 8 of the Purchase Agreement. If the Closing occurs, the Deposit shall be applied (without interest) towards payment of the Purchase Price. |
|---|---|
|  | **Use of Proceeds**: The Purchase Agreement does not address the use of sale proceeds, other than as necessary to satisfy customary closing costs, on the terms set forth in the Purchase Agreement. |
|  | **Tax Exemption**: Not applicable. |
|  | **Record Retention**: The Property does not include books and records necessary for the Trustee to administer the Estate. |
|  | **Sale of Avoidance Actions**: The proposed sale does not include avoidance actions or any other Estate causes of action. |
|  | **Requested Findings as to Successor Liability**: The Trustee is seeking to sell the Property free and clear of successor liability claims to the fullest extent permissible under applicable law. |
|  | **Relief from Bankruptcy Rule 6004(h)**: As noted in the Motion, the Trustee requests relief from the 14-day stay imposed by Bankruptcy Rule 6004(h). |

## RELIEF REQUESTED

16.     By this Motion, the Trustee seeks entry of the Proposed Order, pursuant to sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006 and Local Rule 6004-1(b), (i) approving the sale of the Property to the Buyer as set forth in the Purchase Agreement, (ii) authorizing the assumption and assignment of the Chase Lease and the DLL Lease to Buyer, and (iii) granting other related relief.

## BASIS FOR RELIEF

**A.     The Sale is Appropriate Under Section 363(b)(1) of the Bankruptcy Code and Bankruptcy Rule 6004(f)(1)**

17.     Section 363(b) of the Bankruptcy Code provides, in relevant part: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). This Court's power under section 363 of the Bankruptcy Code is supplemented by section 105(a) of the Bankruptcy Code, which provides in

relevant part: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *Id*. § 105(a).

18. Further, pursuant to Bankruptcy Rule 6004(f)(1), sales of property may be by private sale or public auction. The paramount goal of either process is to maximize the proceeds of such sale and the recovery for the estate. *See In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004) (noting that the debtor "had a fiduciary duty to protect and maximize the estate's assets."); *see also CFTC v. Weintraub*, 471 U.S. 343, 352 (1985) (same); *Cadle Co. v. Mims* (*In re Moore*), 608 F.3d 253, 263 (5th Cir. 2010) (same).

19. Courts review a trustee's decision to use, sell, or lease property out of the ordinary course under the business judgment rule. *In re Culp*, 550 B.R. 683, 697 (D. Del. 2015) ("'In determining whether to authorize use, sale or lease of property of the estate under [Section 363], courts require the [Trustee] to show that a sound business purpose justifies such actions.' If the bankruptcy trustee's decision evidences a sound business purpose, then the Bankruptcy Court should approve the sale." (quoting *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999)).

20. Courts have applied the following four factors in determining whether a sound business justification exists: (a) whether a sound business reason exists for the proposed transaction; (b) whether fair and reasonable consideration is provided; (c) whether the transaction has been proposed and negotiated in good faith; and (d) whether adequate and reasonable notice is provided. *See In re Del. & Hudson Ry. Co.*, 124 B.R. at 175–76 (adopting *Lionel* factors to consider in determining whether sound business purpose exists for sale outside ordinary course of business in this District); *Lionel Corp.*, 722 F.2d at 1071 (setting forth the "sound business" purpose test); *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143, 147–49 (3d Cir. 1986) (implicitly

adopting the articulated business justification test set forth in Lionel and adding the "good faith" requirement).

21.     Once a trustee articulates a valid business justification, his decision to sell property out of the ordinary course of business enjoys a strong "presumption that in making a business decision the [trustee] acted on an informed basis, in good faith and in an honest belief that the action taken was in the best interests of the company." *In re Integrated Res. Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). Therefore, any party objecting to a trustee's proposed asset sale must make a showing of "bad faith, self-interest, or gross negligence," as courts are loath to interfere with corporate decisions absent such a showing. *See id*. at 656; *see also In re Promise Healthcare Group, LLC*, et al., Case No. 18-12491 (CSS) [D.I. 770] (order approving the private sale of assets).

22.     It is well settled that the sale of assets outside of the ordinary course of business by means of a private sale can, and, in appropriate cases, should be approved. *See, e.g., In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) ("Unlike judicial sales under the former Bankruptcy Act, the sale of estate property under the Bankruptcy Code is conducted by a trustee, who has ample discretion… to conduct public or private sales of estate property.") (internal quotations and citations omitted); *In re Dewey & LeBeouf*, Case No. 12-12321 (MG), 2012 WL 5386276, at *6 (Bankr. S.D.N.Y. Nov. 1, 2012) (authorizing private sale of art collection because the debtor established a good business reason to proceed by private sale); *Penn Mut. Life Ins. Co. v. Woodscape Ltd. P'ship (In re Woodscape Ltd. P'ship)*, 134 B.R. 165, 174 (Bankr. D. Md. 1991) (noting that, with respect to sales of estate property pursuant to section 363 of the Bankruptcy Code, "[t]here is no prohibition against a private sale… and there is no requirement that the sale be by public auction.").

