## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 7 |
| | Case No. 24-12140 (BLS) |
| The University of the Arts, *et al.,* | (Jointly Administered) |
| Debtor, | Hearing Date: February 5, 2024<br>Objection Deadline: January 27, 2025 @ 4 pm<br> Ref No. 157 |

### LIMITED OBJECTION OF DE LAGE LANDEN FINANCIAL SERVICES, INC. TO MOTION OF THE CHAPTER 7 TRUSTEE FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING THE SALE OF CERTAIN REAL PROPERTY AND RELATED ASSETS LOCATED AT 201-211 S. BROAD STREET, PHILADELPHIA, PA (TERRA HALL) FREE AND CLEAR OF LIENS, CLAIMS ENCUMBRANCES AND OTHER INTERESTS, (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF THE ASSUMED LEASES, AND (III) GRANTING OTHER RELATED RELIEF

De Lage Landen Financial Services, Inc. ("Creditor"), by and through its undersigned counsel, hereby files its Limited Objection (the "Objection") to the Chapter 7 Trustee's (the "Trustee") Motion for Entry of an Order (I) Authorizing and Approving the Sale of Certain Real Property  and Related Assets Located at 201-211 S. Broad Street, Philadelphia, PA (Terra Hall) Free and Clear of Liens, Claims Encumbrances and Other Interests, (II) Authorizing the Assumption and Assignment of the Assumed Leases, and (III) Granting Other Related Relief (the "Motion").  Creditor substantially supports the Motion and is simply filing the Objection as a protective measure to assure that its collateral is not sold "free and clear" of Creditor's liens.

### BACKGROUND

1.  De Lage Landen Financial Services, Inc. ("Creditor" or "DLL"), is a corporation with offices located at 1111 Old Eagle School Road, Wayne, PA 19087. The University of the Arts ("Debtor") is a non-profit corporation with an address of 320 South Broad Street, Philadelphia,

1

4923-6273-6914, v. 3

PA 19102.

2.   On or about March 31, 2021, Debtor entered a written equipment services contract, number 500-50178474 (the "Agreement"), with Engie Resources LLC ("Engie"), whereby Debtor agreed to obtain certain services and equipment, which relate to Terra Hall's HVAC system, and includes two electric-driven centrifugal chillers and pumps, and cooling towers on the roof, as well as electrical and structural revisions to support the HVAC system (collectively, the "Equipment").

3.   Creditor timely filed its proof of claim [No. 1], a true copy of which is attached hereto as **Exhibit "1."**

4.   Debtor granted Engle a security interest in the Equipment, pursuant to the Agreement. See Exhibit 1, "A," ¶ 19. Engle perfected its security interest in the Equipment by filing a UCC financing statement with the Secretary of the Commonwealth of Pennsylvania on April 1, 2021. See Exhibit 1, "B". Engle further perfected its security interest in the Equipment by filing a UCC fixture filing financing statement with the County of Philadelphia on April 5, 2021. See Exhibit 1, "C".

5.   Creditor is the successor to the rights, title, and interest of Engie under the Agreement. See a true and correct copy of the Acknowledgment of Assignment attached to Exhibit 1, at Exhibit "D".

6.   Through the Motion, the Trustee is seeking to assume and assign the Agreement.

7.   Through February 2025, the cure amount owed to Creditor is $255,923.79 (the "Full Cure Amount").

## OBJECTIONS

8.   Section 363(f) of the Bankruptcy Code authorizes a debtor to sell property of the estate under Section 363(b) free and clear of liens and other interests in such property, only if: (1)

applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona-fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

9.      Here, with respect to the Agreement and Collateral, it does not appear that the Trustee intends to satisfy the requirements of Section 363(f) vis-à-vis the Equipment, as the intention seems to be for the Agreement to be assumed and assigned, subject to Creditor's title and lien interests, subject to all  terms and conditions of the Agreement.

10.      Moreover, as part of its obligation to assume the Agreement in its entirety, the Debtor must provide adequate assurance of future performance. Creditor's lien rights must be preserved to provide such adequate assurance.

11.      Accordingly, the Order granting the Motion should be clear that the sale is not free and clear of Creditor's liens and encumbrances relating to the Equipment.

12.      Moreover, Creditor objects to the Motion to the extent it does not propose to pay the Full Cure Amount, including any additional amounts which accrue under the Agreement, up through and including the date the sale closes with the successful purchaser.

**WHEREFORE**, for the foregoing reasons, Creditor respectfully requests that the Court enter an order in accordance with the objection set forth herein.

Dated: January 23, 2025

Respectfully submitted,

**JOHN R. WEAVER, JR., P.A.**
**Attorney at Law**

_By: /s/ John R. Weaver, Jr_.
John R. Weaver, Jr.
2409 Lanside Drive
Wilmington, Delaware, 19801

3

(302) 655-7371 (direct)
jrweaverlaw@verizon.net

-and-

By: */s/ Joseph H. Lemkin*
Joseph H. Lemkin, Esquire
**STARK & STARK, P.C.**
A Professional Corporation
100 American Metro Blvd
Hamilton, NJ 08619
(609) 896-9060 (main)
(609) 895-7395 (facsimile)
jlemkin@stark-stark.com

4

# EXHIBIT 1

<table>
<tr><td colspan="2">

**Fill in this information to identify the case:**

</td></tr>
<tr><td colspan="2">Debtor 1    The University of the Arts</td></tr>
<tr><td colspan="2">Debtor 2<br>(Spouse, if filing)</td></tr>
<tr><td colspan="2">United States Bankruptcy Court    **District of Delaware**</td></tr>
<tr><td colspan="2">Case number:   **24–12140**</td></tr>
</table>

