## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| The University of the Arts, *et al.*,[1] | Case No. 24-12140 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Re: Dkt. Nos. 209, 210, and 249** |

**ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363, AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002 AND 6004 (I) AUTHORIZING AND APPROVING THE SALE OF CERTAIN REAL PROPERTY AND RELATED ASSETS LOCATED AT 320 AND 320R S. BROAD STREET, PHILADELPHIA, PA (HAMILTON & FURNESS HALLS) FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AND (II) GRANTING OTHER RELATED RELIEF**

Upon the Motion [Docket No. 209] (the "**Motion**") of Alfred T. Giuliano, the duly appointed chapter 7 trustee (the "**Trustee**") of the estates (the "**Estates**") of the above-captioned debtors (collectively, the "**Debtors**"), for Entry of an Order Pursuant To 11 U.S.C. §§ 105(a) and 363, and Federal Rules of Bankruptcy Procedure 2002 and 6004 (I) Authorizing and Approving the Sale of Certain Real Property and Related Assets Located at 320 and 320R S. Broad Street, Philadelphia, PA (Hamilton & Furness Halls) Free and Clear of All Liens, Claims, Encumbrances and Other Interests and (II) Granting Related Relief to 300 South Broad LLC (the "**Stalking Horse Bidder**") pursuant to the terms and conditions of the Asset Purchase Agreement attached to the Motion (the "**Stalking Horse Purchase Agreement**"); and pursuant to the *Order Approving Certain Expense Reimbursements, Stalking Horse Procedures, And Other General Bid Procedures In Connection With The Sale Of The Debtors' Real Estate And Granting Related Relief* [Docket

---

[1]    The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors, where applicable, are:  The University of the Arts (9911); and U of Arts Finance LLC (9911).

No. 125] ("**Bid Procedures Order**," with the procedures approved thereby, "**Bid Procedures**");

and a hearing having been scheduled (the "**Sale Hearing**") to consider approval of the sale of the

Property to the Stalking Horse Bidder; the Trustee having received a subsequent, higher bid for

the sale of the Property owned by UArts (the "**Debtor**") from Building Broad, LLC ("**Scout**" or

"**Buyer**"); an auction having been conducted in accordance with the Bid Procedures on February

24, 2025 ("**Auction**"), with the Scout bid, in the form attached hereto as <u>**Exhibit A**</u> ("**Scout Final**

**APA**")[2], having been determined to be the Successful Bid in accordance with the Bid Procedures

and Scout the "**Successful Bidder**," and the bid from the Stalking Horse Bidder attached to the

Motion (the "**Stalking Horse Bid**") determined to be the "**Backup Bid**" for the Property and the

Stalking Horse Bidder, determined to be the "**Backup Bidder**"; a Sale Hearing having been

scheduled on February 26, 2025; and adequate and sufficient notice of the Motion, the Bid

Procedures, the Auction, the Sale Hearing, and this Sale Order having been given; and the Court

having reviewed and considered: (i) the Motion; (ii) the objections thereto, if any; and (iii) the

arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing or

submitted in advance of the Sale Hearing; and after due deliberation thereon; and good and

sufficient cause appearing therefor, it hereby is

   **FOUND AND DETERMINED THAT:**

   A.    The findings and conclusions set forth herein constitute the Court's findings of fact

and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding

pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute

---

[2]    Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Motion, or
       Scout Final APA, as applicable.

4901-1007-9245, v. 4

conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      This Court has jurisdiction over the Motion and the transactions contemplated by the Purchase Agreement (the "**Sale Transaction**") under 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.  The Court may enter a final order with respect to the Motion, the Sale Transaction, and all related relief, in each case, consistent with Article III of the United States Constitution.

C.      The statutory predicates for the relief sought in the Motion are sections 105(a) and 363 of the Bankruptcy Code, as complemented by Bankruptcy Rules 2002 and 6004 and Local Rule of Bankruptcy Procedure 6004-1.

