# **EXHIBIT A**

## **(Agreement of Sale)**

# AGREEMENT OF SALE

THIS AGREEMENT OF SALE (the "**Agreement**") is made this ___18 day of February 2025 by and between **ALFRED T. GIULIANO, SOLELY IN HIS CAPACITY AS CHAPTER 7 TRUSTEE** ("**Seller**") **FOR THE BANKRUPTCY ESTATE OF THE UNIVERSITY OF THE ARTS, A PENNSYLVANIA NON-PROFIT CORPORATION** ("**Debtor**") and **SCOUT URBAN, LLC**, a Pennsylvania limited liability company, on behalf of **BUILDING BROAD, LLC**, a Pennsylvania public benefit limited liability company ("**Buyer**"). The term "**Effective Date**" shall mean the date that this Agreement has been fully executed by all parties and Seller has received a fully executed, original counterpart of the same.

## BACKGROUND

A. WHEREAS, on September 13, 2024 (the "**Petition Date**"), Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**");

B. WHEREAS, Seller is the duly appointed and acting Chapter 7 trustee for Debtor's bankruptcy case which is being jointly administered under Case No. 24-12140(BLS) (Jointly Administered) with the chapter 7 case of U of Arts Finance LLC (collectively, the "**Bankruptcy Cases**");

C. WHEREAS, Debtor's estate is the owner of those two (2) certain tracts and parcels of ground located at 320 and 320R S. Broad Street, both of which are situate in the City of Philadelphia, and more particularly described on **Exhibit A** attached hereto and incorporated hereby (collectively, the "**Premises**").

D. WHEREAS, Seller, on behalf of the Debtor's estate, desires to sell the Premises to Buyer, and Buyer desires to purchase the Premises from Seller, upon the terms and conditions set forth herein.

E. WHEREAS, the transactions contemplated by this Agreement (the "**Transactions**") will be consummated pursuant to an Approval Order (as defined below) to be entered in the Bankruptcy Cases pursuant to §§ 105 and 363 and other applicable provisions of the Bankruptcy Code, and the Transactions and this Agreement are subject to the approval of the Bankruptcy Court.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the parties hereto, intending to be legally bound hereby, agree as follows:

1. **SALE OF PREMISES.**

    A. <u>Property</u>. Subject to the terms and conditions set forth herein this Agreement, Seller agrees to sell to Buyer, and Buyer agrees to purchase from Seller, the Premises, including all the buildings and other improvements located thereon (the "**Improvements**"), together with (i) all of Seller's right, title, and interest in and to any and all personal property relating to the operation of the subject property, (ii) any land lying in the bed of any street, road or alley, open or proposed, in front, abutting or adjoining the subject property, (iii) any easement, privilege, license or right-of-way inuring to the benefit of the subject property, (iv) the appurtenances and hereditament belonging or otherwise pertaining to the

subject property, and (v) any and all fixtures and personal property situate on the Premises on the Closing Date (as hereafter defined) (collectively, the "**Property**").

B. The Property shall be free and clear of all Leases and or Tenancy.

2. **PURCHASE PRICE**. The total purchase price to be paid by Buyer to Seller for the Property (the "**Purchase Price**") shall be TWELVE MILLION TWO HUNDRED FIFTY THOUSAND DOLLARS ($12,250,000.00) payable as follows:

A. The sum of ONE MILLION TWO HUNDRED AND FIFTY THOUSAND DOLLARS ($1,250,000.00), to be deposited with Seller, on the Effective Date (the "**Deposit**"). Seller shall hold the Deposit in a non-interest-bearing account, pursuant to the terms of this Agreement.

B. The Deposit shall be non-refundable (except as otherwise expressly set forth in this Agreement) and applied to the Purchase Price at the Closing (as hereinafter defined).

C. The balance of the Purchase Price is to be paid by Buyer to Seller at the Closing (hereinafter defined), in immediately available federal funds, subject to adjustments, prorations and credits as herein provided.

