# <u>EXHIBIT B</u>

## (Agreement of Sale)

## AGREEMENT OF SALE

THIS AGREEMENT OF SALE (the "**Agreement**") is made this 6th day of March 2025, by and between **ALFRED T. GIULIANO, SOLELY IN HIS CAPACITY AS CHAPTER 7 TRUSTEE ("Seller") FOR THE BANKRUPTCY ESTATE OF THE UNIVERSITY OF THE ARTS, A PENNSYLVANIA NON-PROFIT CORPORATION ("Debtor")** and **DSA 401 LIFETIME LLC, A DELAWARE LIMITED LIABILITY COMPANY ("Buyer")**. The term "**Effective Date**" shall mean the date that this Agreement has been fully executed by all parties and Seller has received a fully executed, original counterpart of the same.

## BACKGROUND

A.    WHEREAS, on September 13, 2024 (the "**Petition Date**"), Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**");

B.    WHEREAS, Seller is the duly appointed and acting Chapter 7 trustee for Debtor's bankruptcy case which is being jointly administered under Case No. 24-12140(BLS) (Jointly Administered) with the chapter 7 case of U of Arts Finance LLC (collectively, the "**Bankruptcy Cases**");

C.    WHEREAS, Debtor's estate is the owner of that certain tract and parcel of ground located at 401-411 South Broad Street which is situate in the City of Philadelphia, and more particularly described on **Exhibit A** attached hereto and incorporated hereby (the "**Premises**").

D.    WHEREAS, Seller, on behalf of the Debtor's estate, desires to sell the Premises to Buyer, and Buyer desires to purchase the Premises from Seller, upon the terms and conditions set forth herein.

E.    WHEREAS, the transactions contemplated by this Agreement (the "**Transactions**") will be consummated pursuant to an Approval Order (as defined below) to be entered in the Bankruptcy Cases pursuant to §§ 105, 363, 365 and other applicable provisions of the Bankruptcy Code, and the Transactions and this Agreement are subject to the approval of the Bankruptcy Court.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the parties hereto, intending to be legally bound hereby, agree as follows:

1.    **SALE OF PREMISES**.

A.    Property. Subject to the terms and conditions set forth herein this Agreement, Seller agrees to sell to Buyer, and Buyer agrees to purchase from Seller, the Premises, including all the buildings and other improvements located thereon (the "**Improvements**"), together with all of Debtor's right, title, and interest in and to (i) any and all personal property relating to the operation of the subject property, (ii) any land lying in the bed of any street, road or alley, open or proposed, in front, abutting or adjoining the subject property, (iii) any easement,

privilege, license or right-of-way inuring to the benefit of the subject property, (iv) the appurtenances and hereditament belonging or otherwise pertaining to the subject property, and (v) any and all fixtures and personal property situate on the Premises on the Closing Date (as hereafter defined) (collectively, the "**Property**").

      B.    Intangible Property. At Closing Seller shall assign to Buyer all of Seller's right, title and interest, if any, in and to all of the following items, to the extent assignable and without warranty (1) all licenses and permits relating to the ownership or operation of the Property, governmental approvals, entitlements, and certificates of occupancy relating to the Property, and drawings, plans, and specifications for the Property, and (2) all guaranties, warranties and indemnities received by Seller from any contractor, manufacturer or other person in connection with the construction or operation of the Property (collectively, the "**Intangible Property**").

      2.    **PURCHASE PRICE**. The total purchase price to be paid by Buyer to Seller for the Property (the "Purchase Price") shall be $6,750,000.00, payable as follows:

      A.    The sum of $1,000,000.00, which represents 14.81+/-% of the Purchase Price (the "**Deposit**"), to be deposited with the Seller, on the Effective Date. Seller shall hold the Deposit, in trust, in a non-interest-bearing account, pursuant to the terms of this Agreement. The Deposit shall be non-refundable (except as otherwise expressly set forth in this Agreement) and applied to the Purchase Price at the Closing (as hereinafter defined).

      B.    The balance of the Purchase Price in the sum of $5,750,000.00, plus or minus any net cash adjustments made pursuant to the terms of this Agreement, is to be paid by Buyer to Seller at the Closing (hereinafter defined), in immediately available federal funds, subject to adjustments, prorations and credits as herein provided.

      3.    **COVENANTS PRIOR TO CLOSING**. Between the Effective Date and the date of Closing:

      A.    Bankruptcy Issues. Seller and Buyer shall each use their reasonable efforts, and shall cooperate, assist and consult with each other, to secure the entry of an order (the "**Approval Order**") of the Bankruptcy Court in the Bankruptcy Cases in form and substance acceptable to Seller and Buyer containing provisions, including without limitation: (i) approving this Agreement, (ii) authorizing the sale of the Property pursuant to Section 363 of the Bankruptcy Code, (iii) authorizing the Transactions, and (iv) providing that this Agreement and the Transactions are undertaken by Buyer and Seller at arm's length, without collusion, and in good faith within the meaning of Section 363(m) of the Bankruptcy Code, that Buyer and Seller are entitled to the protections of Section 363(m) of the Bankruptcy Code, and that the provisions of Section 363(n) of the Bankruptcy Code are not applicable. Subject to the Approval Order, Seller and Buyer shall use reasonable best efforts to make any reasonable filings, take all reasonable actions, and to obtain any and all other approvals and consents necessary for consummation of the Transactions contemplated by this Agreement. Buyer is responsible for satisfying any finding concerning its ability to provide adequate assurance of future performance under Section 365 of the Bankruptcy Code, as required. Buyer acknowledges that consummation of the Transactions is subject to Seller's right to accept a higher and better offer from a third party (other than Buyer) for the acquisition of all or substantially all the Property (a "**Competing Transaction**"), and Buyer

confirms that this Agreement is submitted in connection with the Bankruptcy Court approved Bid Procedures.

4.      **CLOSING; CLOSING DELIVERIES**.