23. The Trustee, in his business judgment, believes that the sale of the Property to the Buyer maximizes value under the circumstances. Based on the marketing the Trustee and JLL have done to date, the Trustee believes in his business judgment that (i) the sale to the Buyer pursuant to the terms of the Purchase Agreement is the highest and best offer under the circumstances and (ii) it is unlikely that additional time marketing or running a bid process for the Property will lead to a higher or otherwise better bid. Accordingly, the Trustee respectfully submits that the proposed private sale of the Property to the Buyer should be approved.

### B. The Sale Should be Approved Free and Clear of Liens

24. Pursuant to section 363(f) of the Bankruptcy Code, the Trustee seeks authority to sell and transfer the Property free and clear of all Liens, with such Liens to attach to the net proceeds of the sale in the same order of priority, and to the same extent as such Liens were valid, perfected, and/or enforceable immediately prior to the sale, subject to the rights and defenses of the Trustee, the Estate, or any party in interest.

25. Under section 363(f) of the Bankruptcy Code, a trustee may sell property free and clear of any lien, claim, interest or encumbrance in such property if, among other things:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

26. Because section 363(f) is stated in the disjunctive, satisfaction of any one of its five requirements will suffice to warrant approval of the proposed sale free and clear of Liens. *See In re Collins*, 180 B.R. 447, 450 (Bankr. E.D. Va. 1995) ("Section 363(f) is phrased in the disjunctive,

such that only one of the enumerated conditions must be met in order for the Court to approve the proposed sale"); *Scherer v. Fed. Nat'l Mortg. Ass'n (In re Terrace Chalet Apts., Ltd.)*, 159 B.R. 821, 827 (N.D. Ill. 1993) (sale extinguishes liens under section 363(f) as long as one of the five specified exceptions applies).

27. The Trustee submits that section 363(f)'s standard for sales free and clear of Liens is also easily met. A sale free and clear of Liens is necessary to maximize the value of the Property. A sale subject to Liens would result in a lower purchase price and be of substantially less benefit to the Estate. Indeed, a sale free and clear of Liens is particularly appropriate under the circumstances of this case. Regardless, any Lien that exists immediately prior to the closing of the sale will attach to the net sale proceeds with the same validity, priority, force and effect as it had at such time, subject to the rights and defenses of the Trustee or any party in interest. Moreover, any holder of a Lien that receives notice of the proposed sale and which fails to object should be deemed to consent to the proposed sale, thereby complying with section 363(f)(2) of the Bankruptcy Code. Thus, the proposed sale satisfies section 363(f) of the Bankruptcy Code.

**C.   The Sale is Proposed in Good Faith**

28. Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

29. Section 363(m) "reflects the . . . 'policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely.'" *Abbotts Dairies of Penn., Inc.*, 788 F.2d at 147 (quoting *Hoese*

*Corp. v. Vetter Corp. (In re Vetter Corp.)*, 724 F.2d 52, 55 (7th Cir. 1983)). *See also United States v. Salerno*, 932 F.2d 117, 123 (2d Cir. 1991) (noting that section 363(m) furthers the policy of finality in bankruptcy sales and "assists bankruptcy courts in maximizing the price for assets sold in such proceedings"); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) (same).

30. While the Bankruptcy Code does not define "good faith", some courts have held that a good faith purchaser is one who "purchases the assets for value, in good faith, and without notice of adverse claims." *Hardage v. Herring Nat'l Bank*, 837 F.2d 1319, 1323 (5th Cir. 1988) (*quoting Willemain v. Kivitz (In re Willemain)*, 764 F.2d 1019, 1023 (4th Cir. 1985)). Furthermore, the good faith status of a purchaser can be destroyed with evidence of "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *TMT Procurement Corp. v. Vantage Drilling Co. (In re TMT Procurement* Corp.*)*, 764 F.3d 512, 521 (5th Cir. 2014).

31. The sale to the Buyer has been proposed in good faith. The Purchase Agreement is the product of extensive good faith, arm's length negotiations between the Trustee and his advisors, on the one hand, and the Buyer, on the other. The Trustee believes and submits that the sale of the Property to the Buyer pursuant to the terms and conditions of the Purchase Agreement is not the product of collusion or bad faith. No evidence suggests that the Purchase Agreement is anything but the product of arm's length negotiations between the Trustee and the Buyer. In connection with approval of the proposed sale, the Trustee requests that the Court make an express finding that the Buyer is a good faith purchaser and entitled to the protections of section 363(m) of the Bankruptcy Code.

32. Furthermore, the Trustee is unaware of any circumstances or facts that could be perceived as collusion or that the Buyer or any other party colluded.