FILED

**U.S. Bankruptcy Court**
**District of Delaware**

9/19/2024

**Una O'Boyle, Clerk**

Official Form 410

**Proof of Claim**

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

**Part 1: Identify the Claim**

| | |
|---|---|
| 1. **Who is the current creditor?** | De Lage Landen Financial Services, Inc.<br><br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| 2. **Has this claim been acquired from someone else?** | ☒ No<br>☐ Yes. From whom? _____ |
| 3. **Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br>De Lage Landen Financial Services, Inc.<br>Name<br>c/o Stark & Stark, P.C. Attn: Marshall Kizner<br>100 American Metro Boulevard<br>Hamilton, NJ 08619<br><br>Contact phone _____ 6092197449 _____<br>Contact email<br>   mkizner@stark–stark.com<br><br>Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br>_____ | **Where should payments to the creditor be sent?** (if different)<br>Name<br><br>Contact phone _____<br>Contact email _____ |
| 4. **Does this claim amend one already filed?** | ☒ No<br>☐ Yes. Claim number on court claims registry (if known) _____ Filed on _____<br>MM / DD / YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☐ No<br>☐ Yes. Who made the earlier filing? _____ |

Official Form 410            Proof of Claim            page 1

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| **6. Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

**7. How much is the claim?**   $ _____1213315.17_____

Does this amount include interest or other charges?
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

See Schedule to Proof of Claim

**9. Is all or part of the claim secured?**

☐ No
☑ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*
☐ Motor vehicle
☑ Other. Describe:    See Schedule to Proof of Claim

**Basis for perfection:**    UCC–1

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

| | |
|---|---|
| **Value of property:** | $   1213315.17 |
| **Amount of the claim that is secured:** | $   1213315.17 |
| **Amount of the claim that is unsecured:** | $   1213315.17   (The sum of the secured and unsecured amounts should match the amount in line 7.) |

**Amount necessary to cure any default as of the date of the petition:**   $ _____

**Annual Interest Rate** (when case was filed)   _____ %

☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☐ No
☑ Yes. **Amount necessary to cure any default as of the date of the petition.**   $   125972.55

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

Official Form 410                     Proof of Claim                     page 2

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No ☐ Yes. *Check all that apply:* | | Amount entitled to priority |
|---|---|---|---|---|

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
$ _____

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).
$ _____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).
$ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).
$ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).
$ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies
$ _____

* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    9/19/2024

MM / DD / YYYY

/s/ Marshall Kizner

Signature

Print the name of the person who is completing and signing this claim:

| Name | Marshall Kizner |
|---|---|
| | First name   Middle name   Last name |
| Title | Shareholder |
| Company | Stark & Stark, P.C. |
| | Identify the corporate servicer as the company if the authorized agent is a servicer |
| Address | 100 American Metro Boulevard |
| | Number   Street |
| | Hamilton, NJ 08619 |
| | City   State   ZIP Code |
| Contact phone | 6092197449    Email   mkizner@stark–stark.com |

## **Schedule to Proof of Claim**

### *A. Background, Amount Due and Security Interest in Equipment*

De Lage Landen Financial Services, Inc. ("Creditor" or "DLL"), is a corporation with offices located at 1111 Old Eagle School Road, Wayne, PA 19087. The University of the Arts ("Debtor") is a non-profit corporation with an address of 320 South Broad Street, Philadelphia, PA 19102.

On or about March 31, 2021, Debtor entered into a written equipment services contract, number 500-50178474 (the "Agreement"), with Engie Resources LLC ("Engie"), whereby Debtor agreed to obtain certain services and equipment, which relates to the building's HVAC system, and includes two electric-driven centrifugal chillers and pumps, and cooling towers on the roof, as well as electrical and structural revisions to support this equipment (collectively, the "Equipment") set forth in the Agreement for a period of eighty-four (84) months ("Term"). See a true and correct copy of the Agreement attached hereto as Exhibit "A" and incorporated herein by reference. Pursuant to the Agreement, Debtor was responsible for paying Engie $26,040.06, per month, plus applicable taxes, during the Term. Engie performed its obligations by delivering the Equipment detailed in Schedule "A" of the Agreement. See Exhibit "A," Schedule "A." The Equipment was installed at Debtor's facility located at 211 Broad Street, Philadelphia, PA, commonly known as the "Terra Building." See Exhibit "A," Schedule "A." Engie further performed its obligations by providing services detailed in Schedule "A" of the Agreement. See Exhibit "A," Schedule "A."

Debtor granted Engle a security interest in the Equipment, pursuant to the Agreement. See Exhibit "A," ¶ 19. Engle perfected its security interest in the Equipment by filing a UCC financing statement with the Secretary of the Commonwealth of Pennsylvania on April 1, 2021. A true and correct copy of the UCC-1 Financing Statement is attached hereto as Exhibit "B". Engle further perfected its security interest in the Equipment by filing a UCC fixture filing financing statement with the County of Philadelphia on April 5, 2021. A true and correct copy of the financing statement is attached hereto as Exhibit "C".

DLL is the successor to the rights, title and interest of Engie under the Agreement. See a true and correct copy of the Acknowledgment of Assignment attached hereto as Exhibit "D" and incorporated herein by reference. Debtor is in default under the Agreement if it fails to make, when due, any payment required under the Agreement and the failure it not cured within five (5) business days following notice. On July 1, 2024, DLL sent Debtor notice and an opportunity to cure. See a true and correct copy of the notice and cure letter attached hereto as Exhibit "E" and incorporated herein by reference. Debtor failed to respond to the letter and did not remit payment to cure.

1

Debtor's failure to make payment to Creditor on or before the due date placed Debtor in default under the terms of the Agreement and caused the full balance to be due immediately. <u>See</u> Exhibit "A," ¶ 14 (b). The full balance due to DLL, by and through the date of the filing of the petition, September 13, 2024 is $1,213,315.17, which is broken down below:

| | |
|---|---|
| Past Due | $125,972.55 |
| Remaining payments | $1,083,363.93 |
| Subtotal | $1,209,336.48 |
| | |
| Attorney fees | $3,272.00 |
| Costs | $706.69 |
| | |
| TOTAL DUE | $1,213,315.17 |

### B. Reservation of Rights

Claimant further reserves the right to file additional proofs of claim for additional claims, including, without limitation, claims for administrative expenses and all other claims, at law or in equity, arising prior to, on, or after the petition date. Creditor further reserves the right to amend or supplement this Proof of Claim if it deems it necessary and appropriate, for any reason. Finally, Creditor reserves any rights of recoupment and setoff, and, if appropriate, may exercise such rights without further order of the Bankruptcy Court and without amending this Proof of Claim.