D.      This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

E.      As evidenced by the affidavits or certificates of service filed with this Court: (i) due, proper, timely, adequate and sufficient notice of the Motion, the Bid Procedures, the Auction, the Sale Hearing, and the other relief granted herein, and a substantially similar form of this Sale Order, have been provided in accordance with Bankruptcy Code sections 102(1), 105(a), and 363, Bankruptcy Rules 2002 and 6004 and Local Rule of Bankruptcy Procedure 6004-1 and any relevant orders in these cases; (ii) such notice was good, sufficient and appropriate under the circumstances; and (iii) no other or further notice of the Motion, the Sale Hearing, the sale of the Property, and/or the other relief granted herein is or shall be required.

F.      A reasonable opportunity to object and be heard with respect to the Motion and the relief requested therein has been afforded to all known interested persons and entities, including:

(i) the Office of the United States Trustee for the District of Delaware; (ii) the Pennsylvania Attorney General's Office; (iii) counsel for the Stalking Horse Bidder; (iv) any entities known by the Trustee to have asserted any Lien in or upon any of the Property; (v) any party reasonably known by the Trustee to have expressed an interest in acquiring the Property; (vi) all creditors who timely filed a proof of claim against UArts; and (vii) any party that has requested notice in this case pursuant to Bankruptcy Rule 2002.

G.      As demonstrated by the testimony and/or other evidence proffered or adduced at the Sale Hearing or submitted by affidavit or declaration before the Sale Hearing, (1) the Trustee has appropriately marketed the Property under the circumstances; and (2) a full, fair and reasonable opportunity has been given to any interested party to make a higher or better offer for the Property. The Buyer's offer, as documented in the Scout Final APA, represents the highest and best offer for the Property.

H.      The Trustee conducted the Auction in accordance with, and has otherwise complied in all respects with, the Bid Procedures Order.  The Auction process set forth in the Bid Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Property. The Auction was duly noticed, the Bid Procedures were duly noticed and conducted in a non-collusive, fair, and good faith manner, and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Property.

I.      The Trustee's determination that the sale of the Property to Scout, pursuant to the Scout Final APA, provides the highest or otherwise best offer for the Property, and his related decision to sell the Property to Scout, each constitutes a reasonable exercise of the Trustee's business judgment and is in the best interests of the Debtor, its estate, and its creditors.

4901-1007-9245, v. 4

J.      At the conclusion of the Auction, the Trustee selected a bid submitted by the Stalking Horse Bidder as the Backup Bid on the terms set forth on the record at the Auction and as set forth in the Stalking Horse Bid.

K.      The Buyer (i) is purchasing the Property in good faith and (ii) is a good faith purchaser for value within the meaning of section 363(m) of the Bankruptcy Code and therefore is entitled to the full benefits and protections of that provision and any other applicable or similar bankruptcy or non-bankruptcy law.  The Buyer otherwise has proceeded in good faith in all respects in connection with this proceeding in that, among other things: (a) the Buyer recognized that the Trustee was free to deal with any other party interested in acquiring the Property, (b) the Buyer's offer that is reflected in the Scout Final APA was subject to higher and better bids, (c) all payments to be made by the Buyer in connection with the Scout Final APA have been disclosed, (d) the Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction, and (e) the Scout Final APA was negotiated, proposed and entered into in good faith, without collusion and from arm's-length bargaining positions with the parties represented by competent counsel of their choosing.

L.      The Scout Final APA was not controlled by an agreement between or among potential or actual bidders within the meaning of section 363(n) of the Bankruptcy Code.  The Trustee and Buyer have not engaged in any conduct that would cause or permit the Scout Final APA to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.  Buyer is entitled to all the protections and immunities of section 363(n) of the Bankruptcy Code.  Buyer is not an "affiliate" or "insider" of the Debtor as defined in section 101 of the Bankruptcy Code, and no common identity of incorporation, director, or stockholder existed or

4901-1007-9245, v. 4

will exist between Buyer, on the one hand, and the Trustee or Debtor, on the other hand, immediately prior to or after the Closing Date.