3. **COVENANTS PRIOR TO CLOSING**. Between the Effective Date and the date of Closing:

A. Bankruptcy Issues. Seller and Buyer shall each use their reasonable efforts, and shall cooperate, assist and consult with each other, to secure the entry of an order (the "**Approval Order**") of the Bankruptcy Court in the Bankruptcy Cases in form and substance acceptable to Seller and Buyer containing provisions, including without limitation: (i) approving this Agreement, (ii) authorizing the sale of the Property pursuant to Section 363 of the Bankruptcy Code, (iii) authorizing the Transactions, and (iv) providing that this Agreement and the Transactions are undertaken by Buyer and Seller at arm's length, without collusion, and in good faith within the meaning of Section 363(m) of the Bankruptcy Code, that Buyer and Seller are entitled to the protections of Section 363(m) of the Bankruptcy Code, and that the provisions of Section 363(n) of the Bankruptcy Code are not applicable. Subject to the Approval Order, Seller and Buyer shall use reasonable best efforts to make any reasonable filings, take all reasonable actions, and to obtain any and all other approvals and orders necessary for consummation of the transaction contemplated by this Agreement. Buyer is responsible for satisfying any finding concerning its ability to provide adequate assurance of future performance under Section 365 of the Bankruptcy Code, as required. After execution of this Agreement, Seller shall file a motion with the Bankruptcy Court seeking entry of the Approval Order (the "**Sale Motion**"). Buyer acknowledges that consummation of the Transactions is subject to Seller's right to accept a higher and better offer from a third party (other than Buyer) for the acquisition of all or substantially all the Property (a "**Competing Transaction**"), and Buyer confirms that this Agreement is submitted in connection with the Bankruptcy Court approved Bid Procedures. If, prior to the objection deadline for the Sale Motion (the "**Objection Deadline**"), Seller receives a binding higher and better offer for the Property (a "**Competing Transaction**"), as Seller may otherwise determine in his sole discretion, Buyer understands and agrees that Seller may require Buyer and any bidder submitting a bid for a Competing Transaction to submit to Seller each bidder's highest and best bid for the Property via an auction within two business days after the Objection Deadline. The identity of such competing bidder and amount of the higher and better offer will be disclosed to Buyer. At the conclusion of the auction, Seller in his sole discretion, shall determine which bid constitutes the

conclusion of the auction, Seller in his sole discretion, shall determine which bid constitutes the highest and best offer for the Property and shall seek Bankruptcy Court approval thereof. Seller shall bear all risk of loss or damage to the Property from all causes, except for those directly attributable to Buyer's actions until Closing. In the event all or any portion of the Property is damaged or destroyed prior to Closing, Buyer shall not have the right to terminate this Agreement.

4. **CLOSING; CLOSING DELIVERIES**.

A. **Closing**. The closing ("**Closing**") shall occur on the twentieth (20th) calendar day following Seller's receipt of the Approval Order (such date the "**Closing Date**"), or such other date as Buyer and Seller may otherwise agree in writing. Buyer acknowledges and agrees that it is an express condition precent to Closing, that Seller shall have obtained and received the Approval Order. Closing shall be held via escrow through the services of Seller at which time all documents legally required to carry out the terms of this Agreement shall be executed and delivered upon satisfaction of applicable escrow conditions.

B. **Seller's Closing Deliveries**: At Closing, Seller shall execute and deliver (acknowledged where necessary) to Buyer:

(i) a special warranty deed, conveying title to the Premises to Buyer;

(ii) a bill of sale and assignment agreement (the "**Bill of Sale**") conveying the personal property of Seller situate on or within the Premises to Buyer;

(iii) an affidavit which states that no Seller is a "foreign person" as set forth in Section 1445 of the Internal Revenue Code of 1986, as amended ("**Code**");

(iv) the Closing Date Certificate (defined below);

(v) such other affidavits and documents as are reasonably required by Buyer's title company to issue to Buyer a title policy in the form provided for in this Agreement, including, without limitation, a customary owner's title affidavit in form and substance reasonably acceptable to the Title Company;

(vi) a signed settlement statement.

(vii) a Certificate from the Philadelphia Department of Licenses and Inspections showing the Property is free and clear of all violations; subject to any items that may be cured by Buyer after Closing.

The legal description in the deed shall be the same as the legal description in the deeds by which Seller took title to the Premises.

C. **Buyer's Closing Deliveries**: At Closing, Buyer shall execute and deliver (acknowledged where necessary) to Seller or Buyer's title company, as applicable:

(i) the balance of the Purchase Price;

(ii) such other affidavits and documents as are reasonably required by the Title Company to issue to Buyer a Title Policy as set forth in this Agreement; and

      (ii) such other affidavits and documents as are reasonably required by the Title Company to issue to Buyer a Title Policy as set forth in this Agreement; and

      (iii) a signed settlement statement.

    D. **Tender Waived.** Formal tender of an executed deed and purchase money is hereby waived.

  5. **APPORTIONMENTS**. At Closing, the following apportionments shall be made:

    A. **Real Estate Taxes**. Real estate taxes shall be apportioned on a per diem basis on the basis of the fiscal or calendar year of each taxing authority, with the date of Closing belonging to Buyer.