A.      <u>Closing</u>. The closing ("**Closing**") shall occur on the first business day that is fifteen (15) days following Seller's receipt and delivery to Buyer of the Approval Order (such date the "**Closing Date**"), or such other date as Buyer and Seller may otherwise agree in writing, provided that Closing shall occur, if at all, on or before April 30, 2025. Buyer acknowledges and agrees that it is an express condition precent to Seller's and Buyer's obligations to complete Closing, that Seller shall have obtained and received the Approval Order. Closing shall be held via escrow through the services of Land Services USA, LLC, Philadelphia, Pennsylvania (the "**Title Company**") at which time all documents legally required to carry out the terms of this Agreement shall be executed and delivered upon satisfaction of applicable escrow conditions.

B.      <u>Seller's Closing Deliveries</u>. At Closing, Seller shall execute and deliver (acknowledged where necessary) to Buyer or the Title Company, as applicable:

(i)      a special warranty deed (the "**Deed**"), conveying title to the Property to Buyer in the form attached hereto as **Exhibit B**;

(ii)      a bill of sale and assignment agreement (the "**Bill of Sale**") conveying the personal property of Seller situate on or within the Property to Buyer in the form attached hereto as **Exhibit C**;

(iii)      an assignment of the Intangible Property (the "**Assignment**") in the form attached hereto as **Exhibit D**;

(iv)      an affidavit which states that no Seller is a "foreign person" as set forth in Section 1445 of the Internal Revenue Code of 1986, as amended ("**Code**");

(v)      the Closing Date Certificate (defined below);

(vi)      such other affidavits and documents as are reasonably required by the Title Company to issue to Buyer the Title Policy in the form provided for in this Agreement, including, without limitation, a customary owner's title affidavit in form and substance reasonably acceptable to the Title Company;

(vii)      a signed settlement statement; and

(viii)      to the extent not previously provided to Buyer or the Title Company, the Approval Order and such other documents and instruments as are reasonably required by Buyer and the Title Company evidencing Debtor's authority to consummate the Transactions and consummate Closing under this Agreement.

The legal description in the Deed shall be the same as the legal description in the deeds by which Debtor took title to the Premises.

At Closing Seller shall deliver to Buyer possession of the Property, free and clear of all rights and claims of third parties, with all keys and access cards.

C.  <u>Buyer's Closing Deliveries</u>. At Closing, Buyer shall execute and deliver (acknowledged where necessary) to Seller or Buyer's Title Company, as applicable:

(i)  the balance of the Purchase Price;

(ii)  a signed counterpart of the Assignment;

(iii)  such affidavits and other documents as are reasonably required by the Title Company to issue to Buyer a Title Policy as set forth in this Agreement; and

(iv)  a signed settlement statement.

D.  <u>Tender Waived</u>. Formal tender of an executed deed and purchase money is hereby waived.

5.  **APPORTIONMENTS**. At Closing, the following apportionments shall be made:

A.  <u>Real Estate Taxes</u>. Real estate taxes shall be apportioned on a per diem basis on the basis of the fiscal or calendar year of each taxing authority, with the date of Closing belonging to Buyer.

B.  <u>Water, Sewer and Other Utility Charges</u>. Any water, sewer or other utility charges assessed against or incurred with respect to the Premises, with the date of Closing belonging to Buyer.

C.  <u>Intentionally Omitted</u>.

D.  <u>Real Estate Transfer Taxes</u>. All real estate transfer taxes imposed by any governmental body or bodies shall be split equally between Buyer and Seller; provided, however, any recordation fees and/or documentary stamps imposed in connection with an assignment of this Agreement by Buyer shall be borne solely by the Buyer. Notwithstanding the foregoing or anything to the contrary, Buyer shall be solely responsible for, and shall indemnify, defend, and hold Seller harmless from, any and all transfer taxes imposed in connection with an assignment of this Agreement by Buyer. In the event Buyer assigns this Agreement, Buyer shall provide proof satisfactory to Seller that such taxes, if and to the extent due and payable, have been paid at or prior to Closing.

E.  <u>Other Closing Costs</u>. Buyer shall be responsible for the following fees and expenses in connection with the Closing: (i) the cost of issuance of the Title Policy, (ii) the cost of issuance of any lender's policy of title insurance, (iii) the cost of recording any mortgage granted by Buyer, and (iv) all of the escrow fees charged by the Title Company. Seller shall be responsible for the costs of recordation of the Deed. Each party shall pay its own expenses incurred in connection with this Agreement and the Transactions contemplated hereby, including, without limitation, all accounting and legal fees.

4

6.      **REPRESENTATIONS AND WARRANTIES**.

        A.      Representations and Warranties of Seller. In order to induce the Buyer to enter into this Agreement and purchase the Premises, and with full knowledge that the Buyer is relying thereon, the Seller hereby warrants and represents to the Buyer as follows:

                (i)      Authorization. Subject to the entry of the Approval Order by the Bankruptcy Court, Seller has full legal capacity, right, power and authority to enter into this Agreement. Subject to the entry of the Approval Order by the Bankruptcy Court, the execution, delivery and performance by Seller of this Agreement and the consummation of the Transactions are within Seller's powers and have been duly authorized by all necessary actions on the part of Seller. Subject to entry of the Approval Order by the Bankruptcy Court, this Agreement constitutes a valid and binding agreement of Seller that is enforceable in accordance with its terms.

                (ii)      Title to Premises. Debtor's estate is the fee simple owner of the Premises, subject to the Permitted Exceptions. For purposes of this Agreement, "**Permitted Exceptions**" shall mean (a) any and all declarations, restrictions, covenants, conditions, liens, encumbrances, easements of public and private roads and easements, privileges and rights necessary for utility companies; whether of record, or which may be either visible upon the ground; (b) any matters of survey affecting title that would show on an accurate survey of the Property, and (c) any and all laws, ordinances, rules and regulations of any governmental or quasi-governmental body having jurisdiction over the Property.