**D. The Court Should Approve the Transfer, Assumption and Assignment of the Assumed Leases**

33. Under section 365 of the Bankruptcy Code, a trustee may assume, reject, or assume and assign executory contracts and unexpired leases. In accordance with section 365(a), a trustee, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The standard governing bankruptcy court approval of a trustee's decision to assume or reject an executory contract or unexpired lease is whether the trustee's reasonable business judgment supports assumption or rejection. *See Sharon Steel Corp. v. Nat'l Fuel Gas Dist. Corp.*, 872 F.2d 36, 39-40 (3d Cir. 1989). The business judgment test "requires only that the trustee demonstrate that [assumption or] rejection of the executory contract will benefit the estate." *Wheeling-Pittsburgh Steel Corp. v. W. Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987) (quoting *In re Stable Mews Assoc., Inc.*, 41 B.R. 594, 596 (Bankr. S.D.N.Y. 1984).

34. Bankruptcy Code section 365(b)(1), in turn, codifies the requirements for a trustee to assume an executory contract or unexpired lease. This subsection provides:

> (b) (1)  If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee —
>
> (A)  cures, or provides adequate assurance that the trustee will promptly cure, such default;
>
> (B)  compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C)  provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

35. With respect to assignment of an executory contract or unexpired lease, section 365(f)(2) of the Bankruptcy Code provides, in pertinent part, that:

> The trustee may assign an executory contract or unexpired lease of the debtor only if —
>
> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

36. The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical pragmatic construction." *EBG Midtown South Corp. v. McLaren/Hart Env. Eng'g Corp. (In re Sanshoe Worldwide Corp.)*, 139 B.R. 585, 593 (S.D.N.Y. 1992). Adequate assurance does not mean absolute assurance or a guarantee that the assignee will thrive and make all payments required under the subject contract. *See In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D. N.Y. 1985).

37. Here, section 365 of the Bankruptcy Code is satisfied and permits the assumption and assignment of the Assumed Leases to the Buyer. All Cure Amounts will be paid by Buyer to the appropriate party. Thus, no Cure Amount for an Assumed Lease will go unsatisfied. Moreover, Buyer can demonstrate adequate assurance of future performance.

38. The Trustee shall serve a copy of a cure notice (the "**Cure Notice**") on counsel for Metro and the non-Debtor counterparties to the Assumed Leases, providing notice of the proposed assumption and assignment of the Assumed Leases and the proposed Cure Amounts. A copy of the Cure Notice is attached hereto as **Exhibit C**. If no objections are filed, such parties should be bound by the Proposed Order and its provisions regarding assumption and assignment.

**E.      Waiver of Bankruptcy Rule 6004(h) and 6006(d)**

39.     Pursuant to Bankruptcy Rule 6004(h), unless the Court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for fourteen days after entry of the order. See Fed. R. Bankr. P. 6004(h).  Similarly, under Bankruptcy Rule 6006(d), unless the Court orders otherwise, all orders authorizing the assignment of executory contracts or unexpired leases are automatically stayed for fourteen days after entry of the order.  Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes thereto are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, *Collier on Bankruptcy* suggests that the stay period should be eliminated to allow a sale or other transaction to close immediately where there has been no objection to the procedure. 10 *Collier on Bankruptcy* ¶ 6004.09 (15th ed. 1999).  Furthermore, *Collier on Bankruptcy* provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time necessary to file such appeal. *Id.*

40.     The Trustee respectfully requests that the Court waive the fourteen (14) day stay period under Bankruptcy Rules 6004(h) and 6006(d).  Timely consummation of the proposed sale is of critical importance to both the Trustee and the Buyer and is vital to the Trustee's efforts to maximize the value of the Estate and avoid unnecessary ongoing administrative expenses.  Indeed, for that reason, the Trustee seeks to close the sale within 10 days of entry of approval, if possible. Accordingly, the Trustee hereby requests that the Court waive the fourteen (14) day stay period under Bankruptcy Rules 6004(h) and 6006(d).

**NOTICE AND NO PRIOR REQUEST**

41.     Notice of this Motion will be provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) the Pennsylvania Attorney General's Office; (iii) counsel for Buyer; (iv) counsel to the non-Debtor counter parties to the Chase Lease and the DLL Lease; (v)

counsel to Metro; (vi) any entities known by the Trustee to have asserted any Lien in or upon any of the Property; (vii) any party reasonably known by the Trustee to have expressed an interest in acquiring the Property; (viii) all creditors who timely filed a proof of claim against UArts; and (ix) any party that has requested notice in this case pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief herein, the Trustee respectfully submits that no further notice of this Motion is required.

**WHEREFORE**, the Trustee respectfully requests that this Court (i) enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion, and (ii) grant such other and further relief as this Court may deem just and proper.

Dated: January 10, 2025
Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

/s/ *David W. Carickhoff*
David W. Carickhoff (No. 3715)
Alan M. Root (No. 5427)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0192
Email:  carickhoff@chipmanbrown.com
         root@chipmanbrown.com

*Counsel for the Chapter 7 Trustee*