Creditor does not waive any rights or defenses at law or equity or any rights, defenses or causes of action that Creditor has or may have against any person, including but not limited to, the Debtor. This Proof of Claim is not intended to be, and shall not be construed as: (i) an election of remedies; (ii) a waiver of any defaults; (iii) an admission as to the jurisdiction of the Bankruptcy Court or a waiver to contest the jurisdiction of the Bankruptcy Court; (iv) a release of Creditor's right to have any and all final orders in any and all non-core matters or proceedings entered only after a de novo review by a United States District Court judge; (v) a waiver of the right to withdraw the reference with respect to the subject matter of this Proof of Claim, any objection thereto or other proceeding which may be commenced in these cases against or otherwise involving Creditor; or (vi) a waiver or limitation of any rights, remedies, claims, defenses or interests of Creditor.

4882-4424-7782, v. 1

# EXHIBIT A

This agreement ("**Agreement**") is entered into and effective as of March 31, 2021 ("**Effective Date**") by and between ENGIE RESOURCES LLC ("**Engie**"), with principal offices located at 1360 Post Oak Blvd., Suite 400, Houston, TX 77056, and THE UNIVERSITY OF THE ARTS ("**Customer**"), with principal offices located at 320 S. Broad St., Philadelphia, PA, 19102, each a "**Party**". Customer wishes to engage Engie to design, install and/or service certain lighting and/or other energy efficiency solutions for Customer. Capitalized terms not defined herein have the meanings set forth on Schedule A attached hereto and incorporated herein. In consideration of the promises and other terms and conditions set forth herein, the Parties agree as set forth below:

**1. Services and Equipment.** Engie will provide all work, services and supplies to deliver and install the System, including without limitation the Equipment, at the Facility pursuant to a subcontract with a contractor selected by Customer. Such work, services, supplies and maintenance are hereinafter referred to as the "**Services**" and are identified on Schedule A. Engie hereby assigns to Customer and shall deliver to Customer all warranties Engie receives from the contractor for the Equipment and Services. If supplemental schedules are executed by the Parties with respect to this Agreement, Schedule A shall be deemed to incorporate each such supplemental schedule by reference.

**2. Cooperation; Access.** Customer shall cooperate with Engie as necessary to allow Engie to timely, properly and effectively perform the Services. Customer shall provide Engie, its employees, agents and subcontractors reasonable access to the Facility for purposes of performing the Services. Engie shall require its personnel and subcontractors to comply with Customer's safety, security, and other applicable jobsite requirements. Engie shall be responsible, at its own cost, to obtain all permits, if any, required by any governmental body with jurisdiction over the Services to be provided.

**3. Change Orders.** Any proposed changes to the System, together with any associated schedule or cost impacts, shall be set forth in a Change Order. Change Orders shall not be effective until executed by both Customer and Engie.

**4. Service Fee.** On the first day of each month following the Effective Date through the end of the Term, Customer shall pay Engie the Service Fee (adjusted for any Change Orders). Late payments shall incur interest equal to the lesser of 1.5% per month and the maximum rate allowed by law.

**5. Term.** Except as expressly provided herein, this Agreement may not be terminated or canceled for any reason whatsoever. The term ("**Term**") of this Agreement begins on the Effective Date and ends at the conclusion of the Service Period.

**6. Early Termination.** At any time during the Term, Customer may terminate this Agreement by written notice to Engie and payment of the "**Termination Fee**", which shall equal the sum of (i) all unpaid amounts then due, (ii) the Service Fees for the entire remainder of the Term and (iii) the System's Fair Market Value as defined in Section 9 ("**Fair Market Value**"). Upon indefeasible payment of the Termination Fee, all right, title and interest of Engie in the System shall be deemed conveyed to Customer AS-IS, WHERE-IS, without warranty or representation other than that the System is free and clear of liens and encumbrances arising by or through Engie. If Customer does not elect to purchase the System, Customer shall return the System to Engie at a location reasonably designated by Engie in good condition, normal wear and tear excepted.

**7. Time of Completion.** Engie shall use commercially reasonable efforts to complete the System on or before the Target Completion Date, unless delayed by accidents, weather, or delays caused by the Customer or the equipment manufacturer, or other reasonable cause, in which case the Target Completion Date shall be extended, day for day, by the number of days of such occurrence. If the System is not completed on or before the Target completion Date as may be extended above, then with respect to each day after the Target Completion Date, Engie will pay to Customer liquidated damages in an amount calculated as follows ("Delay Damages Payment"), whereby, such Delay Damages Payments will be Engie's sole and exclusive remedy for such delays:

| Number of Days of Delay after the Target Completion Date (TCD) | Delay Amount |
| --- | --- |
| Day 1 until day 15 after the TCD | $50.00 per day |
| Day 16 until day 30 after the TCD | $150.00 per day |
| Day 31 until day 45 after the TCD | $200.00 per day |
| Day 45 until day 60 after the TCD | $300.00 per day |

If Delay Damages Payments are owed by Engie to Customer, Engie will pay to Customer the Delay Damages Payment on a monthly basis, as applicable.

**8. Energy Efficiency Savings Estimate.** Any savings estimates provided by Engie in connection with this Agreement represent Engie's reasonable expectation of the savings Customer may be able to achieve through the installation and operation of the System. Any such estimates are provided for information purposes only and are not guaranteed in any way. Customer understands the actual results may vary.