M.    The Buyer has demonstrated its financial wherewithal to satisfy its obligations under the Scout Final APA, including its payment of the Purchase Price.

N.    The consideration provided by the Buyer pursuant to the Scout Final APA is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory or possession thereof or the District of Columbia (including the Uniform Fraudulent Transfer Act, Uniform Voidable Transactions Act, and the Uniform Fraudulent Conveyance Act).  The Scout Final APA was not entered into, and neither the Trustee nor the Buyer has entered into the Scout Final APA or propose to consummate the Sale Transaction, for the purpose of hindering, delaying or defrauding the Debtor's present or future creditors.

O.    Subject to the entry of this Sale Order, the Trustee has full power and authority to execute, deliver and perform the Scout Final APA and all other documents contemplated thereby, and the Sale Transaction has been duly and validly authorized.  No government, regulatory or other consents or approvals other than those provided for in the Scout Final APA are required for the Trustee to consummate the Sale Transaction described therein.

P.    The transfer of the Property to the Buyer shall be a legal, valid and effective transfer of the Property and shall vest the Buyer at Closing with all right, title and interest of the Debtor in and to the Property, free and clear of all liens, claims, encumbrances and other interests, other than as explicitly set forth in the Scout Final APA (collectively, "**Liens**") to the maximum extent permitted under section 363 of the Bankruptcy Code.

4901-1007-9245, v. 4

Q.      Buyer would not have entered into the Scout Final APA to acquire the Property if the sale of the Property were to be transferred to it other than free and clear of all Liens, or if Buyer would, or in the future could, be liable for any such Liens.  A sale of the Property other than one free and clear of Liens on the terms set forth herein would be of substantially less benefit to and would adversely affect the Debtor's Estate. Therefore, the Sale Transaction contemplated in the Sale Agreement is in the best interests of the Debtor, its Estate, their creditors, and all other parties in interest.

R.      The Trustee may sell the Property to the Buyer free and clear of all Liens in accordance with, and to the extent permitted by, section 363(f) of the Bankruptcy Code because, in each case, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Liens against the Debtor, its Estate or any of the Property who did not object, or who withdrew their objections, to the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code.

S.      Scout is not a mere continuation of the Debtor or its Estate, and there is no continuity of enterprise or common identity between Scout and the Debtor.  The Buyer is not holding itself out to the public as a continuation of the Debtor or its Estate.  The transactions contemplated under the Scout Final APA do not amount to a consolidation, merger, or de facto merger of Buyer with the Debtor and/or the Estate.  To the fullest extent legally permissible, and except as otherwise explicitly set forth in the Scout Final APA, the transfer of the Property to the Buyer, and the assumption of any liabilities by the Buyer does not, and will not, subject the Buyer to any liability whatsoever, with respect to the Debtor or the operation of the Debtor's businesses prior to the Closing or by reason of such transfer including under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part,

4901-1007-9245, v. 4

directly or indirectly, on any, or any theory of, successor, vicarious, antitrust, environmental, revenue, pension, ERISA, tax, labor (including any WARN Act), employment or benefits, de facto merger, business continuation, substantial continuity, alter ego, derivative, transferee, veil piercing, escheat, continuity of enterprise, mere continuation, product line, or products liability or law, or other applicable law, rule, or regulation (including filing requirements under any such law, rule, or regulation), or theory of liability, whether legal, equitable, or otherwise. Buyer would not have acquired the Property but for the foregoing protections against potential claims based upon "successor liability" or similar theories.

T.      It is a reasonable exercise of the Trustee's business judgment to consummate the Sale Transaction contemplated by the Scout Final APA and all related agreements, and such actions are in the best interests of the Estate and creditors.  The consummation of the Sale Transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), and 363(m) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale Transaction.