    B. **Water, Sewer and Other Utility Charges**. Any water, sewer or other utility charges assessed against or incurred with respect to the Premises, with the date of Closing belonging to Buyer.

    C. **Real Estate Transfer Taxes**. All real estate transfer taxes imposed by any governmental body or bodies shall be split equally between Buyer and Seller; and any recordation fees and/or documentary stamps imposed in connection with an assignment of this Agreement by Buyer shall be split equally between Buyer and Seller. Notwithstanding the foregoing or anything to the contrary, Buyer shall be solely responsible for, and shall indemnify, defend, and hold Seller harmless from any and all transfer taxes imposed in connection with an assignment of this Agreement by Buyer. In the event Buyer assigns this Agreement, Buyer shall provide proof satisfactory to Seller that such taxes have been paid at or prior to Closing.

    D. **Other Closing Costs**. Buyer shall be responsible for the following fees and expenses in connection with the Closing: (i) the cost of issuance of the owner's policy of title insurance, (ii) the cost of issuance of any lender's policy of title insurance, (iii) the cost of recording any mortgage granted by Buyer. Seller shall be responsible for the costs of recordation of the deed. Each party shall pay its own expenses incurred in connection with this Agreement and the transactions contemplated hereby, including, without limitation, all accounting and legal fees.

  6. **REPRESENTATIONS AND WARRANTIES**.

    A. **Representations and Warranties of Seller**. In order to induce the Buyer to enter into this Agreement and purchase the Premises, and with full knowledge that the Buyer is relying thereon, the Seller hereby warrants and represents to the Buyer as follows:

      (i) Authorization

. Subject to the entry of the Approval Order by the Bankruptcy Court, Seller has full legal capacity, right, power and authority to enter into this Agreement. Subject to the entry of the Approval Order by the Bankruptcy Court, the execution, delivery and performance by Seller of this Agreement and the consummation of the Transactions are within Seller's powers and have been duly authorized by all necessary actions on the part of Seller. Subject to entry of the Approval Order by the Bankruptcy Court, this Agreement constitutes a valid and binding agreement of Seller that is enforceable in accordance with its terms.

(ii)   Title to Premises. Debtor's estate is the fee simple owner of the Premises, subject to the Permitted Exceptions. For purposes of this Agreement, "**Permitted Exceptions**" shall mean (a) any and all declarations, restrictions, covenants, conditions, encumbrances, easements of public and private roads and easements, privileges and rights necessary for utility companies; whether of record, or which may be either visible upon the ground; which cannot be satisfied by monetary payments at Closing (b) any matters of survey affecting title that would be shown on an accurate survey of the Property, and (c) any and all laws, ordinances, rules and regulations of any governmental or quasi-governmental body having jurisdiction over the Property.

B.   **Representations and Warranties of Buyer**. In order to induce the Seller to enter into this Agreement, the Buyer hereby warrants and represents to the Seller that:

(i)   Due Authorization. Buyer is a duly formed and validly existing limited liability company in good standing under the laws of Pennsylvania. Buyer has full power and authority to enter into this Agreement, to perform this Agreement and to consummate the transactions contemplated hereby. The execution, delivery and performance of this Agreement and all documents contemplated hereby by Buyer have been duly and validly authorized by all necessary action on the part of Buyer, and all required consents and approvals have been duly obtained and will not result in a breach of any of the terms or provisions of, or constitute a default under any indenture, agreement and/or instrument to which Buyer is a party. This Agreement is a legal, valid and binding obligation of Buyer, enforceable against Buyer in accordance with its terms, subject to the effect of applicable bankruptcy, insolvency, reorganization, arrangement, moratorium or other similar laws affecting the rights of creditors generally.

(ii)   OFAC. Neither Buyer nor any of its affiliates, nor any of their respective partners, members, shareholders or other equity owners, and none of their respective employees, officers, directors, representatives or agents is, nor will they become, a person or entity with whom United States persons or entities are restricted from doing business under regulations of OFAC (including those named on OFAC's Specially Designated and Blocked Persons List) or under any statute, executive order (including, without limitation, the September 24, 2001, Executive Order Blocking Premises and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism), or other governmental action, and is not and will not engage in any dealings or transactions or be otherwise associated with such persons or entities.

(iii)   Consents. No authorization, consent or approval of any governmental authority (including, without limitation, courts) is required for the execution and delivery by Buyer of this Agreement or the performance of its obligations hereunder.