                (iii)      Leases and Contracts. To Seller's actual knowledge, there are no leases or other occupancy agreements or contracts for services or materials to which the Property is subject and which will be biding upon Buyer following Closing. Seller shall use commercially reasonable efforts to cause a termination (the "**MOL Termination**") of that certain Memorandum of Lease between the Debtor and Jewish Community Centers of Greater Philadelphia recorded December 7, 2000 as Document No. 50181516 to be recorded on or prior to Closing;  provided, however, that the recording of the MOL Termination shall not be a condition to Buyer's obligation to complete the Transactions hereunder. If the MOL Termination is not recorded prior to Closing Seller shall continue to use commercially reasonable efforts to cause the MOL Termination to be recorded following closing (and such obligation shall survive Closing).

                (iv)      Insurance. Seller has delivered copies of insurance certificates for all policies relating to the Property.

        Any change of facts or circumstances not intentionally caused by Seller that render any of the representations and warranties of Seller set forth in this Agreement inaccurate, incomplete, incorrect or misleading in any material respect (each a "**Permitted Change**") shall not constitute a breach or default by Seller under this Agreement. The parties agree that if, on or prior to Closing, Buyer has knowledge (either by way of Seller's notice or otherwise) that any representation or warranty of Seller is inaccurate, incomplete, incorrect or misleading, and notwithstanding the foregoing Buyer elects to close the Transaction (as opposed to terminating this Agreement), Buyer shall have no claim against Seller, and Seller shall have no liability, in connection with a breach of such representation or warranty and Buyer shall not look to Seller for any redress or relief thereof.

5

B.    Representations and Warranties of Buyer. In order to induce the Seller to enter into this Agreement, the Buyer hereby warrants and represents to the Seller that:

(i)    Due Authorization. Buyer is a duly formed and validly existing limited liability company in good standing under the laws of the State of Delaware. Buyer has full power and authority to enter into this Agreement, to perform this Agreement and to consummate the Transactions contemplated hereby. The execution, delivery and performance of this Agreement and all documents contemplated hereby by Buyer have been duly and validly authorized by all necessary action on the part of Buyer, and all required consents and approvals have been duly obtained and will not result in a breach of any of the terms or provisions of, or constitute a default under any indenture, agreement and/or instrument to which Buyer is a party. This Agreement is a legal, valid and binding obligation of Buyer, enforceable against Buyer in accordance with its terms, subject to the effect of applicable bankruptcy, insolvency, reorganization, arrangement, moratorium or other similar laws affecting the rights of creditors generally.

(ii)    OFAC. Neither Buyer nor any of its affiliates, nor any of their respective partners, members, shareholders or other equity owners, and none of their respective employees, officers, directors, representatives or agents is, nor will they become, a person or entity with whom United States persons or entities are restricted from doing business under regulations of OFAC (including those named on OFAC's Specially Designated and Blocked Persons List) or under any statute, executive order (including, without limitation, the September 24, 2001, Executive Order Blocking Premises and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism), or other governmental action, and is not and will not engage in any dealings or transactions or be otherwise associated with such persons or entities.

(iii)    Consents. No authorization, consent or approval of any governmental authority (including, without limitation, courts) is required for the execution and delivery by Buyer of this Agreement or the performance of its obligations hereunder.

(iv)    Bankruptcy Matters. Buyer has not made a general assignment for the benefit of creditors, filed any voluntary petition in bankruptcy or suffered the filing of an involuntary petition by its creditors, suffered the appointment of a receiver to take possession of substantially all of its assets, suffered the attachment or other judicial seizure of substantially all of its assets, admitted its inability to pay its debts as they come due, or made an offer of settlement, extension or composition to its creditors generally.

(v)    Conflict. Neither the execution, delivery or performance of this Agreement nor compliance herewith (A) conflicts or will conflict with or results or will result in a breach of or constitutes or will constitute a default under (x) the articles of incorporation and by-laws or other organization certificate and/or partnership or operating agreement of Buyer, or (y) to Buyer's knowledge, any law or any order, writ, injunction or decree of any court or governmental authority, or (B) results in the creation or imposition of any lien, charge or encumbrance upon its Premises pursuant to any such agreement or instrument.

(vi)    Sufficient Funds; Adequate Assurance. Buyer has and will have at the Closing immediately available funds sufficient for the satisfaction of all of its obligations under this Agreement, including the payment of the Purchase Price, and all fees, expenses of and other

6

amounts required to be paid by Buyer in connection with the Transactions contemplated hereby. Buyer's obligations under this Agreement are not contingent upon Buyer procuring financing for the Transactions contemplated hereby.

(vii)    No Collusion. Buyer represents and warrants that it has not engaged in any collusion with respect to its bid on the Property and the Transactions contemplated hereunder.

(viii)    No Claims. There are no material claims, actions, suits, proceedings, or investigations pending, or to the current actual knowledge of Buyer's officers, members and directors, without an obligation of independent inquiry, threatened against Buyer that could materially impair Buyer's ability to fulfill and perform Buyer's obligations under this Contract.

7.    **CONDITION OF PREMISES; TAX APPEAL**.