**9. End of Term Options.** If Schedule A includes an option to purchase the Equipment at the end of the Term for Fair Market Value upon the expiration of the Term, Customer may (a) extend or renew the Term by mutual written agreement with Engie on such terms as the parties may agree upon; (b) purchase all, but not less than all, of the System for the Fair Market Value, which amount Customer shall remit to Engie within 10 days after the expiration of the relevant Service Period. If neither option is exercised, the Agreement shall automatically renew on a month-to-month basis until either Party delivers to the other written notice of non-renewal. "Fair Market Value" means the fair market value of the System as reasonably determined by Engie based on in-place and continued use value. If Schedule A includes an option to purchase the Equipment at the end of the Term for one dollar, such payment shall be deemed included in the final Service Fee payment. If Schedule A includes a purchase option, subject to receipt of the applicable option price and all other amounts due under this Agreement, Engie shall be deemed to have conveyed the System to Customer effective as of the expiration of the Term, as extended, AS-IS, WHERE-IS, without representation or warranty. Notwithstanding anything in this Agreement to the contrary, Engie may abandon any Equipment upon the expiration of the Term or thereafter by written notice to Customer, in which event title to the Equipment shall be deemed conveyed to Customer AS-IS, WHERE-IS.

**10. Title, Personal Property, Location and Liens.** The System is and shall at all times be the sole and exclusive property of Engie, and Customer shall have no right, title or interest therein, except as to the use thereof subject to the terms and conditions of this Agreement. Customer will not modify the System in any way without the prior written consent of Engie. Customer will not allow to exist any lien, claim or encumbrance (each, a "**Lien**") on or with respect to the System, (except such Liens as may arise through the acts of Engie). Customer, at its own expense, will promptly pay, satisfy or otherwise take such actions as may be necessary to keep the System free and clear of any and all such Liens. The System is and shall at all times shall remain personal property notwithstanding how it or any item thereof may now be or hereafter become affixed, attached, imbedded in resting upon real property or any improvement thereof. The System shall at all times during the Term be kept at the Facility and shall not be removed therefrom or released from the possession of the Customer without Engie's prior written consent. Engie may attach markings to the System indicating the Engie's ownership thereof. All equipment, software, upgrades, parts and replacements for or which are added to or become attached to or a part of a System shall be deemed incorporated into the System and become the property of Engie.

**11. Taxes.** Customer shall be responsible for and shall indemnify, defend and hold Engie harmless from and against all present and future taxes and other governmental charges arising in connection with the purchase, ownership, delivery, possession or use of the System or the Services or Service Fees, including personal property tax but excluding taxes

Initials: 

based on Customer's net income or net worth (including Philadelphia's business income tax and net profits tax). The Service Fee includes personal property taxes in effect as of the Effective Date. Customer shall reimburse Engie for personal property tax increases during or with respect to the Term, whenever assessed. Notwithstanding the foregoing, if the Schedule includes an option to purchase the Equipment for less than Fair Market Value, Customer shall be solely responsible for filing and paying all personal property taxes.

**12. Risk of Loss.** ENGIE shall bear the entire risk of loss, destruction or damage to the System from any and every cause whatsoever, whether or not insured, until delivery of the System to the Customer's premises, excepting loss or liability caused by Customer's negligence or malfeasance. Following the delivery of the System at the Customer's premises, Customer shall bear the entire risk of loss, destruction or damage to the System from any and every cause whatsoever ("**Casualty**"), whether or not insured, excepting loss or liability caused by ENGIE's negligence or malfeasance. Casualty shall not relieve Customer from any obligation under this Agreement. Customer shall notify Engie in writing of any Casualty within 5 days thereof and shall, at the option of Engie: (a) return the System to good repair, condition and working order; or (b) pay Engie the Termination Fee.

**13. Events of Default.** "**Event of Default**" shall mean any one or more of the following: (a) Customer shall fail to make, when due, any payment required under this Agreement if such failure is not remedied within 5 business days following notice; (b) Customer shall fail to perform or observe any covenant or condition set forth herein and such failure is not cured within 30 days following notice; (c) Customer or any guarantor of Customer's obligations or liabilities hereunder ("**Guarantor**") shall enter into any transaction of merger or consolidation in which it is not the surviving entity or sell, transfer or otherwise dispose of all or substantially all of its assets; (d)(i) Customer or any Guarantor shall commence any action: (A) for relief under any existing or future law of any jurisdiction, domestic or foreign, relating to bankruptcy, insolvency, reorganization or relief of debtors; or (B) seeking appointment of a receiver, custodian or other similar official for it or for its assets or making a general assignment for the benefit of its creditors; or (ii) there shall be commenced against Customer or Guarantor any action of a nature referred to in subsection 13(e)(i)(A) that results in the entry of an order for relief or any such other relief and remains un-dismissed or un-discharged for a period of 60 days after the occurrence of such event; (e) Customer or any Guarantor shall liquidate or dissolve itself or be liquidated, dissolved or terminated by statute or otherwise; (f) any representation or warranty made by Customer or any Guarantor or otherwise furnished to Engie in connection with this Agreement shall prove at any time to have been untrue or misleading in any material respect; (g) Customer or any Guarantor defaults on any indebtedness for borrowed money, lease, or installment sale obligation, in each case when any applicable grace period for such obligation has expired and regardless of whether such indebtedness has been accelerated and the applicable lender, lessor or creditor has commenced to exercise any remedy; (h) Customer shall be in default, after any grace or cure period, under any agreement of which Engie or any of its affiliates is a party to beneficiary; or (i) there shall be a transfer of a controlling interest in the ownership of Customer or any Guarantor or a sale of substantially all of the assets of either.