U.      The Scout Final APA is a valid and binding contract between the Trustee and the Buyer, which is and shall be enforceable against the Buyer and the Trustee according to its terms.

V.      The Trustee has articulated good and sound business reasons for waiving the stay otherwise imposed by Bankruptcy Rule 6004(h).

W.      The transaction contemplated by the Scout Final APA is in the best interest of the Debtor, its Estate, its creditors, interest holders and all other parties in interest.

X.      The Trustee filed a Notice of Stalking Horse Bidder [Docket No. 210] seeking approval of break up protections for the Stalking Horse Bidder.  No objections to the Stalking

Horse Notice were filed.  The Stalking Horse Bidder by serving as the stalking horse in connection with the proposed sale of the Property has established a meaningful floor for the Property and terms for the purchase of the Property that Scout was able to use and bid against with its offer. The Stalking Horse Bidder benefited the Estate by enabling the Estate to achieve more money for the sale of the Property through an auction and is entitled to its break-up protection in the form of an expense reimbursement up to $50,000 in the event that the Trustee closes on the Sale Transaction with Scout.

**THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is granted.

2.      Any objections to the entry of this Sale Order or the relief granted herein and requested in the Motion that have not been adjourned, withdrawn, waived or settled, and all reservations of rights included therein, hereby are denied and overruled and denied on the merits with prejudice.

3.      Notice of the Motion, the Sale Transaction, the Bid Procedures, the Auction, the Sale Hearing and this Sale Order was fair and equitable under the circumstances and complied in all respects with sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004 and Local Rule of Bankruptcy Procedure 6004-1.

**Approval of the Scout Final APA and the Sale Transaction**

4.      The Scout Final APA and the Sale Transaction contemplated thereunder are hereby approved and authorized in all respects.

5.      The Buyer's offer for the Property, as embodied in the Scout Final APA, is the highest and best offer for the Property under the circumstances and is hereby approved.

4901-1007-9245, v. 4

6.      The Trustee is authorized to execute and deliver, and empowered to perform under, consummate and implement the Scout Final APA, together with all additional instruments and documents that the Buyer reasonably deems necessary or appropriate to implement the Scout Final APA and effectuate the Sale Transaction, and to cooperate with the Buyer to take all other and further actions as may be reasonably requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to Buyer or reducing to possession the Property, or as may be necessary or appropriate to the performance of the obligations of the Buyer and Trustee, subject to the terms of and as contemplated by the Scout Final APA.  The Trustee is authorized to make such modifications or supplements reasonably acceptable to the Trustee and Buyer to any bill of sale or other document or instrument executed or to be executed in connection with the Closing to facilitate such consummation as contemplated by the Scout Final APA. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of the Trustee to so act.

7.      Effective as of Closing, the Sale Transaction and assignment of the Property by the Trustee to Buyer pursuant to the terms of the Scout Final APA shall constitute a legal, valid and effective transfer of the Property, notwithstanding any requirement for approval or consent by any person and, except as otherwise set forth in the Scout Final APA, the transfer of the Property to the Buyer shall vest the Buyer with all right, title and interest of the Debtor in and to the Property, free and clear of all Liens, with all such Liens attaching to the net cash proceeds of the sale in the order of their priority, with the same validity, force and effect that they now have as against the Property, subject to any claims and defenses the Trustee or the Debtor's Estate may possess with respect thereto.  The Motion and notices shall be deemed to have provided sufficient notice as to the sale and assignment of the Property free and clear of all Liens in accordance with Local Rule

6004-1.  Following a Closing, no holder of any Lien on any of the Property subject to the Closing may interfere with Buyer's enjoyment of the Property, based on or related to such Lien, and no interested party may take any action to prevent, interfere with or otherwise enjoin consummation of the Sale Transaction.  All holders of Liens fall within one or more subsections of section 363(f) of the Bankruptcy Code.  For the avoidance of doubt, the Property only includes those assets which the Debtor owns and does not include any leased equipment or leased personal property.