(iv)   Bankruptcy Matters. Buyer has not made a general assignment for the benefit of creditors, filed any voluntary petition in bankruptcy or suffered the filing of an involuntary petition by its creditors, suffered the appointment of a receiver to take possession of substantially all of its assets, suffered the attachment or other judicial seizure of substantially all of its assets, admitted its inability to pay its debts as they come due, or made an offer of settlement, extension or composition to its creditors generally.

(v)   Conflict. Neither the execution, delivery or performance of this Agreement nor compliance herewith (A) conflicts or will conflict with or results or will result in a breach of or constitutes or will constitute a default under (x) the articles of incorporation and by-laws or other organization certificate and/or partnership or operating agreement of Buyer, or (y) to

Buyer's knowledge, any law or any order, writ, injunction or decree of any court or governmental authority, or (B) results in the creation or imposition of any lien, charge or encumbrance upon its Premises pursuant to any such agreement or instrument.

(vi) <u>Sufficient Funds; Adequate Assurance</u>. Buyer has and will have at the Closing immediately available funds sufficient for the satisfaction of all of its obligations under this Agreement, including the payment of the Purchase Price, and all fees, expenses of and other amounts required to be paid by Buyer in connection with the Transactions contemplated hereby. Buyer's obligations under this Agreement are not contingent upon Buyer procuring financing for the transactions contemplated hereby.

(vii) <u>No Collusion</u>. Buyer represents and warrants that it has not engaged in any collusion with respect to its bid on the Property and the Transactions contemplated hereunder.

(viii) <u>No Claims</u>. There are no material claims, actions, suits, proceedings, or investigations pending, or to the current actual knowledge of Buyer's officers, members and directors, without an obligation of independent inquiry, threatened against Buyer that could materially impair Buyer's ability to fulfill and perform Buyer's obligations under this Contract.

7. **Condition of Premises; Tax Appeal**.

A. <u>AS-IS SALE</u>. Buyer is a sophisticated investor and its decision to purchase the Premises is based upon its own independent expert evaluations of such facts and materials deemed relevant to Buyer and its agents. Buyer has not relied in entering into this Agreement upon any oral or written information from the Seller or any of the Seller's agents, consultants, advisors or representatives except the Seller's Representations expressly set forth in this Agreement. Without limiting the generality of the foregoing, except as otherwise expressly provided herein, **BUYER ACKNOWLEDGES AND AGREES WITH SELLER THAT BUYER IS PURCHASING THE PROPERTY IN "AS IS", "WHERE IS" AND "WITH ALL FAULTS" CONDITION ON THE CLOSING DATE, INCLUDING ANY LATENT DEFECT OR NON-DISCOVERABLE DEFECT, SPECIFICALLY AND EXPRESSLY WITHOUT ANY WARRANTIES, REPRESENTATIONS OR GUARANTEES, EITHER EXPRESS OR IMPLIED OF ANY KIND, NATURE, OR TYPE WHATSOEVER FROM OR ON BEHALF OF SELLER AND SELLER DISCLAIMS AND BUYER WAIVES ANY AND ALL WARRANTIES, INCLUDING BUT NOT LIMITED TO WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR AS TO ANY ENVIRONMENTAL MATTERS. SELLER IS NOT LIABLE OR BOUND IN ANY MANNER BY ANY VERBAL OR WRITTEN STATEMENTS, REPRESENTATIONS, REAL ESTATE BROKERS, "SET-UPS," OFFERING MEMORANDA OR INFORMATION PERTAINING TO THE PREMISES FURNISHED BY ANY REAL ESTATE BROKER, ADVISOR, CONSULTANT, AGENT, EMPLOYEE, REPRESENTATIVE OR OTHER PERSON. THE FOREGOING SHALL NOT RELEASE SELLER FROM ITS EXPRESS REPRESENTATIONS, WARRANTIES AND COVENANTS SET FORTH IN THIS AGREEMENT.**

B. **Tax Appeal.** The Buyer acknowledges that there is currently an ongoing tax appeal concerning the Property, specifically identified as with respect to the Property (the "**Tax Appeal**"). Buyer acknowledges and agrees that any tax refunds, overpayments, or adjustments resulting from the Tax Appeal shall be the sole property of, and retained by, Seller. Seller shall have the exclusive right to any such tax returns or overpayments arising from the period prior to the

Closing Date. To the extent that the proceeds from the Tax Appeal are mailed to the applicable Premises, Buyer shall, within two (2) business days, send via Federal Express overnight mail such proceeds to Seller at the notice address below. Buyer agrees to cooperate with the Seller in any reasonable manner to facilitate the resolution of the Tax Appeal. The provisions of this Section 7.B shall survive Closing.