A.    AS-IS SALE. Buyer is a sophisticated investor and its decision to purchase the Premises is based upon its own independent expert evaluations of such facts and materials deemed relevant to Buyer and its agents. Buyer has not relied in entering into this Agreement upon any oral or written information from the Seller or any of the Seller's agents, consultants, advisors or representatives except the Seller's Representations expressly set forth in this Agreement. Without limiting the generality of the foregoing, except as otherwise expressly provided herein, **BUYER ACKNOWLEDGES AND AGREES WITH SELLER THAT BUYER IS PURCHASING THE PROPERTY IN "AS IS", "WHERE IS" AND "WITH ALL FAULTS" CONDITION ON THE CLOSING DATE, INCLUDING ANY LATENT DEFECT OR NON-DISCOVERABLE DEFECT, SPECIFICALLY AND EXPRESSLY WITHOUT ANY WARRANTIES, REPRESENTATIONS OR GUARANTEES, EITHER EXPRESS OR IMPLIED OF ANY KIND, NATURE, OR TYPE WHATSOEVER FROM OR ON BEHALF OF SELLER AND SELLER DISCLAIMS AND BUYER WAIVES ANY AND ALL WARRANTIES, INCLUDING BUT NOT LIMITED TO WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR AS TO ANY ENVIRONMENTAL MATTERS. SELLER IS NOT LIABLE OR BOUND IN ANY MANNER BY ANY VERBAL OR WRITTEN STATEMENTS, REPRESENTATIONS, REAL ESTATE BROKERS, "SET-UPS," OFFERING MEMORANDA OR INFORMATION PERTAINING TO THE PREMISES FURNISHED BY ANY REAL ESTATE BROKER, ADVISOR, CONSULTANT, AGENT, EMPLOYEE, REPRESENTATIVE OR OTHER PERSON. THE FOREGOING SHALL NOT RELEASE SELLER FROM ITS EXPRESS REPRESENTATIONS, WARRANTIES AND COVENANTS SET FORTH IN THIS AGREEMENT OR IN ANY DOCUMENT DELIVERED BY SELLER AT CLOSING.**

B.    Tax Appeal. The Buyer acknowledges that there is currently an ongoing real estate market value tax appeal concerning the Property for Tax Year 2025, and for all years thereafter until the Tax Appeal (as hereafter defined) is fully and finally resolved (the "**Tax Appeal**"). Buyer acknowledges and agrees that any tax refunds, overpayments, or adjustments resulting from the Tax Appeal for the period prior to the Closing Date shall be the sole property of, and retained by, Seller. Seller shall have the exclusive right to any such tax refunds or overpayments arising from the period prior to the Closing Date. Notwithstanding the foregoing,

7

should the Tax Appeal not be fully and finally adjudicated or otherwise resolved prior to the Closing Date, Seller shall be entitled to any such tax refunds, overpayments or adjustments resulting from the Tax Appeal that apply to any period that includes the Closing Date, and Buyer shall be entitled to such refunds, overpayments or adjustments for all periods after the Closing Date. Prior to the Closing Date, Seller shall not settle or take any material action with respect to the Tax Appeal without the consent of Buyer, which consent may not be unreasonably withheld, conditioned or delayed. To the extent that the proceeds from the Tax Appeal are mailed to the applicable Premises, Buyer shall, within two (2) business days, send via Federal Express overnight mail such proceeds (or, if applicable, the portion thereof due to Seller) to Seller at the notice address below. Subject to the foregoing, Buyer and Seller agree to cooperate with each other in any reasonable manner to facilitate the resolution of the Tax Appeal. For avoidance of doubt, if the Tax Appeal is not resolved prior to Closing, Buyer shall (i) notify the City of Philadelphia of the sale of the Property within five (5) days following the Closing Date and (ii) be solely responsible for all matters relating to the Tax Appeal and diligently pursuing the Tax Appeal, in good faith, to full and final adjudication. The provisions of this Section 7.B shall survive Closing.

8.     **CONDITIONS PRECEDENT TO CLOSING** .

     A.     Conditions Precedent. The obligation of the parties to close on the sale of the Property in accordance with this Agreement is subject to satisfaction of each of the following conditions (the **"Conditions Precedent"**), any of which may be waived in whole or in part by the applicable party on or prior to the Closing:

          (i)     Certificate of Representations and Warranties. Each party's representations set forth in this Agreement above shall be true and correct in all material respects on the Closing Date, as though made on such date (the "**Representation Condition**"). For purposes of determining whether the Representation Condition has been satisfied, each party will deliver to the other at Closing a certificate (the "**Closing Date Certificate**") certifying that all of the representations and warranties remain true and correct, as of the Closing Date and in all material respects, except for changes and qualifications specified in such Closing Date Certificate, such that the Closing Date Certificate is true and accurate in all material respects. If either party's representations are untrue in any material respect as indicated on the Closing Date Certificate (other than as a result of a Permitted Change), it shall be considered an event of default and the parties shall have the respective rights set forth in Section 11 below.

          (ii)     Compliance with Covenants. Each party shall have performed and complied, in all material respects, with all of the material terms, conditions and covenants required by this Agreement to be performed and complied with prior to or on the Closing Date.

          (iii)     Receipt of Approval Order.

               (a)     The Bankruptcy Court shall have entered the Approval Order in the Bankruptcy Cases authorizing the Transactions and approving this Agreement under Sections 105(a), 363 and 365 of the Bankruptcy Code, in form and substance reasonably acceptable to Seller and Buyer, and the Approval Order shall contain findings that Buyer acquired the Property in good faith, for fair value, in an arm's length transaction, and as of the Closing Date

8

the Approval Order shall be in full force and effect, shall not then be stayed, and shall not have been vacated or reversed;

(b)    the Bankruptcy Court shall have either (i) waived the stay imposed by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure as to the Approval Order or (ii) such stay shall have expired pursuant to Rule 6004(h) of the Federal Rules of Bankruptcy Procedure as to the Approval Order; and

(c)    No injunction, stay or similar Order issued by any Governmental Authority shall be in effect that restrains, enjoins, stays or prohibits the consummation of the Transactions.

(iv)    For the sole benefit of Buyer, at Closing the Title Company shall committed to issue to Buyer, at Buyer's sole cost and expense, a standard coverage ALTA Owner's Policy of Title Insurance in the current 2021 policy form covering the Premises, in the full amount of the Purchase Price, but subject only to the Permitted Exceptions (the "**Title Policy**").

B.    <u>Buyer's Rights If Conditions Precedent Are Not Satisfied</u>. Except as provided in Section 8.D below, if, on the Closing Date, any of the Conditions Precedent to the Buyer's obligation to consummate the purchase of the Premises have not been satisfied, (except for the condition precedent set forth in Section 8.A.(iii) above), and provided the Buyer is not in default of its obligations herein this Agreement, the Buyer shall elect to either (1) waive such of those conditions as are unsatisfied and proceed to Closing without abatement of the Purchase Price; or (2) terminate this Agreement, in which latter event, the Deposit shall be refunded to Buyer and the parties hereto shall be released from all liabilities and obligations under this Agreement, except those which expressly survive termination of this Agreement. The foregoing shall not limit the Buyer's rights in the event the Conditions Precedent are not satisfied as a result of the Seller's default in accordance with Section 11.B below.