**14. Remedies.** Upon the occurrence of an Event of Default, Engie may exercise any one or more of the following remedies: (a) suspend or discontinue performance of Services without liability; (b) declare the Termination Fee, discounted to the date of payment at the Discount Rate, immediately due and payable, which amount Customer agrees is reasonable liquidated damages in light of the difficulty of determining actual damages and not a penalty; (c) declare any other agreements between Customer and Engie to be in default and to exercise the default remedies set forth therein; (d) require Customer to remove and deliver the System at Customer's expense to a location designated by Engie; (e) remove and take possession of any or all of the System without demand or notice, without any court order or pre-taking hearing or other process of law; and (f) exercise any other remedy available to Engie at law or in equity. Engie may, at its option, use, ship, store or repair any or all items of the System so removed and may sell, lease or otherwise dispose of any such System at a private or public sale. In the event Engie disposes of the System, Engie shall give Customer credit for any sums received by Engie from such disposal after deduction of actual and reasonable expenses. All remedies of Engie hereunder are cumulative, are in addition to any other remedies provided for by law, and may, to the extent permitted by law, be exercised concurrently or separately. The exercise of any one remedy shall not be deemed to be an election of such remedy or to preclude the exercise of any other remedy. In addition, Customer shall be responsible for all costs and expenses incurred by Engie in the exercise of its remedies hereunder, including without limitation, reasonable attorneys' fees and removal costs and agrees to indemnify, defend and hold Engie harmless from and against all claims arising in connection with the removal of the System except those resulting from the gross negligence or wilful misconduct of Engie. No failure on the part of the Engie to exercise and no delay in exercising any right or remedy shall operate as a waiver thereof or modify the terms of this Agreement. A waiver of default shall not be a waiver of any other or subsequent default. "**Discount Rate**" shall be a per annum interest rate equal to the lesser of (a) an interest rate equivalent to that of a U.S. Treasury constant maturity obligation (as reported by the U.S. Treasury) that would have a repayment term equal to the remaining Service Period, all as reasonably determined by Engie, or (b) three percent (3%).

**15. Engie Insurance.** Engie shall furnish and maintain commercial general liability insurance in not less than $ 2 million in the aggregate with an additional $ 2 million in excess liability insurance coverage, and shall also maintain, or cause to be maintained, installation floater coverage, insuring against risk of loss or damage to the System, subject to customary terms and conditions and market availability, from any cause for the replacement cost of the System until delivery of the System on the Customer's premises, and, as required by applicable law, workers' compensation insurance for its employees performing the Services. Engie shall require its subcontractors to provide workers' compensation insurance and/or employer's liability insurance. To the extent of the obligations and liabilities expressly assumed by Engie in this Agreement, Customer shall be named as an additional insured on the liability insurance policies required of Engie hereunder (except workers' compensation) . Engie shall deliver to Customer documents evidencing: (a) the insurance required hereby and (b) an endorsement to the policy or policies required hereunder requiring the related insurer to provide Customer with not less than 30 days' prior written notice of the effective date of any material alteration, cancellation or non-renewal of a policy.

**16. Customer Insurance.** Customer shall at all times insure the System against all risks of loss or damage from every cause including, without limitation, loss by fire, mysterious disappearance, natural disasters and such other risks of loss as are customarily insured against for goods and systems of the type subject to this Agreement by businesses of the type in which Customer is engaged and in an amount not less than the replacement cost of the System without deductible and without co-insurance. Customer shall maintain commercial general liability insurance covering liability for bodily injury, including death, and property damage resulting from the use, operation or return of the System with a combined single limit of not less than $1,000,000 per occurrence. All such insurance will be in a form, in an amount and with companies reasonably satisfactory to Engie. Engie, its successors or assigns, shall be the sole named lender loss payee (or equivalent) with respect to the property insurance for the System and shall be named as an additional insured on the liability insurance. Customer shall deliver to Engie documents evidencing: (a) the insurance required hereby and (b) an endorsement to the policy or policies required hereunder requiring the related insurer to provide Engie with not less than 30 days' prior written notice of the effective date of any material alteration, cancellation or non-renewal of a policy. Customer hereby irrevocably appoints Engie as Customer's attorney-in-fact to make claim for, receive payment of, and execute and endorse all documents, checks or drafts received in payment for loss or damage under any such insurance policy. If Customer shall fail to procure, maintain, and pay for such insurance, Engie may obtain such insurance on behalf of and at the expense of Customer and Engie may charge Customer an incremental fee which incremental fee may include a profit.

**17. Indemnification.** Customer shall indemnify, defend and hold Engie and each of its directors, officers and employees, harmless, against to all claims, liabilities, losses, damages and expenses (including without limitation, reasonable attorneys' fees and other legal expenses and amounts paid in settlements) brought against Engie and/or its representatives arising in connection with the System and/or Services, except to the extent caused by the gross negligence or willful misconduct of Engie.

**18. Permits.** Engie will obtain all necessary permits for the completion of the Services and shall obtain all required inspections prior to completion of the Services. Customer agrees to fully cooperate in the obtaining all permits and approvals, including, the signing of customary forms.

**19. Security Interest; UCC Filings.** Customer grants Engie a security interest in the System (and all accessions thereto and substitutions therefore) and the proceeds from the sale, lease or other disposition of the System to secure all indebtedness owing under the Agreement. Customer authorizes Engie to file a financing statement or equivalent document (and any and all amendments thereto) with respect to the System and hereby appoints Engie as Customer's attorney-in-fact to do all acts or things that Engie may deem necessary to protect Engie's title and interest hereunder. The filing of a financing statement under the UCC or other applicable law is for precautionary purposes to give public notice of Engie's ownership of the System only and shall not be construed as evidence of a transfer of title in the System to Customer or a secured transaction.



Initials: _____

2

**20. Representations.** Customer represents and warrants to Engie that (a) the Customer is duly organized, validly existing and in good standing under the applicable laws of its jurisdiction of organization; (b) this Agreement is a genuine, legal, valid and binding obligation of Customer, enforceable against Customer in accordance with its terms; (c) this Agreement has been duly authorized, executed, and delivered by Customer, (d) each individual executing this Agreement has the authority to bind Customer; (e) any and all financial information furnished to Engie by Customer is true and correct in all material respects and prepared in accordance with generally accepted accounting principles; (f) the System consists solely of personal property and not a fixture; (g) upon request Customer will provide Engie with Customer's financial statements or filed tax returns if its financial statements are unaudited, as soon as available, but not more than 120 days from its fiscal year end; (i) the System will be used for solely business purposes and not for personal or household purposes; and (j) the Facility is not encumbered by any mortgage.