8.      Upon the Closing of the Sale, each of the Debtor's creditors and any other holder of a Lien are authorized to execute such documents and take all other actions as may be necessary to release its Lien on the Property, if any, as such Lien may have been recorded or may otherwise exist.

9.      If any person or entity that has filed financing statements, mortgages, lis pendens or other documents or agreements evidencing Liens on the Property and has not delivered to the Trustee prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction or releases of all Liens that the person or entity has with respect to the Property, then: (a) the Buyer is hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Property, and (b) the Buyer is hereby authorized to file, register or otherwise record a certified copy of this Sale Order, which shall constitute conclusive evidence of the release of all Liens on the Property of any kind or nature whatsoever.  Each and every filing agent, filing officer, title agent, recording agency, governmental agency or department, secretary of state, federal, state and local official, and any other person and entity who may be required by operation of law, the duties of its office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Property,

- 11 -

is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Scout Final APA.

10.    The provisions of this Sale Order authorizing the sale of the Property free and clear of Liens shall be self-executing. This Sale Order: (a) shall be effective as a determination that, except as otherwise set forth in the Scout Final APA, at Closing, all Liens of any kind or nature whatsoever existing as to the Property prior to the Closing have been unconditionally released, discharged and terminated as to the Property being sold (but not, for the avoidance of doubt, released, discharged or terminated with respect to the net proceeds of those Property), and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office or contract to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Property.

11.    All persons or entities, presently or on or after Closing, in possession or control of some or all of the Property subject to the Sale Transaction, are directed to surrender possession or control of such Property to Buyer on the Closing Date or at such time thereafter as Buyer may request.

12.    Except as set forth in the Scout Final APA, the sale, transfer, assignment and delivery of the Property shall not be subject to any Liens.  All persons holding Liens against or in the Debtor or the Property of any kind or nature whatsoever hereby are forever barred and estopped from asserting, prosecuting or otherwise pursuing such Liens of any kind or nature whatsoever

4901-1007-9245, v. 4

against the Buyer or its officers, directors, shareholders, affiliates or partners, its property or its successors and assigns or the Property, as an alleged successor, to the greatest extent allowable by applicable law, or otherwise, with respect to any Lien of any kind or nature whatsoever such person or entity had, has or may have against or in the Debtor, the Estate, officers, directors or shareholders or the Property.

13.     The Buyer shall have no liability or responsibility for any liability or other obligation of the Debtor or Trustee arising under or related to the Property other than as set forth in the Scout Final APA.  Without limiting the generality of the foregoing and except as otherwise specifically provided in the Scout Final APA, the Buyer shall not be liable for any claims against the Debtor or its predecessors or affiliates for any obligations of the Debtor arising prior to the Closing.  Similarly, the Estate shall have no obligation of any kind or nature to any party with respect to any liabilities, obligations, and expenses assumed by Scout, if any, pursuant to the Scout Final APA.

14.     The consideration provided by Buyer for the Property under the Scout Final APA is fair and reasonable and may not be avoided.

15.     The transactions are undertaken by Buyer without collusion and in good faith, in accordance with Bankruptcy Code sections 363(m) and 363(n).  Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the transactions shall not affect the validity of the sale and transfer of the Property to Buyer, unless such authorization is duly stayed pending such appeal.  Buyer is a good-faith purchaser of the Property and is entitled to all of the benefits and protections afforded by Bankruptcy Code section 363(m) and other applicable law.