8. **CONDITIONS PRECEDENT TO CLOSING.**

A. **Conditions Precedent**. The obligation of the parties to close on the sale of the Property in accordance with this Agreement is subject to satisfaction of each of the following conditions (the "**Conditions Precedent**"), any of which may be waived in whole or in part by the applicable party on or prior to the Closing:

(i) Certificate of Representations and Warranties. Each party's representations set forth in this Agreement above shall be true and correct in all material respects on the Closing Date, as though made on such date (the "**Representation Condition**"). For purposes of determining whether the Representation Condition has been satisfied, each party will deliver to the other at Closing a certificate (the "**Closing Date Certificate**") certifying that all of the representations and warranties remain true and correct, as of the Closing Date and in all material respects, except for changes and qualifications specified in such Closing Date Certificate, such that the Closing Date Certificate is true and accurate in all material respects. If either party's representations are untrue in any material respect as indicated on the Closing Date Certificate, it shall be considered an event of default and the parties shall have the respective rights set forth in Section 11 below.

(ii) Compliance with Covenants. Each party shall have performed and complied, in all material respects, with all of the material terms, conditions and covenants required by this Agreement to be performed and complied with prior to or on the Closing Date.

(iii) Receipt of Approval Order.

(a) The Bankruptcy Court shall have entered the Approval Order in the Bankruptcy Cases authorizing the Transactions and approving this Agreement under Sections 105(a), 363 and 365 of the Bankruptcy Code, in form and substance reasonably acceptable to Seller and Buyer, and the Approval Order shall contain findings that Buyer acquired the Property in good faith, for fair value, in an arm's length transaction, and as of the Closing Date the Approval Order shall be in full force and effect, shall not then be stayed, and shall not have been vacated or reversed;

(b) The Bankruptcy Court shall have either (i) waived the stay imposed by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure as to the Approval Order or (ii) such stay shall have expired pursuant to Rule 6004(h) of the Federal Rules of Bankruptcy Procedure as to the Approval Order; and

(c) No injunction, stay or similar Order issued by any Governmental Authority shall be in effect that restrains, enjoins, stays or prohibits the consummation of the Transactions.

B. **Buyer's Rights If Conditions Precedent Are Not Satisfied**. Except as provided in Section 8.D below, if, on the Closing Date, any of the Conditions Precedent to the Buyer's obligation to consummate the purchase of the Premises have not been satisfied, (except for the condition precedent set forth in Section 8.A.(iii) above), and provided the Buyer is not in default

of its obligations herein this Agreement, the Buyer shall elect to either (1) waive such of those conditions as are unsatisfied and proceed to Closing without abatement of the Purchase Price; or (2) terminate this Agreement, in which latter event, the Deposit shall be refunded to Buyer and the parties hereto shall be released from all liabilities and obligations under this Agreement, except those which expressly survive termination of this Agreement. The foregoing shall not limit the Buyer's rights in the event the Conditions Precedent are not satisfied as a result of the Seller's default in accordance with Section 11.C below.

C. **Seller's Rights If Conditions Precedent Are Not Satisfied**. Except as provided in Section 8.D below, in the event Seller does not receive the Approval Order to sell the Property to Buyer, this Agreement shall automatically terminate, the Deposit shall be returned to Buyer, and neither party shall have any other right, obligation, or liability hereunder (except for those which expressly survive). If, on the Closing Date, any of the other Conditions Precedent to Seller's obligation to consummate the purchase of the Premises have not been satisfied (except for the condition precedent set forth in Section 8.A.(iii) above), Seller shall elect to either (1) waive such of those conditions as are unsatisfied and proceed to Closing without abatement of the Purchase Price; or (2) terminate this Agreement, in which latter event, the Deposit shall be refunded to Buyer and the parties hereto shall be released from all liabilities and obligations under this Agreement, except those which expressly survive termination of this Agreement. The foregoing shall not limit Seller's rights in the event the Conditions Precedent are not satisfied as a result of Buyer's default in accordance with Section 11.A below.

D. **Backup Bidder**. Upon the entry of an order of the Bankruptcy Court authorizing the sale of the Property in a Competing Transaction ("**Other Approval Order**"), Buyer shall not be permitted to terminate this Agreement upon the entry of such an order if Buyer is determined to be the second highest bidder for the Property, in which case Buyer is required to remain bound by the terms of this Agreement until the earlier of (1) closing of the Competing Transaction or (2) thirty (30) days after entry of the Other Approval Order.