C.    <u>Seller's Rights If Conditions Precedent Are Not Satisfied</u>. Except as provided in Section 8.D below, in the event Seller does not receive the Approval Order to sell the Property to Buyer, this Agreement shall automatically terminate, the Deposit shall be returned to Buyer, and neither party shall have any other right, obligation, or liability hereunder (except for those which expressly survive). If, on the Closing Date, any of the other Conditions Precedent to Seller's obligation to consummate the purchase of the Premises have not been satisfied (except for the condition precedent set forth in Section 8.A.(iii) above), Seller shall elect to either (1) waive such of those conditions as are unsatisfied and proceed to Closing without abatement of the Purchase Price; or (2) terminate this Agreement, in which latter event, the Deposit shall be refunded to Buyer and the parties hereto shall be released from all liabilities and obligations under this Agreement, except those which expressly survive termination of this Agreement. The foregoing shall not limit Seller's rights in the event the Conditions Precedent are not satisfied as a result of Buyer's default in accordance with Section 11.A below.

D.    <u>Backup Bidder</u>. Upon the entry of an order of the Bankruptcy Court authorizing the sale of the Property in a Competing Transaction ("**Other Approval Order**"), Buyer shall not be permitted to terminate this Agreement upon the entry of such an order if Buyer is determined to be the second highest bidder for the Property, in which case Buyer is required to

remain bound by the terms of this Agreement pursuant until the earlier of (1) closing of the Competing Transaction or (2) thirty (30) days after entry of the Other Approval Order. In the event of the entry of an Other Approval Order and the consummation of a Competing Transaction pursuant to an Other Approval Order, Seller return the Deposit to Buyer and shall cause to be paid to Buyer upon consummation of the Competing Transaction (i) a break-up fee in the amount of $202,500.00, constituting three percent (3%) of the Purchase Price, and (ii) reimbursement of reasonable documented expenses incurred by Buyer in connection with the Transactions in an amount not to exceed two percent (2%) of the Purchase Price in consideration of Buyer's efforts and costs and expenses incurred in pursuing the acquisition of the Property.

9.  **CONDEMNATION OR CASUALTY**. If, prior to Closing, all or any material part of Premises is destroyed or damaged as a result of fire or any other casualty or is taken by eminent domain proceedings or a notice of any eminent domain proceeding with respect to the Premises or any part thereof is received by the Seller, the Seller shall immediately give notice thereof. In the event of a casualty or eminent domain taking which affects less than a material part of the Premises, Buyer shall remain obligated to proceed to Closing under the terms and conditions of this Agreement, without abatement or reduction of the Purchase Price; provided, however, Seller shall assign, transfer, and pay to Buyer any and all insurance proceeds or condemnation awards actually received by Seller at Closing. In the event of a casualty or eminent domain taking which affects a material part of the Premises, Buyer shall have the right, in its sole discretion, to terminate this Agreement by providing written notice to Seller within two (2) business days after Seller's written notice to Buyer of such casualty or eminent domain taking, in which event the Deposit shall be refunded to Buyer and the parties hereto shall be released from all liabilities and obligations under this Agreement, except those which expressly survive termination of this Agreement. For the purposes of this Agreement, a "material part" shall been damage by casualty or condemnation of a portion of any portion of the Premises in an amount or having a value of equal to or greater than $500,000.00.

10. **REAL ESTATE BROKERS**. The Seller and Buyer respectively warrant to each other that no finders, real estate brokers or other persons entitled to claim a fee or commission have interests in this Transaction, other than Jones Lang LaSalle Americas, Inc. ("JLL") and Tactix Real Estate Advisors ("Tactix"). The fees and commissions owing to JLL shall be paid by Seller pursuant to a separate agreement between Seller and JLL. The fees and commissions owing to Tactix shall be paid by Buyer pursuant to a separate agreement between Buyer and Tactix. Each of Seller and Buyer represent that they have not had any dealings with any other person which may entitle that person to a fee or commission. The Seller and the Buyer hereby agree to indemnify and hold the other harmless against any losses, costs or expenses (including attorney's fees) arising out of any claim of any broker or finder in engaged by the party breaching the representation above. The terms of this Section 10 shall survive the Closing Date.

11. **DEFAULT**.

A.  _By Buyer_. If the Buyer fails to fulfill or perform any of the terms or conditions of the Agreement required to be performed by Buyer, and/or fails to complete Closing and such failure is not a result of Seller's default hereunder, and in either case such failure continues for five (5) days after written notice from Seller, then as the Seller's sole and exclusive remedy, Seller may retain the Deposit as liquidated damages and not a penalty, such being agreed

between Buyer and Seller to be a necessary condition to this Agreement to compensate the Seller for expenses and expenditures incurred and made in connection therewith, the damages sustained as a result of the Buyer's non-compliance with this Agreement. Thereupon, this Agreement shall become null and void and of no further force and both parties shall be released of further liability and obligations hereunder, except for those liabilities and obligations which expressly survive termination of this Agreement.

   B. <u>By Seller</u>. If the Seller defaults in the performance of its obligations under this Agreement and such failure continues for five (5) days after written demand from Buyer, or if Buyer determines that any of Seller's Representations were untrue in any material respect as of the Effective Date, Buyer, as Buyer's sole and exclusive remedy, shall either (a) exercise any right that Buyer may have to compel specific performance of Seller's obligations hereunder, which action for specific performance must be filed no later than thirty (30) days after the default, or (b) terminate this Agreement, in which latter event the Seller shall return the Deposit to Buyer, as Buyer's sole and exclusive remedy, thereupon, this Agreement shall become null and void and of no further force and both parties shall be released of further liability and obligations hereunder, except for those liabilities and obligations which expressly survive termination of this Agreement.