**21. Limitation of Liability.** IN NO EVENT SHALL ENGIE BE LIABLE UNDER ANY CIRCUMSTANCES FOR SPECIAL, INDIRECT, PUNITIVE OR CONSEQUENTIAL DAMAGES OF ANY NATURE WHATSOEVER (WHETHER ARISING OUT OF CONTRACT, STRICT LIABILITY OR OTHERWISE), INCLUDING WITHOUT LIMITATION ANY LOST REVENUES OR PROFITS OF ANY NATURE WHATSOEVER. IN NO EVENT SHALL ENGIE BE LIABLE FOR DAMAGES WHICH EXCEED THE AMOUNT PAID BY CUSTOMER TO ENGIE UNDER THIS AGREEMENT FOR TWELVE MONTHS PRIOR TO THE DATE THE CAUSE OF ACTION ACCRUED.

**22. Assignment.** Customer may not assign this Agreement or the rights hereunder, or sublease or lend the System without Engie's prior written consent. No assignment or sublease shall relieve Customer of its obligations hereunder and Customer shall remain primarily liable for such obligations. Any sale, assignment, transfer, encumbrance, delegation or sublease of the System or the property upon which the System is located by Customer not consented to by Engie shall be void. Engie may at any time assign all or part of any interest in, or grant a security interest in, the System, this Agreement or its rights hereunder, provided that if Engie grants a security interest in the System to a third party it first shall obtain a Subordination and Non-Disturbance Agreement from such third party for the benefit of Customer. In such event, all provisions hereof for the benefit of Engie shall inure to the benefit of and be exercised by or on behalf of such assignee and its assigns ("**Assignee**"), but Assignee shall not be liable for or be required to perform any of Engie's obligations hereunder and Engie shall retain all such obligations; and Assignee shall have the right, but not the obligation, to cure any default by Engie and Customer shall cooperate with Assignee in any effort to timely cure such default. Customer agrees that (i) it will not assert any such defenses, set-offs, counterclaims and claims against any Assignee that Customer may have against Engie at any time; and (ii) any such assignment shall not materially change Customer's duties or obligations hereunder nor materially increase Customer's risks or burdens. As between Customer and any Assignee, (a) Customer agrees that its obligation to make the payments due under this Agreement shall be absolute and unconditional; (b) ASSIGNEE HAS MADE NO REPRESENTATION OR WARRANTY WITH RESPECT THERETO, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE; and (c) Assignee disclaims any liability for loss, damage or injury to Customer or third parties as a result of any defects, latent or otherwise, in the system whether arising from the application of the laws of strict liability or otherwise. If the System is not properly installed, maintained, does not operate as represented or warranted, or is unsatisfactory for any reason, Customer shall make any claim on account thereof solely against Engie or the relevant supplier.

**23. Miscellaneous.**
a. General. All paragraph headings are inserted for reference purposes only and shall not affect the interpretation or meaning of this Agreement. Customer will promptly execute and deliver to Engie such further documents, instruments and assurances and take such further action as Engie from time to time may reasonably request in order to carry out the intent and purpose of this Agreement. Customer acknowledges and agrees that in executing this Agreement it has relied solely upon the terms, provisions and conditions contained herein, and any other statements, warranties, or representations, if any, by Engie, or any salesperson, employee, representative or agent of the Engie, have not been relied upon. Customer irrevocably authorizes Engie to fill in descriptive information in this Agreement that is left blank and to correct obvious errors in this Agreement or any exhibit or attachment hereto. This Agreement is made solely for the benefit of the Parties and their respective permitted successors and assigns, and no other person or entity shall have or acquire any right by virtue of this Agreement.
b. Independent Contractor. Engie will perform its Services, duties and obligations under this Agreement as an independent contractor and nothing herein will create or imply an agency relationship between Engie and the Customer, nor will this Agreement be deemed to constitute a joint venture between the Parties.
c. Delay. If there is a delay in the commencement, performance or completion of the Services by Engie due to causes beyond its control and without its fault (including but not limited to encountering concealed, unknown or undisclosed conditions at the Facility), Engie shall provide written notice to the Customer regarding the cause of the delay. Engie shall use commercially reasonable efforts to overcome such delay, provided that if any changes to the System are necessary to remove or overcome the cause of the delay, such changes are documented in a Change Order that is executed by both Parties.
d. Notices. Notices, requests or other communications required under the Agreement shall be in writing by: (a) United States registered mail, postage prepaid, return receipt requested and addressed to the other party at the address specified herein (or to such other address as such may designate), (b) personal delivery with written evidence of receipt, (c) electronic mail (if receipt is manually acknowledged), or (d) overnight delivery by a nationally recognized courier with evidence of receipt. Any such notice shall be effective when received.
e. Warranty Recoveries. All proceeds of any warranty recovery by Customer with respect to the System shall first be used to repair, maintain, replace or upgrade the System and Customer shall promptly notify Assignee of any such warranty recovery.
f. Choice of Law. This Agreement shall be governed by and construed in accordance with the laws of Pennsylvania. The Parties hereby irrevocably consent to the personal jurisdiction of the State and Federal courts located within the State of Pennsylvania, or, as applicable, its assignee's principal office and waive any defense of improper venue or forum non conveniens. EACH OF THE PARTIES HEREBY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION ARISING IN CONNECTION HEREWITH.
g. Entire Agreement; Severability; Survival. This Agreement contains the entire agreement and understanding between the Parties relating to the subject matter thereof. No term or provision of this Agreement be modified unless set forth in writing and signed by both Parties. Any provision of this Agreement that for any reason may be held unenforceable shall be ineffective to the extent of such unenforceability without invalidating the remaining provisions of this Agreement. This Agreement may be executed in any number of counterparts, each of which, when so executed and delivered, shall be an original, but all such counterparts shall together consist of but one and the same instrument. Sections 4, 10, 11, 17 and 22 shall survive termination.
h. Electronic Signature. Customer acknowledges that this Agreement and the documents related hereto were delivered to Customer in electronic format only. By executing and delivering this Agreement, Customer represents and warrants that, except as expressly agreed to by Engie in writing, neither this Agreement nor any such related document has been altered or modified in any manner from the final version Engie delivered to Customer for execution and in the event of any discrepancy, the final version of each such document shall be deemed the definitive version thereof. This Agreement and all related documents may be executed in counterpart. If Customer signs any such document electronically, the sole original for all purposes (including chattel paper purposes if applicable) shall be the copy manually countersigned by Engie or attached to its original signature counterpart and an electronically reproduced copy thereof shall be admissible as legal evidence thereof.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their authorized representatives as of the date first above written.