4901-1007-9245, v. 4

16.    The Scout Final APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's Estate.

17.    By virtue of the Scout Final APA and the Sale Transaction, the Buyer and its successors and assigns shall not be deemed or considered to: (i) be a legal successor, or otherwise be deemed a successor to the Debtor; (ii) have, *de facto* or otherwise, merged with or into the Debtor; (iii) be a consolidation with the Debtor or its Estate; or (iv) be an alter ego or a continuation or substantial continuation, or be holding itself out as a mere continuation, of the Debtor or its Estate, business or operations, in each case by any law or equity.   Except as expressly set forth in the Scout Final APA, the transfer of the Property to Buyer under the Scout Final APA shall not result in Buyer or its affiliates, predecessors, successors, assigns, members, partners, directors, officers, employees, or principals and shareholders (or equivalent) (i) having any liability or responsibility for any claim against the Debtor or against an insider of the Debtor, (ii) having any liability whatsoever with respect to or be required to satisfy in any manner any Lien, or (iii) having any liability or responsibility to the Debtor.. Except as expressly set forth in the Scout Final APA, Buyer shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation described in the foregoing sentence, and the Motion and related notices shall be deemed to have provided sufficient notice of the Sale Transaction and assignment of the Property free and clear of all such liabilities and obligations in accordance with Local Rule 6004-1.

18.    Other than JLL, no broker, finder, or similar advisor was involved in consummating the Sale Transaction or the other transactions, and no commissions are due to any person or entity

- 14 -

in connection with the Sale Transaction or the other such transactions.  Buyer is not and will not become obligated to pay any fee or commission or like payment to any broker, finder, or similar advisor as a result of the consummation of the Sale Transaction or the other transactions based upon any arrangement made by or on behalf of the Trustee.

19.     The failure specifically to include any particular provisions of the Scout Final APA in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Scout Final APA is hereby authorized and approved in its entirety, as it may be amended or supplemented in accordance with its terms and this Sale Order.

20.     To the extent of any conflict between the Scout Final APA and this Sale Order, then this Sale Order shall govern.

21.     This Sale Order and the Scout Final APA: (a) shall be binding in all respects upon all creditors of and holders of equity interests in the Debtor (whether known or unknown), any holders of Liens, the Buyer and all successors and assigns of the Buyer, the Trustee, the Debtor and the Estate, and the Property; and (b) shall not be subject to avoidance or rejection.

22.     Each and every federal, state and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Sale Transaction.

23.     The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtor to the extent necessary, without further order of the Bankruptcy Court, to allow Buyer to deliver any notice provided for in the Scout Final APA and allow Buyer to take any and all actions permitted under the Scout Final APA.

4901-1007-9245, v. 4

### The Backup Bid

24.    <u>Backup Bid</u>.  The Backup Bid is binding on the parties in accordance with the terms thereof and the Bid Procedures Order in the event that the Trustee fails to close the Sale Transaction with Scout.  In the event that Trustee is unable to close on the Sale Transaction with Scout pursuant to the Scout Final APA, the Trustee can proceed with a sale to the Stalking Horse Bidder pursuant to the Stalking Horse Agreement.  The Trustee may close on such sale without further order of this Court.  However, if the Trustee chooses or the Stalking Horse Bidder insists, the Trustee can submit a separate form of sale order with the Stalking Horse Bid, under Certification of Counsel.

25.    In the event that the Trustee closes on the Sale Transaction with Scout, the Trustee is authorized to pay the Stalking Horse Bidder an expense reimbursement up to $50,000 for its reasonable documented expenses solely from the proceeds of such sale.

### Additional Provisions

26.    The provisions of this Sale Order are nonseverable and mutually dependent.

27.    The fourteen-day stay otherwise imposed by Bankruptcy Rule 6004(h) is hereby waived, and this Sale Order shall be effective and enforceable immediately upon entry. Any party desiring to appeal this Sale Order must exercise due diligence in filing an appeal, pursuing a stay and obtaining a stay prior to the Closing, or risk its appeal being foreclosed as moot.

28.    This Court shall retain jurisdiction to interpret, implement and enforce this Sale Order.

**Dated: February 25th, 2025**
**Wilmington, Delaware**

                                                        **BRENDAN L. SHANNON**
                                                        **UNITED STATES BANKRUPTCY JUDGE**