9. **CONDEMNATION OR CASUALTY**. If, prior to Closing, all or any part of Premises is destroyed or damaged as a result of fire or any other casualty or is taken by eminent domain proceedings or a notice of any eminent domain proceeding with respect to the Premises or any part thereof is received by the Seller, the Seller shall immediately give notice thereof. Notwithstanding the foregoing, in the event of a casualty or eminent domain taking, Buyer shall remain obligated to proceed to Closing under the terms and conditions of this Agreement, without abatement or reduction of the Purchase Price; provided, however, Seller shall assign, transfer, and pay to Buyer any and all insurance proceeds or condemnation awards actually received by Seller at Closing.

10. **REAL ESTATE BROKERS**. The Seller and Buyer respectively warrant to each other that no finders, real estate brokers or other persons entitled to claim a fee or commission have interests in this transaction, other than Jones Lang LaSalle Americas, Inc. ("**JLL**"), whose fees and commissions shall be paid by Seller pursuant to a separate agreement between Seller and JLL, and that they have not had any dealings with any other person which may entitle that person to a fee or commission. The Seller and the Buyer hereby agree to indemnify and hold the other harmless against any losses, costs or expenses (including attorney's fees) arising out of any claim of any broker or finder in engaged by the party breaching the representation above. The terms of this Section 10 shall survive the Closing Date.

11. **DEFAULT**.

A. **By Buyer**. If the Buyer fails to fulfill or perform any of the terms or conditions of this Agreement required to be performed by Buyer, and/or fails to complete Closing and such failure is not a result of Seller's default hereunder, and in either case such failure continues for five (5) days after written notice from Seller, then as the Seller's sole and exclusive remedy, Seller may retain the Deposit as liquidated damages and not a penalty, such being agreed between Buyer and Seller to be a necessary condition to this Agreement to compensate the Seller for expenses and expenditures incurred and made in connection therewith, the damages sustained as a result of the Buyer's non-compliance with this Agreement. Thereupon, this Agreement shall become null and void and of no further force and both parties shall be released of further liability and obligations hereunder, except for those liabilities and obligations which expressly survive termination of this Agreement.

B. **By Seller**. If the Seller defaults in the performance of its obligations under this Agreement and such failure continues for five (5) days after written demand from Buyer, or if Buyer determines that any of Seller's Representations were untrue in any material respect as of the Effective Date, Buyer, as Buyer's sole and exclusive remedy, shall either (a) exercise any right that Buyer may have to compel specific performance of Seller's obligations hereunder, which action for specific performance must be filed no later than thirty (30) days after the default, or (b) terminate this Agreement, in which latter event the Seller shall return the Deposit to Buyer, as Buyer's sole and exclusive remedy, thereupon, this Agreement shall become null and void and of no further force and both parties shall be released of further liability and obligations hereunder, except for those liabilities and obligations which expressly survive termination of this Agreement.

C. **Prevailing Party**. If Seller commences any legal action involving this Agreement against the Buyer, or Buyer makes Seller a party to any legal action involving this Agreement, the prevailing party shall be entitled to be reimbursed by the non-prevailing party for all attorneys' fees and court costs in connection with any such action.

12. **GENERAL PROVISIONS**.

   A. **Binding Effect**.

   (1) This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors, and assigns. Buyer shall have the right to assign this Agreement to an entity which controls, is controlled by or is under common control with Buyer. In the event Buyer assigns this Agreement, then notwithstanding anything herein to the contrary, (i) the Buyer shall pay for the entirety of any transfer taxes (city, county, state, school, or otherwise) payable in connection with any assignment of this Agreement or its right to purchase or sell the Premises as set forth herein, without contribution, proration, or rights to indemnification from the non-assigning party; (ii) no assignment (permitted or otherwise) of this Agreement shall relieve the Buyer from any of its obligations hereunder; (iii) no such assignment shall have the effect of delaying the Closing in any respect; (iv) the Seller agrees to cooperate in executing any document, instrument or other agreement necessary to facilitate such transfer so long as the same shall not alter the Buyer's obligations in any way; and (v) the Buyer shall indemnify and hold harmless the Seller party from any and all losses in connection with any such assignment, which indemnification shall survive Closing and shall survive the expiration or termination of this Agreement. The Parties agree to enter into a Novation at least three (3) days prior to Closing if required by Buyer, Seller or the Bankruptcy Court for purposes of Buyer taking title under this Agreement, via a newly formed SPE ("**New Buyer**"); provided that (i) New Buyer is wholly owned

and controlled by either Buyer or the principals of Buyer, (ii) New Buyer expressly assumes all of Buyer's obligations under this Agreement, (iii) Buyer delivers evidence to Seller that New Buyer has sufficient funds to close this transaction, including, without limitation, that New Buyer has readily available cash to pay the Purchase Price and all closing costs, and (iv) notice of such assignment and assumption has been delivered to Seller prior to such assignment.