   C. <u>Prevailing Party</u>. If Seller commences any legal action involving this Agreement against the Buyer, or Buyer makes Seller a party to any legal action involving this Agreement, the Seller shall be entitled to be reimbursed by the Buyer for all attorneys' fees and court costs in connection with any such action so long as the Seller is the prevailing party.

  12. **<u>GENERAL PROVISIONS.</u>**

   A. <u>Binding Effect</u>. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors, and assigns. Buyer shall have the right to assign this Agreement to an entity in which controls, is controlled by or is under common control with Buyer. In the event Buyer assigns this Agreement, then notwithstanding anything herein to the contrary, (i) the Buyer shall pay for the entirety of any transfer taxes (city, county, state, school, or otherwise) payable in connection with any assignment of this Agreement or its right to purchase or sell the Premises as set forth herein, without contribution, proration, or rights to indemnification from the non-assigning party; (ii) no assignment (permitted or otherwise) of this Agreement shall relieve the Buyer from any of its obligations hereunder; (iii) no such assignment shall have the effect of delaying the Closing in any respect; (iv) the Seller agrees to cooperate in executing any document, instrument or other agreement necessary to facilitate such transfer so long as the same shall not alter the Buyer's obligations in any way; and (v) the Buyer shall indemnify and hold harmless the Seller from any and all losses in connection with any such assignment, which indemnification shall survive Closing and shall survive the expiration or termination of this Agreement.

   B. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between the parties hereto and supersedes all prior negotiations, understandings and agreements of any nature whatsoever with respect to the subject matter hereof. No amendment, waiver or discharge of any provision of this Agreement shall be effective against either party unless that party shall have consented thereto in writing.

11

     C.    <u>Governing Law</u>. This Agreement shall be governed, interpreted, and construed in accordance with the internal laws of the State of Delaware without giving effect to principles of conflicts or choice of laws.

     D.    <u>Notices</u>. All notices or other communications required or permitted to be given under the terms of this Agreement shall be in writing, sent by Certified Mail, postage prepaid, return receipt requested, facsimile, email (with original to follow in mail) or by private carrier guaranteeing next day service, addressed as follows:

    a.    If to the Seller, addressed as follows:

Alfred T. Giuliano
Chapter 7 Trustee of The University of the Arts
2301 E. Evesham Road
Pavilion 800, Suite 201
Vorhees, NJ 08043
E-mail: atgiuliano@giulianomiller.com

With a copy to:

Fox Rothschild LLP
2001 Market Street, Suite 1700
Philadelphia, PA 19103
Attn: Michael Menkowitz, Esq.
Email: mmenkowitz@foxrothschild.com

And

Chipman Brown Cicero & Cole, LLP
Hercules Plaza
1313 N. Market Street, Suite 5400
Wilmington, DE 19801
Attn: David Carickhoff, Esq.
Email: carickhoff@chipmanbrown.com

    b.    If to Buyer, addressed as follows:

DSA 401 Lifetime LLC
c/o Lubert-Adler, L.P.
2400 Market Street, Suite 301
Philadelphia, PA 19013
Attn: Dean Adler
Email: Dadler@lubertAdler.com

With a copies to:

Tactix Real Estate Advisors

12

100 N. 18th Street, suite 520
Philadelphia, PA 19103
Attn: Gary Lozoff
Email: Glozoff@tactix.com

And

Cozen O'Connor
1650 Market Street, 28th Floor
Philadelphia, PA 19103
Attn: Howard Grossman
Email: hgrossman@cozen.com

or to such other address or addresses and to the attention of such other person or persons as any of the parties hereto may notify the others in accordance with the provisions of this Agreement.

   E. <u>Captions</u>. Captions contained in this Agreement are inserted only as a matter of convenience and in no way define, limit or extend the scope or intent of this Agreement or any provision hereof.

   F. <u>Business Days</u>. If the last day for performance of any act or exercise of any right falls on a Saturday, Sunday or legal holiday, such last day for performance or exercise of such right shall be extended to the next day that is not a Saturday, Sunday or legal holiday.

   G. <u>Counterparts</u>. This Agreement may be executed in counterparts, including Docu-Sign or PDF signatures, which together shall constitute one agreement. The contract formation pursuant to this Agreement and record-keeping of this Agreement through electronic means shall have the same legal validity and enforceability as a manually executed or paper-based recordkeeping system to the fullest extent permitted by applicable Governmental Requirements, including without limitation, the Federal Electronic Signatures in Global and National Commerce Act, the Uniform Electronic Transactions Act or any similar state law, and the parties to this Agreement hereby waive any objection to the contrary.

**-SIGNATURES APPEAR ON FOLLOWING PAGE-**

LEGAL\76068031\1
169045913.2

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed the day and year first above written.

**SELLER**:

ALFRED T. GIULIANO, SOLELY IN HIS CAPACITY AS CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF THE UNIVERSITY OF THE ARTS, a Pennsylvania non-profit corporation

By: _Alfred Giuliano_____
32ED519E40B44E2...

**BUYER**:

DSA 401 LIFETIME LLC, a Delaware limited liability company

By: _Dean S. Adler_____
Name: Dean S. Adler
Title:  Sole Member

**Exhibit A**

**Legal Description**

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.

SITUATE in the 5th Ward of the City of Philadelphia, described according to a Plan made for Federation of Jewish Agencies by Barton and Martin, Engineers, Philadelphia, Pennsylvania and signed by Donald J. Barton, Registered Professional Engineer dated 5/16/1977 to wit:

BEGINNING at a point formed by the intersection of the Easterly side of Broad Street (113 feet wide) and the Southerly side of Pine Street (variable width) (part legally open and a 1 foot wide part along the Southerly side being not legally open); thence extending Southwardly along the said Easterly side of Broad Street passing through basement steps which are partly within the bed of said Broad 140 feet to a point; thence Eastwardly passing through a wall passing along the Northerly end of a 3 feet wide alley by Deed which leads Southwardly and passing through a retaining wall 150 feet to a point on the Westerly side of Watts Street (20 feet wide); thence Northwardly along the said Westerly side of Watts Street passing along the Westerly side of steps at two places which steps are in the bed of said Watts Street and passing along the Westerly side of a cellar door 140 feet 0 inches to a point on the Southerly side of said Pine Street; thence Westwardly along the said Southerly side of Pine Street 150 feet to a point on the Easterly side of said Broad Street being the first mentioned point and place of beginning.