**ENGIE RESOURCES LLC**

By: _____

Name: _____

Title: _____

Customer: The University of the Arts

By: _____
    *Stephen Lightcap*
    0CD2G47BG730424

Name: Stephen Lightcap

Title: Vice President for Finance and Administration

<u>Schedule A</u>

1. <u>Contact Information:</u>

    a.   Customer: THE UNIVERSITY OF THE ARTS
        Address: 320 S. Broad Street, Philadelphia, PA 19102
        Contact Person: Desiree DeLuca, 215-717-6831, ddeluca@uarts.edu

    b.   Engie: Engie Resources LLC
        Address: 1360 Post Oak Blvd, Suite 400, Houston, TX 77056
        Contact Person: Danielle.owen@engie.com

2. <u>System:</u> Chilled Water Plant Replacement Project to include electric chillers, pumps, cooling tower for Customer's facility located at 211 S, Broad Street, the Terra building

3. <u>Equipment:</u> List of equipment is described below:

     Multiple items within specifications as engineered by Bruce E. Brooks & Associates and recommended by Limbach Company LLC'S response to RFP BBA Project No. 20-010 dated February 19, 2021.

     <u>Project Description:</u> Project consists of the removal of two steam absorber chillers and several chilled water and condenser water pumps from the cellar level of the building and their replacement with two electric-driven centrifugal chillers and new pumps, replacement of the cooling towers on the roof, and electrical and structural revisions to support this equipment.

4. <u>Target Completion Date:</u> [August 31, 2021]

5. <u>Services:</u> Engie to provide Customer the following Services during the Service Period:

    a.   Procure and install the System at Customer's Facility.
    b.   Perform commissioning and testing to ensure that the installed Equipment meets manufacturers' specifications.
    c.   Assist Customer to obtain manufacturers' warranties from the contractor for the Equipment and Services.
    d.   File necessary documentation for the purpose of securing utility rebates (if any) arising from the installation of the System.

6. <u>Facility:</u>   211 S, Broad Street, the Terra building

7. <u>Service Period:</u> 84 months.

8. <u>Service Fee:</u> $26,040.06 per month, plus applicable state and local taxes

9. <u>Purchase Option:</u> One Dollar


**ENGIE RESOURCES LLC**

By: _____

Name: _____

Title: _____


**THE UNIVERSITY OF THE ARTS**

By: _____
    *Stephen Lightcap*
    9CB2C47BC730424...

Name:   Stephen Lightcap
_____

Title:   Vice President for Finance and Administration
_____

4

# EXHIBIT B

Filing#: 2021040101669
Date Filed : 04/01/2021
Pennsylvania Department of State

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER(Optional)

Corporation Service Company-(800) 858-5294

B. E-MAIL CONTACT AT FILER(optional)

filingdept@cscinfo.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

> Corporation Service Company
> COUNTER
> Springfield
> IL 62703
> United States

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide the exact ,full Debtor name.Do not omit,modify or abbreviate any part of Debtor's name:

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| The University of the Arts | | | |

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| OR | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 320 S Broad St | Philadelphia | PA | 19102 | USA |

2. DEBTOR'S NAME: Provide the exact , full Debtor name. Do not omit , modify, or abbreviate any part of the Debtor's name:

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| OR | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY). Provide only one Secured Party name (3a or 3b).

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| ENGIE RESOURCES LLC | | | |

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| OR | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1111 OLD EAGLE SCHOOL RD | WAYNE | PA | 19087 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

All equipment of any make or manufacture financed by or leased to Debtor by Secured Party under Contract Number 500-50178474, together with all components, additions, upgrades, attachments, accessions, substitutions, replacements and proceeds of the foregoing.

5. Check only if applicable and check only one box:Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

[208780151]

International Association of Commercial Administrators(IACA)

**FILING OFFICE COPY —** UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/19/12)

# EXHIBIT C

04/06/2001 13:48 PM    Page 1 of 3    Rec Fee: $188.50
Receipt#: 21-30986
Records Department    Doc Code: UU

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| --- |
| CSC    1-800-858-5294 |
| B. E-MAIL CONTACT AT FILER (optional) |
| SPRFiling@cscglobal.com |
| C. SEND ACKNOWLEDGMENT TO:  (Name and Address) |

2087 85772
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Pennsylvania
(Philadelphia County Recorder)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME THE UNIVERSITY OF THE ARTS | | | |
| --- | --- | --- | --- |
| OR | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS 320 S. BROAD ST | CITY PHILADELPHIA | STATE PA    POSTAL CODE 19102 | COUNTRY USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| OR | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE    POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME ENGIE RESOURCES LLC | | | |
| --- | --- | --- | --- |
| OR | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS 1111 OLD EAGLE SCHOOL RD | CITY WAYNE | STATE PA    POSTAL CODE 19087 | COUNTRY USA |

4. COLLATERAL: This financing statement covers the following collateral:
THIS IS A FIXTURE FINANCING STATEMENT TO BE INDEXED IN THE REAL ESTATE RECORDS OF
PHILADELPHIA COUNTY, STATE OF PENNSYLVANIA. NAME OF RECORD HOLDER IS:THE UNIVERSITY OF THE
ARTS.  The Collateral description is: All equipment of any make or manufacture financed by or leased to Debtor by
Secured Party under Contract Number 500-50178474, whether personal property or fixtures together with all
components, additions, upgrades, attachments, accessions, substitutions, replacements and proceeds of the foregoing.

| 5. Check only if applicable and check only one box: Collateral is ☐ | held in a Trust (see UCC1Ad, item 17 and Instructions) | | being administered by a Decedent's Personal Representative |
| --- | --- | --- | --- |
| 6a. Check only if applicable and check only one box: | | 6b. Check only if applicable and check only one box: | |
| ☐ Public-Finance Transaction    ☐ Manufactured-Home Transaction | ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien | ☐ Non-UCC Filing |
| 7. ALTERNATIVE DESIGNATION (if applicable):    ☐ Lessee/Lessor | ☐ Consignee/Consignor    ☐ Seller/Buyer | ☐ Bailee/Bailor | ☐ Licensee/Licensor |
| 8. OPTIONAL FILER REFERENCE DATA: | | | 2087 85772 |