B. **Entire Agreement**. This Agreement constitutes the entire agreement between the parties hereto and supersedes all prior negotiations, understandings and agreements of any nature whatsoever with respect to the subject matter hereof. No amendment, waiver or discharge of any provision of this Agreement shall be effective against either party unless that party shall have consented thereto in writing.

C. **Governing Law**. This Agreement shall be governed, interpreted, and construed in accordance with the internal laws of the State of Delaware without giving effect to principles of conflicts or choice of laws.

D. **Notices**. All notices or other communications required or permitted to be given under the terms of this Agreement shall be in writing, sent by Certified Mail, postage prepaid, return receipt requested, facsimile, email (with original to follow in mail) or by private carrier guaranteeing next day service, addressed as follows:

(1) If to the Seller, addressed as follows:

Alfred T. Giuliano
Chapter 7 Trustee of The University of the Arts
2301 E. Evesham Road
Pavilion 800, Suite 201
Vorhees, NJ 08043
E-mail: atgiuliano@giulianomiller.com

With a copy to:

Fox Rothschild LLP
2001 Market Street, Suite 1700
Philadelphia, PA 19103
Attn: Michael Menkowitz, Esq.
Email: mmenkowitz@foxrothschild.com

And

Chipman Brown Cicero & Cole, LLP
Hercules Plaza
1313 N. Market Street, Suite 5400
Wilmington, DE 19801
Attn: David Carickhoff, Esq.
Email: carickhoff@chipmanbrown.com

(2) If to Buyer, addressed as follows:

Scout Urban, LLC
1901 S. 9th Street
Philadelphia, PA. 19148
Attention: Lindsey Scannapieco
lindsey@scout-ltd.com

With a copy to:

Carol Ann Mueller, Esquire
Solid Legal Ground, LLC
8 Hathaway Circle
Wynnewood, PA. 19096
carol@solidlegalground.net

or to such other address or addresses and to the attention of such other person or persons as any of the parties hereto may notify the others in accordance with the provisions of this Agreement.

E. **Captions**. Captions contained in this Agreement are inserted only as a matter of convenience and in no way define, limit or extend the scope or intent of this Agreement or any provision hereof.

F. **Business Days**. If the last day for performance of any act or exercise of any right falls on a Saturday, Sunday or legal holiday, such last day for performance or exercise of such right shall be extended to the next day that is not a Saturday, Sunday or legal holiday.

G. **Counterparts**. This Agreement may be executed in counterparts, including Docu-Sign or PDF signatures, which together shall constitute one agreement. The contract formation pursuant to this Agreement and record-keeping of this Agreement through electronic means shall have the same legal validity and enforceability as a manually executed or paper-based recordkeeping system to the fullest extent permitted by applicable Governmental Requirements, including without limitation, the Federal Electronic Signatures in Global and National Commerce Act, the Uniform Electronic Transactions Act or any similar state law, and the parties to this Agreement hereby waive any objection to the contrary.

**-SIGNATURES APPEAR ON FOLLOWING PAGE-**

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed the day and year first above written.

**SELLER**:

ALFRED T. GIULIANO, SOLELY IN HIS CAPACITY AS CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF THE UNIVERSITY OF THE ARTS, a Pennsylvania non-profit corporation

By: _____

**BUYER**:

SCOUT URBAN, LLC

By: _____
Lindsey Scannapieco
Managing Member

**Exhibit A**

**Legal Description**

**[TO BE INSERTED]**

# EXHIBIT "A"
Legal Description

ALL THAT CERTAIN lot or piece of ground.

SITUATED in the 8th Ward of the City of Philadelphia, described according to a Plan Prepared by Bartin and Martin, Engineers dated March 24, 1981, revised April 8, 1981 and June 3, 1981, as follows, to wit:

BEGINNING at a point formed by the intersection of the Northeasterly side of Pine Street, (51 feet wide) and the Northwesterly side of Broad ( 113 feet wide); Thence extending from said point of beginning Northwestwardly along the said Northeasterly side of Pine Street the distance of 199 feet 5-3/4 inches to a point; thence extending Northeastwardly the distance of 51 feet 10-3/4 inches to a point; thence extending Southeastwardly the distance of 10 feet 2-1/8 inches to a point; thence extending Northwardly the distance of 1 foot 4 inches to a point; thence extending Southeastwardly the distance of 18 feet 2 3/8 inches to a point; thence extending Southwestwardly the distance of 1 foot 4 inches to a point; thence extending Southeastwardly the distance of 11 feet 2-1/2 inches to a point; thence extending Northeastwardly the distance of 12 feet 7 inches to a point; thence extending Southeastwardly the distance of 8 feet 4 inches to a point; thence extending Northeastwardly the distance of 12 feet 8-1/4 inches to a point; thence extending Northwestwardly the distance of 19 feet 6-1/2 inches to a point; thence extending Southwestwardly the distance of 1 foot 0-1/4 inches to a point; thence extending Northwestwardly the distance of 29 feet 2 inches to a point; thence extending Northeastwardly the distance of 47 feet 0 1/4 inches to a point; thence extending Southeastwardly the distance of 11 feet 5 inches to a point; thence extending Northeastwardly the distance of 25 feet 3-3/8 inches to a point; thence extending Northwestwardly the distance of 12 feet 5 inches to a point; thence extending Northeastwardly the distance of 51 feet 9-5/8 inches to a point on the Southwesterly side of Delaney Street (40 feet wide); thence extending Southeastwardly partly along the said Southwesterly side of Delaney Street and along the Southwesterly side of former Delancey Street (stricken from City Plan confirmed 11-6-1979) (Reserved as a Right of Way for Drainage Purposes) the distance of 201 feet 3-1/4 inches to a point on the said Northwesterly side of Broad Street; thence extending Southwestwardly along the said Northwesterly side of Broad Street the distance of 200 feet 3 inches to a point, on the said Northeasterly side of Pine Street, being the first mentioned point and place of beginning.

TOGETHER with and under and subject to any and all easements upon, above or below ground which may be necessary or desirable for ingress, egress or regress and to supply, repair and maintain utilities to, from, and between the leased premises and the premises immediately to the West thereof (which premises are bounded by the Mortgaged premises, Pine Street, 15th Street and Delancey Street, including its vacated portion), Subject at all times to the obligation of each premises for its proportionate cost of such utilities and the cost of erecting, maintaining, or replacing the facilities for the provision thereof and for the proportionate cost of the maintenance of the means of ingress, egress and regress.

BEING known as 320 South Broad Street.

Title to said premises is vested as follows

Being part of the same premises which Philadelphia Museum of Art, a Pennsylvania nonprofit corporation by Deed dated 6/30/1964 and recorded 7/3/1964 in Philadelphia County in [CAD 218](#) [Page 383](#) conveyed unto Philadelphia College of Art, a Pennsylvania nonprofit corporation., in fee.

And by amendment to the charter the said Philadelphia College of Art has changed its name to the University of The Arts.

Being the same premises which The University of The Arts, a Pennsylvania Non-Profit Corporation by Deed dated 4/15/1994 and recorded 7/26/1994 in Philadelphia County in [VCS 634](#) [Page 502](#) conveyed unto The University of The Arts, a Pennsylvania Non-Profit Corporation, in fee.

# EXHIBIT "A"
Legal Description

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.

SITUATE on the West side of Broad Street and North side of Pine Street in the 8th Ward (formerly part of the Seventh Ward) of the City of Philadelphia.

CONTAINING in front or breadth on the said Broad Street Two hundred feet and extending Westward of that width along the North side of said Pine Street Three hundred and ninety-six feet to the East side of Fifteenth Street.

BOUNDED Northward by a certain forty feet wide street called Asylum Street, now known as Delancey Street, Eastward by the said Broad Street, Southward by the said Pine Street and Westward by Fifteenth Street aforesaid.

TOGETHER with the free use, right, liberty and privilege of the said forty feet wide street, called Asylum Street, now known as Delancey Street, from Broad Street to Fifteenth Street, with and without horses, carriages, carts and cattle at all times hereafter, forever.

EXCEPTING THEREOUT AND THEREFROM that portion of premises which was conveyed in Deed of Confirmation dated 4/15/1994 and recorded 7/26/1994 in Deed Book VCS 634 Page 501.(320 South Broad Street)

BEING known as No. 320R South Broad Street.

Being the same premises which Philadelphia College of Art, a Pennsylvania nonprofit corporation by Deed from Philadelphia Museum of Art, a Pennsylvania nonprofit corporation dated 6/30/1964 and recorded 7/3/1964 in the County of Philadelphia in Deed Book CAD 218 Page 383.

AND the said Philadelphia College of Art has since merged with The University of the Arts and has changed its name to The University of the Arts.