BEING known as 401-411 South Broad Street.

**Exhibit B**

**Form of Deed**

This Instrument Was Prepared By:
Alexandra Fahringer, Esq.
Cozen O'Connor
1650 Market Street, Suite 2800
Philadelphia, PA 19103

Record and Return To:

_____
_____
_____

Tax Parcel No.: _____

## SPECIAL WARRANTY DEED

THIS SPECIAL WARRANTY DEED is made this ____ day of _____, 20[__], by **ALFRED T. GIULIANO, IN HIS CAPACITY AS CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF THE UNIVERSITY OF THE ARTS, A PENNSYLVANIA NON-PROFIT CORPORATION** (the "Grantor"), with an address of [_____], to [_____], a [_____] (the "Grantee"), with an address of _____.

W I T N E S S E T H:

WITNESSETH, that Grantor, for and in consideration of the sum of TEN AND 00/100 DOLLARS ($10.00) and other good and valuable consideration, to Grantor in hand paid by Grantee, the receipt and sufficiency whereof are hereby acknowledged, does hereby GRANT, BARGAIN, SELL, CONVEY, RELEASE AND CONFIRM unto Grantee all that certain real property more particularly described in Exhibit "A" attached hereto and incorporated herein by reference for all purposes, together with all and singular the buildings and improvements situated thereon, and together with all right, title and interest of Grantor in and to (i) all streets, roads, driveways, alleys, rights-of-way, waters, water-courses, easements, strips and gores of land, (ii) all rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in any wise appertaining, and (iii) the reversions and remainders, rents, issues, and profits thereof (collectively, the "Property").

UNDER AND SUBJECT to any covenants, conditions, easements and restrictions as may appear of record.

TO HAVE AND TO HOLD the Property unto the said Grantee, its successors and assigns to and for the only proper use and behoof of the Grantee, its successors and assigns, forever.

Exhibit B-1

LEGAL\76068031\1

169045913.2

UNDER AND SUBJECT as aforesaid.

**GRANTOR**, for itself and its successors, does by these presents covenant, grant and agree to and with the Grantee, its successors and assigns, that it, the Grantor and its successors, all and singular the hereditaments and premises hereinabove described and granted, or mentioned, and intended so to be, with the appurtenances, unto the Grantee, its successors and assigns, against it, the Grantor and its successors, and against all and every other person or persons whomsoever, lawfully claiming or to claim the same, or any part thereof, by through or under Grantor, but not otherwise,

**SHALL AND WILL SPECIALLY WARRANT AND FOREVER DEFEND.**

*[Balance of Page Intentionally Left Blank; Signature Page Follows]*

IN WITNESS WHEREOF, Seller has caused this Special Warranty Deed to be executed on the day and year first above written.

**GRANTOR:**

_____

**ALFRED T. GIULIANO**, in his capacity as the Chapter 7 Trustee for the bankruptcy estate of The University of the Arts, a Pennsylvania non-profit corporation

STATE OF                                    )
                                                   )          SS:
COUNTY OF                                )

ON THIS, the _____ day of _____, 20[__], before me, a Notary Public, duly commissioned, qualified and acting, within and for said County and State, personally appeared **Alfred T. Giuliano**, known to me (or satisfactorily proven) to be the person described in the foregoing instrument, and acknowledged that he executed the same in the capacity therein stated and for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

My Commission Expires:

Exhibit B-3

LEGAL\76068031\1

169045913.2

The undersigned hereby certifies that the Tax Billing Address of the within named Grantee/s is:

_____
_____
_____
_____

**GRANTEE:**

[_____], a [_____]

By:_____
Name:_____
Title:_____

List of Exhibits
Exhibit A – Legal Description

Exhibit B-4

## Exhibit C

### Form of Bill of Sale and Assignment

### BILL OF SALE AND ASSIGNMENT

THIS BILL OF SALE AND ASSIGNMENT (this "**Bill of Sale**") is made as of _____, 20__, from **ALFRED T. GIULIANO, IN HIS CAPACITY AS CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF THE UNIVERSITY OF THE ARTS, A PENNSYLVANIA NON-PROFIT CORPORATION** ("**Assignor**"), to [_____], a [_____ _____] ("**Assignee**").

### RECITALS

H.       Concurrently with the execution and delivery of this Bill of Sale, Assignor is conveying to Assignee, by Special Warranty Deed, those certain tracts of land (the "**Land**") more particularly described on <u>Exhibit A</u>, together with all of the improvements located thereon (the "**Improvements**").

I.       Assignor desires to sell, assign, transfer and convey to Assignee, and Assignee desires to accept and obtain, the Assigned Tangible Personal Property (as hereafter defined), subject to the terms and conditions set forth herein.

**NOW, THEREFORE**, in consideration of the receipt of Ten and No/100 Dollars ($10.00) and other good and valuable consideration in hand paid by Assignee to Assignor, the receipt and sufficiency of which are hereby acknowledged by Assignor, Assignor does hereby SELL, ASSIGN, CONVEY, TRANSFER, SET OVER, and DELIVER to Assignee, without recourse or warranty, expressed or implied, with respect to Assignor's interest therein or condition, merchantability or fitness for any purpose thereof, all of Assignor's right, title and interest in and to the following (collectively, the "**Assigned Tangible Personal Property**"):

The appliances, apparatus, fixtures, equipment, machinery, furniture, and other tangible personal property owned by Assignor located on and used in connection with the Land or the Improvements.