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

# UCC FINANCING STATEMENT **ADDENDUM**

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |
|---|
| THE UNIVERSITY OF THE ARTS |

OR

| 9b. INDIVIDUAL'S SURNAME |
|---|
| |
| FIRST PERSONAL NAME |
| |

| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|
| | |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME |
|---|
| |

OR

| 10b. INDIVIDUAL'S SURNAME |
|---|
| |
| INDIVIDUAL'S FIRST PERSONAL NAME |
| |

| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |
|---|---|---|---|---|

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

11. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME |
|---|
| |

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

| 13. ☑ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable) | 14. This FINANCING STATEMENT: |
|---|---|
| | ☐ covers timber to be cut  ☐ covers as-extracted collateral  ☑ is filed as a fixture filing |
| 15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): THE UNIVERSITY OF THE ARTS 320 S. BROAD ST PHILADELPHIA, PA 19102 | 16. Description of real estate: SEE ATTACHED |

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, SITUATE in the 5th Ward of the City of Philadelphia and described according to a Plan thereof made by City of Philadelphia and described according to a Plan thereof made by Ben H. Joseph Surveyor and Regulator of the 3rd Survey District of the City of Philadelphia on 12/1/1954 as follows to wit:

BEGINNING at the point of intersection of the South side of said Walnut Street (59 feet 3 inches wide) and the East side of Broad Street (113 feet wide); thence extending Eastward along the South side of said Walnut Street 100 feet to the West side of Watts Street (10 feet wide); thence extending Southward partly along the said Watts Street and partly along a 50 feet wide court 138 feet to a point; thence extending Westward on a line parallel with the said Walnut Street 100 feet to a point on the East side of Broad Street; and thence extending Northward along the same 138 feet to the place of beginning.

AND ALL THE ESTATE, right, title and interest of the grantor of in and to a strip of ground immediately adjoining the above lot or piece of ground at the Southeasternmost corner thereof. BEGINNING at a point in the East line of said lot at the distance of 120 feet Southward from the South side of Walnut St.

CONTAINING 7 feet 6 inches in width East and West by 18 feet in length North and South.

TOGETHER with the common use, right, liberty and privilege of the said Watts Street leading Northward into said Walnut St.

ALSO of the Westernmost 10 feet in breadth East and West by the whole depth North and South of then 50 feet wide court as and for a passageway and watercourses at all times hereafter forever.

BEING 201-11 South Broad Street

# EXHIBIT D

## ACKNOWLEDGMENT OF ASSIGNMENT

With reference to Contract # 500-50178474 dated 02-APR-2021 by and between ENGIE RESOURCES LLC ("Assignor") and THE UNIVERSITY OF THE ARTS ("Agreement"), Assignor, for valuable consideration and intending to be legally bound, hereby acknowledges that on 02-APR-2021 Assignor assigned to De Lage Landen Financial Services ("DLL") all of Assignor's rights, interest, title, power, privileges and remedies, with the exception of the Retained Interest (as defined below), in and with respect to the Agreement (including, but not limited to, the Assignor's interest in the leased equipment and/or any collateral and the right to receive all payments relating to the equipment and any fees or costs associated with the collection therewith)  but none of its service, maintenance, or other obligations.

**ENGIE RESOURCES LLC**

By *Stephen Majer*

Name:

Title:

# EXHIBIT E



MARSHALL T. KIZNER
DIRECT DIAL NUMBER
609-219-7449
DIRECT FAX NUMBER
609-895-7395
E-MAIL
mkizner@stark-stark.com

July 1, 2024

***VIA FEDREAL EXPRESS AND CERTIFIED MAIL***
The University of the Arts
320 South Broad Street
Philadelphia, PA 19102

**Re:  That certain equipment services contract dated April 2, 2021, number 500-50178474 (the "Agreement") made by Engie Resources LLC ("Engie") and The University of the Arts ("Customer"), and subsequently assigned from Engie to De Lage Landen Financial Services, Inc. ("DLL"), for certain services and equipment, collectively ("Equipment") detailed in the Agreement.**

Dear Sir/Madam:

This firm represents De Lage Landen Financial Services, Inc, successor-in-interest to Engie under the above-referenced Agreement. This letter is sent to provide notice on behalf of DLL that Customer is in breach of its obligations under the Agreement, arising from its failure to make payment, when due.

Demand is hereby made for the immediate payment of all past due amounts due under the Agreement, which totals **$25,194.51** Payment must be made directly to DLL on or before **5:00 p.m. (EST) on July 8, 2024.** For remittance information, please contact the undersigned at (609) 219-7449 or mkizner@stark-stark.com.

Unless payment is made by that date, DLL intends to exercise its default rights and remedies under the Agreement, including, but not limited to, terminating the Agreement and accelerating all sums due and owing under the Agreement, as well as filing suit to seek all sums due and owing, along with a writ of replevin to take possession of the Equipment.

The delivery of this letter does not and shall not be deemed to constitute an exhausting listing of all Events of Default that have occurred and are continuing to occur under the Agreement. Nothing in this letter is intended to create or constitute a waiver, modification, relinquishment or forbearance by DLL of any of its rights and remedies under the Agreement or otherwise prescribed by law, including, without limitation, any and all rights or remedies in connection with any other defaults that may now or hereafter exist under the Agreement, all of which rights and remedies are hereby expressly reserved.



Very truly yours,

STARK & STARK
A Professional Corporation

By: /s/ *Marshall T. Kizner*
    MARSHALL T. KIZNER

MTK/
cc    Stephen McNellis (via email)

    Alvarez & Marsal (via regular mail and facsimile (267-507-3101))
    10 Penn Center
    1801 Market Street, Suite 1830
    Philadelphia, PA 09103

4870-8593-7101, v. 4