Assignee acknowledges that Assignor makes no representation or warranty with respect to the Assigned Tangible Personal Property and that Assignor's interest in the Assigned Tangible Personal Property is being transferred in its "AS IS" "WHERE IS" condition, with all faults, , IT BEING THE INTENTION OF ASSIGNOR AND ASSIGNEE TO EXPRESSLY NEGATE AND EXCLUDE ALL WARRANTIES WHATSOEVER, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE, ANY IMPLIED OR EXPRESS WARRANTY OF CONFORMITY TO MODELS OR SAMPLES OF MATERIALS, ANY CLAIM BY ASSIGNEE FOR DAMAGES BECAUSE OF DEFECTS, WHETHER KNOWN OR UNKNOWN WITH RESPECT TO THE ASSIGNED TANGIBLE PERSONAL PROPERTY, AND ANY OTHER

Exhibit C-1

LEGAL\76068031\1

169045913.2

WARRANTIES CONTAINED IN OR CREATED BY THE UNIFORM COMMERCIAL CODE AS NOW OR HEREAFTER IN EFFECT IN THE STATE IN WHICH THE ASSIGNED TANGIBLE PERSONAL PROPERTY IS LOCATED, OR CONTAINED IN OR CREATED BY ANY OTHER LAW. Assignor confirms that Assignee is relying solely upon its own investigation of the Assigned Tangible Personal Property.

This Bill of Sale is subject to all of the provisions in that certain Agreement of Sale between Assignor and Assignee, dated as of _____, 2025.

This Bill of Sale may be executed in two or more counterpart copies, all of which counterparts shall have the same force and effect as if all parties hereto had executed a single copy of this Bill of Sale.

*[Balance of Page Intentionally Left Blank; Signature Page Follows]*

Exhibit C-2

EXECUTED to be effective as of date set forth above.

**ASSIGNOR**:

_____

**ALFRED T. GIULIANO**, in his capacity as the
Chapter 7 Trustee for the bankruptcy estate of The
University of the Arts, a Pennsylvania non-profit
corporation

**ASSIGNEE:**

_____,
a _____ _____

By:_____
Name:_____
Title:_____

Exhibit C-3

LEGAL\76068031\1

## Exhibit D

### Form of Assignment of Intangible Property

### ASSIGNMENT OF INTANGIBLE PROPERTY

THIS ASSIGNMENT OF INTANGIBLE PROPERTY (this "Assignment") is made as of _____, 20[__] (the "**Effective Date**"), from Alfred T. Giuliano, in his capacity as Chapter 7 Trustee for the bankruptcy estate of The University of the Arts, a Pennsylvania non-profit corporation ("**Assignor**"), to [_____], a [_____ _____] ("**Assignee**").

## RECITALS

J.      Concurrently with the execution and delivery of this Assignment, Assignor is conveying to Assignee, by Special Warranty Deed, those certain tracts of land (the "**Land**") more particularly described on Exhibit A, together with all of the improvements located thereon (the "**Improvements**"), and by Bill of Sale and Assignment, certain personal property, if any, owned by Assignor located on or used in connection with the Land or the Improvements (the "**Assigned Tangible Personal Property**").

K.      Assignor desires to sell, assign, transfer and convey to Assignee, and Assignee desires to accept and obtain, certain Intangible Property (as defined below) and, subject to the terms and conditions set forth herein.

**NOW, THEREFORE**, for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable consideration in hand paid by Assignee to Assignor, and the mutual covenants set forth herein, the receipt and sufficiency of which are hereby acknowledged, Assignor does hereby SELL, ASSIGN, CONVEY, TRANSFER, SET OVER and DELIVER unto Assignee to the extent lawfully assignable at no cost to Assignor, without recourse or warranty, expressed or implied, all of Assignor's right, title and interest, if any, in, to and under all occupancy certificates or permits or their local equivalent issued in the name of Assignor relating to, or used by Assignor in connection with the operation and maintenance of the Land and the Improvements, and all existing guarantees and warranties of physical components of all or any portion of the Improvements, and all drawings, blueprints, plans and specifications, manuals, booklets and governmental approvals, if any, which exist as of the Effective Date and relate exclusively to the operation and maintenance of the Land and the Improvements (collectively, the "**Intangible Property**").

TO HAVE AND TO HOLD the foregoing described Intangible Property unto Assignee, its successors and assigns, forever.

Assignee acknowledges that Assignor makes no representation or warranty with respect to the Intangible Property, IT BEING THE INTENTION OF ASSIGNOR AND ASSIGNEE TO EXPRESSLY NEGATE AND EXCLUDE ALL WARRANTIES WHATSOEVER. Assignor confirms that Assignee is relying solely upon its own investigation of Intangible Property.

Docusign Envelope ID: CB5A99B1-935E-4740-9407-518AC81C2DBE

This Assignment is made by Assignor and accepted by Assignee subject to the provisions set forth in that certain Agreement of Sale between Assignor and Assignee, dated as of _____, 2025.

This Assignment and the sale, assignment, conveyance transfer, setting over and delivery of the INTANGIBLE PROPERTY is made "as is" "where is" and with all faults without recourse, representation or warranty of any kind whatsoever, expressed or implied.

This Assignment shall be binding on and inure to the benefit of the parties hereto, their heirs, executors, administrators, successors in interest and assigns.

This Assignment shall be governed by and construed in accordance with the laws of the State in which the Land is located.

This Assignment may be executed in multiple counterparts, and all such executed counterparts shall constitute the same agreement. It shall be necessary to account for only one such counterpart in proving this Assignment.

*[No further text on this page. Signature page follows]*

Exhibit D-2

EXECUTED to be effective as of date set forth above.

**ASSIGNOR**:

_____

**ALFRED T. GIULIANO**, in his capacity as the Chapter 7 Trustee for the bankruptcy estate of The University of the Arts, a Pennsylvania non-profit corporation

**ASSIGNEE:**

_____,

a _____ _____

By:_____

Name:_____

Title:_____

Exhibit D-3