**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>THE UNIVERSITY OF THE ARTS, *et al*.,<br><br>Debtors. | CHAPTER 7<br><br>Case No. 24-12140 (BLS) |
| STEPHANIE CAWLEY, CHARIS DUKE, NICK EMBREE, LAURA FRAZURE, COLIN KENNEY, JACQUELINE MANNI, KEVIN MERCER, REBECCA JEAN MURPHY, BRADLEY PHILBERT, KARL STAVEN, RICHARD REIN, ROSEMARY SAVOIA, BRAD M. SCHUTTS, DANIEL O. TUCKER, MIKHAIL SERGEEV, LAURA GRUTZECK, CAROLINA BLATT, BETH COUTURE, JEANETTE L. PADILIONI, ELISA M. SEEHERMAN AND JENNY L. NEFF,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNIVERSITY OF THE ARTS.<br><br>Defendant. | Adversary Pro. No. 26-50974 (BLS) |

**JOINT MOTION FOR ENTRY OF AN ORDER:**
**CERTIFYING A CLASS FOR SETTLEMENT PURPOSES, (II) APPOINTING PLAINTIFFS AS CLASS REPRESENTATIVES AND PLAINTIFFS' COUNSEL AS CLASS COUNSEL, (III) APPOINTING ANALYTICS AS SETTLEMENT ADMINISTRATOR, (IV) PRELIMINARILY APPROVING SETTLEMENT, (V) APPROVING CLASS NOTICE, AND (VI) SCEDULING FAIRNESS HEARING**

# TABLE OF CONTENTS

**RELIEF REQUESTED** ..... 1

**JURSIDICTION AND VENUE** ..... 2

**BACKGROUND** ..... 2

**ESSENTIAL TERMS OF THE AGREEMENT** ..... 4

**BASIS FOR RELIEF REQUESTED** ..... 8

**A. The Court Should Certify the Class.** ..... 8

**i. The Rule 23(a) Criteria.** ..... 10

**ii. The Rule 23(b) Criteria.** ..... 12

**B. The Court Should Approve the Settlement Pursuant to Bankruptcy Rule 9019.** ..... 14

**i. Standards for Approval of the Settlement Agreement.** ..... 15

**ii. Application of the Martin Factors to the Proposed Settlement.** ..... 16

**C. The Court Should Preliminarily Approve the Settlement.** ..... 17

**D. The Court Should Set a Fairness Hearing and Finally Approve the Settlement at the Fairness Hearing.** ..... 20

**E. The Court Should Approve Class Counsel's Attorneys' Fees and Costs** ..... 21

**F. The Court Should Approve the Service Payments to the Class Representatives.** ..... 24

**G. Proposed Notice Schedule.** ..... 26

**CONCLUSION** ..... 27

# TABLE OF AUTHORITIES

**Cases**

*Aguiar v. Quaker Fabric Corporation,*
Adv. Proc. No. 07-51716-KG (Bankr. D. Del.) ... 26

*Amchem v. Windsor*,
521 U.S. 591 (1997) ... 9, 12, 13

*Austen v. Archway Cookies*,
Adv. Proc. No. 08-51530-CSS (Bankr. D. Del.) ... 25

*Baby Neal v. Casey*,
43 F.3d 48 (3d Cir. 1994) ... 11

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d Cir. 2006) ... 11

*Beherend v. Comcast Corp.*,
245 F.R.D. 195 (E.D. Pa. 2007) ... 10

*Bergeron v. DGI Services, LLC*,
Case No. 11-2712-JNP (Bankr. D. Del.) ... 25

*Blum v. Stenson*,
465 U.S. 886 (1984) ... 21

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ... 21

*Bradburn Parent Teacher Store, Inc. v. 3M*,
513 F. Supp. 2d 322 (E.D. Pa. 2007) ... 23, 24

*Capizzi et al v. AWTR Liquidation, Inc.,*
Adv. Proc. No. 2:13-ap-01209-NB (Bankr. C.D. CA) ... 26

*Cullen v. Whitman Med. Corp.*,
197 F.R.D. 136 (E.D. Pa. 2000) ... 25

*Eisen v. Carlisle & Jacquelin*,
391 F.2d 555 (2d Cir. 1968), *vacated on other grounds*, 417 U.S. 156 (1974). ... 12

*Etzelberger v. FAH Holdings, Inc.*,
Case No. 13-13087-BLS (Bankr. D. Del.) ... 26

*Gates v. Rohm & Hass Co.*,
248 F.R.D. 434 (E.D. Pa 2008) ... passim

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975). ... 20

*Glaberson v. Comcast Corp.*,
Case No. 03-6604, 2015 WL 5582251 (E.D. Pa. Sept. 22, 2015) ... 23

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000) ........ 22

*In re AT&T Corp. Secs. Litig.*,
455 F.3d 160 (3d Cir. 2006) ........ 23

I*n re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ........ 20, 22, 24

*In re Charles Street, Inc.*,
209 B.R. 618 (S.D.N.Y. 1997) ........ 15

*In re Cmty. Bank of Northern Virginia,*
*Case No.. MDL 1674, 03-0425, 2008 WL 3833271 (W.D. Pa., August 15, 2008), vacated and remanded by In re Cmty. Bank of Northern Virginia, 622 F.3d 275 (3rd Cir. 2010)* ........ 21

*In re Community Bank of Northern Virginia*,
418 F.3d 277 (3rd Cir. 2005) ........ 9, 12, 17, 20

*In re Culmtech, Ltd.*,
118 B.R. 237 (Bankr. M.D. Pa. 1990) ........ 18

*In re Dow Corning Corp.*,
198 B.R. 214 (Bankr. E.D. Mich. 1996) ........ 15

*In re Flonase Antitrust Litig.*,
951 F. Supp. 2d 739 (E.D. Pa. 2013) ........ 23

*In re General Motors Corp.*,
55 F.3d 768 (3d Cir. 1995) ........ 9, 18, 20

*In re Ikon Office Solutions, Inc. Secs. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000) ........ 22, 23

*In re Jasmine, Ltd.*,
258 B.R. 119 (Bankr. D.N.J. 1999) ........ 15

*In re Key3Media Group, Inc.,*
336 B.R. 87 (Bankr. D. Del. 2005) ........ 14, 15, 16, 17

*In re Louise's, Inc.*,
211 B.R. 798 (D. Del. 1997) ........ 14

*In re Martin*,
91 F.3d 389 (3d Cir. 1996) ........ 15, 16, 17, 18

*In re Marvel Entertainment Group, Inc.,*
222 B.R. 243 (Bankr. D. Del. 1998) ........ 14, 15, 17

*In re Nationwide Sports Distributors, Inc.*,
227 B.R. 455 (Bankr. E.D. Pa. 1998) ........ 16

*In re Prudential*,
148 F.3d 283 (3rd Cir. 1998) ........ 13, 19

*In re RFE Industries, Inc.*,
283 F.3d 159 (3d Cir. 2002) ..... 14

*In re Rite Aid Corp. Secs. Litig.*,
396 F.3d 294 (3d Cir. 2005). ..... 23

*In re Spielfogel*,
211 B.R. 133 (Bankr. S.D.N.Y. 1997) ..... 15

*In re W.T. Grant Co.*,
699 F.2d 599 (2d Cir. 1983) ..... 15

*Johnston v. HBO Film Management, Inc.*,
265 F.3d 178 (3d Cir. 2001) ..... 10, 12

*Jones v. Alliance Bancorp*,
Adv. Proc. No. 07-51799-CSS (Bankr. D. Del.) ..... 25

*Kohlstadt v. Solyndra, LLC.*,
Adv. Proc. No. 11- 53155-MFW (Bankr. D. Del.) ..... 26

*Levit v. Filmways, Inc.*,
620 F. Supp. 421 (D. Del. 1985) ..... 23

*Moskovitz v. Loop*,
128 F.R.D. 624 (E.D. Pa. 1989) ..... 10

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
259 F.3d 154 (3d Cir. 2001) ..... 10

*Powers v. Lycoming Engines*,
245 F.R.D. 226 (E.D. Pa. 2007) ..... 10, 11

*Smith v. Professional Billing & Mgmt. Sys., Inc.*,
Case No. 06-cv-04453, 2007 WL 4191749 (D.N.J. Nov. 21, 2007) ..... 17

*Stewart v. Abraham*,
275 F.3d 220 (3d Cir. 2001) ..... 10

*Thomay, et al. v. Klausner Lumber One LLC,*
Case No. 20-50602-KBO (Bankr. D. Del.) ..... 25

*TMT Trailer Ferry, Inc. v. Anderson*,
390 U.S. 414 (1968) ..... 16, 17

*Turner et al. v. Klausner Lumber Two, LLC,*
Case No. 20-115189-KBO (Bankr. D. Del) ..... 25

**Statutes**

Bankruptcy Code, 11 U.S.C. §-

11 U.S.C. § 105 ..... 2
11 U.S.C. § 105(a) ..... 14
11 U.S.C. § 507(a)(4) ..... 5
11 U.S.C. §§ 701 - 784 ..... 3

CA Civ. Code § 1542 .......... 8

Internal Revenue Code,
26 U.S.C. § 468B .......... 5

Judiciary and Judicial Procudure, US Code Title 28

28 U.S.C. § 1334 .......... 2
28 U.S.C. § 1408 .......... 2
28 U.S.C. § 1409 .......... 2
28 U.S.C. § 157(b)(2). .......... 2

Pennsylvania Wage Payment and Collection Law,
43 P.S. § 260.1 *et seq*. ("PA WPCL") .......... 2

Workers Adjustment and Retraining Notification Act ("WARN Act"),
29 U.S.C. § 2101 *et seq.* .......... 2, 7

29 U.S.C. § 2101(a)(2) -(3) .......... 5, 8
29 U.S.C. § 2101(a)(5) .......... 5, 8
29 U.S.C. § 2101(a)(6) .......... 5, 8

**Regulations**

U.S. Department of Labor WARN Act Regulations, 20 C.F.R. §§ 639.1 *et seq*

20 C.F.R. §§ 639.3(b)-(c) .......... 5, 8
20 C.F.R. § 639.3(e) .......... 5, 9
20 C.F.R. § 639.3(f) .......... 5, 8

**Rules**

Federal Rules of Bankruptcy Procedure,

BANKR. R. 7023 .......... 2
BANKR. R. 9019 .......... 2
BANKR. R. 9019(a) .......... 14

Federal Rules of Civil Procedure,

FED. R. CIV. P. 23 .......... 9
FED. R. CIV. P. 23(a)(2) .......... 10
FED. R. CIV. P. 23(a)(3) .......... 11
FED. R. CIV. P. 23(a)(4) .......... 11, 12
FED. R. CIV. P. 23(b) .......... 9
FED. R. CIV. P. 23(b)(3) .......... 9, 13
FED. R. CIV. P. 23(c)(2)(B) .......... 19
FED. R. CIV. P. 23(e) .......... 18
FED. R. CIV. P. 23(e)(2) .......... 20
FED. R. CIV. P. 23(h) .......... 21

**Treatises**

9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993) .......... 18

Stephanie Cawley, Charis Duke, Nick Embree, Laura Frazure, Colin Kenney, Jacqueline Manni, Kevin Mercer, Rebecca Jean Murphy, Bradley Philbert, Karl Staven, Richard Rein, Rosemary Savoia, Brad M. Schutts, Daniel O. Tucker, Mikhail Sergeev, Laura Grutzeck, Carolina Blatt, Beth Couture, Jeanette L. Padilioni, Elisa M. Seeherman and Jenny L. Neff ("Plaintiffs" and "Class Representatives"), on behalf of themselves and all others similarly situated, together with Alfred T. Giuliano, not individually but solely in his capacity as the Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of The University of the Arts (the "Debtor" or "Defendant"), by and through their counsel (together, the "Parties"), hereby jointly submit this motion, pursuant to section 105 of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 23 of the Federal Rules of Civil Procedure (the "Civil Rules"), applicable hereto by Bankruptcy Rule 7023, for entry of an order: (i) certifying a class for settlement purposes only; (ii) appointing Plaintiffs as class representatives and Plaintiffs' counsel as class counsel ("Class Counsel"); (iii) appointing Analytics as the settlement administrator; (iv) preliminarily approving the settlement described in the Settlement Agreement (attached hereto as **Exhibit A**); (v) approving the form and manner of notice to the members of the Class (as described in the Motion and Settlement Agreement) (attached hereto as **Exhibit C**); and (vi) scheduling a fairness hearing to consider final approval of the Settlement.

In support of the Motion, the Parties respectfully represent as follows:

## RELIEF REQUESTED

1. By this Joint Motion, the Parties request that the Court enter an order: (i) certifying a class for settlement purposes only; (ii) appointing Plaintiffs as class representatives and Plaintiffs' counsel as class counsel ("Class Counsel"); (iii) appointing Analytics as the settlement administrator; (iv) preliminarily approving the settlement described in the Settlement Agreement; (v) approving the

form and manner of notice to the members of the Class (as described in the Motion and Settlement Agreement); and (vi) scheduling a fairness hearing to consider final approval of the Settlement. A proposed form of Preliminary Approval Order is attached hereto as **Exhibit B**. In further support of the Motion, the Parties rely upon the Declaration of Ryan Allen Hancock and Eric Lehtzin, and all prior pleadings and exhibits filed in this action.

## JURSIDICTION AND VENUE

2. This Court has jurisdiction over the Motion under 28 U.S.C. § 1334.

3. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

4. Venue is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are section 105 of the Bankruptcy Code, and Bankruptcy Rules 9019 and 7023.

## BACKGROUND

5. On or about May 31, 2024, Plaintiffs and other employees of Defendant who worked at, reported to, or received assignments from Defendant's campus in Philadelphia or were associated with its facility located at 320 and 320R S. Broad Street, Philadelphia, PA (collectively, the "Facilities") were instructed to stop working on various dates between June 7, 2024, and later.

6. On June 4, 2024, Plaintiffs Brad M. Schutts, Daniel O. Tucker, Mikhail Sergeev, Laura Grutzeck, Carolina Blatt, Beth Couture, Jeanette L. Padilioni, Elisa M. Seeherman, and Jenny L. Neff, on behalf of themselves and purported similarly situated former employees, filed a Complaint against Defendant, alleging violations of the Workers Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101 *et seq.*, and Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq*. ("PA WPCL") (the "Schutts Action") [Civ. Action No. 2:24-cv-024] in the United States District Court for the Eastern District of Pennsylvania ("EDPA District Court").

7. On June 5, 2024, Plaintiffs Stephanie Cawley, Charis Duke, Nick Embree, Laura Frazure, Colin Kenney, Jacqeline Manni, Kevin Mercer, Rebecca Jean Murphy, Bradley Philbert, Karl Staven, Richard Rein, and Rosemary Savoia, on behalf of themselves and purported similarly situated former employees, filed a Complaint against Defendant alleging violations of the WARN Act and PA WPCL (the "Cawley Action") [Civ. Action No. 2:24-cv-02445] in the EDPA District Court.

8. On June 27, 2024, Plaintiffs filed the Consolidated Class Action Complaint [D.I. 10] in the PA Litigation against Defendant in the EDPA District Court, alleging violations of the WARN Act and PA WPCL, consolidating the Shutts Action and Cawley Action under the caption: *In re: University of the Arts WARN Act Litigation*, EDPA District Court, Civ. Action No. 2:24-cv-02420 (the "PA Litigation").

9. On July 29, 2024, Defendant filed Defendant's Answer to Consolidated Class Action Complaint and Affirmative Defenses [D.I. 20].

10. On September 13, 2024, the Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") [Bankr. Case No. 24-12140-BLS].

11. On or about September 13, 2024, the Trustee was appointed as trustee of the Debtor's estate pursuant to section 701(a) of the Bankruptcy Code.

12. On September 17, 2024, Plaintiffs filed their First Amended Consolidated Class Action Complaint [D.I. 30] in the PA Litigation against Defendant in the EDPA District Court, alleging violations of the WARN Act and PA WPCL;

13. On September 19, 2024, a suggestion of bankruptcy was filed in the PA Litigation on, which stayed litigation of the PA Litigation [D.I. 32].

14. Thereafter, Plaintiffs' counsel and Trustee, informally exchanged their theories of the case and relevant documents, including payroll data and other information.

15. In March 2026, following arm's length negotiations, the Parties reached agreement in principle on a compromise that will fully and finally resolve Class priority claims against the Debtor (the "Settlement"), which is subject to the terms hereof.

16. Thereafter, the Parties continued to negotiate the terms of the Settlement which resulted in the Parties executing an agreement on October 23, 2026 (the "Settlement Agreement"), as copy of which is attached hereto as **Exhibit A**.

17. On October 26, 2026, Plaintiffs filed a complaint in the Bankruptcy Court substantially similar to their First Amended Consolidated Class Action Complaint, commencing Adversary Proceeding No. 26-50974-BLS (the "WARN Act Litigation") in order to effectuate the Settlement and to provide this Court with jurisdiction over the Settlement.

18. To avoid extensive, costly and uncertain litigation, the Trustee and the proposed Class desire to enter into the Settlement Agreement of the Action, subject to the Court's approval, to resolve any and all demands, claims, damages and causes of action, present and future, arising out of or relating in any way to Plaintiffs WARN Act Litigation claims.

## ESSENTIAL TERMS OF THE AGREEMENT

19. The Parties have reached an agreement, subject to this Court's approval. The essential terms of the Settlement Agreement are as follows[1]:

**a.** **Definition of the Class:** A settlement class shall be certified for settlement purposes

[1] This is a summary of the terms of the Settlement Agreement. In the event there is any ambiguity or inconsistency, the terms set forth in the Settlement Agreement shall govern. Capitalized terms not otherwise defined herein shall have the meaning given to such terms in the Settlement Agreement.

only pursuant to Rules 23(b)(3) and 23(e)(2) of the Federal Rules as made applicable to these proceedings by Bankruptcy Rule 7023. The Settlement Class shall be defined as:

(i) were employed by the Debtor at one or more sites of employment qualifying pursuant to 29 U.S.C. § 2101(a)(2); suffered an "employment loss," as that term is defined in 29 U.S.C. § 2101(a)(6) and 20 C.F.R. § 639.3(f), as part of, or as the reasonably foreseeable result of, a "plant closing" or "mass layoff," as those terms are defined in 29 U.S.C. § 2101(a)(2)-(3) and 20 C.F.R. §§ 639.3(b)-(c), on or about June 7, 2024; meet the definition of "affected employee" as set forth in 29 U.S.C. § 2101(a)(5), 20 C.F.R. § 639.3(e); and (iv) do not file a timely request to opt out of the Class.

In addition, Willig, Williams & Davidson and Edelson Lechtzin LLP shall be appointed Class Counsel ("Class Counsel") and Plaintiffs Stephanie Cawley, Charis Duke, Nick Embree, Laura Frazure, Colin Kenney, Jacqueline Manni, Kevin Mercer, Rebecca Jean Murphy, Bradley Philbert, Karl Staven, Richard Rein, Rosemary Savoia, Brad M. Schutts, Daniel O. Tucker, Mikhail Sergeev, Laura Grutzeck, Carolina Blatt, Beth Couture, Jeanette L. Padilioni, Elisa M. Seeherman and Jenny L. Neff shall be appointed Class Representatives for the Settlement Class created under the Settlement Agreement.

**b. <u>Allowance of and Distribution on Class Claim:</u>**

i. On the Effective Date, the Settlement Class, in full and final settlement of the WARN Action and the claims asserted therein, shall be granted an aggregate allowed priority claim against Debtor pursuant to 11 U.S.C. § 507(a)(4) of one million, eight hundred fifty thousand dollars ($1,850,000) (the "Allowed Class Claim"), which amount shall be subject to the 11 U.S.C. § 507(a)(4) statutory cap of $15,150 per employee, which is the statutory cap in effect as of the Order for Relief Date. The Allowed Class Claim is inclusive of all amounts payable in connection with the Settlement, including without limitation, Class Counsel's Fees, Class Counsel's Expenses, the Class Representative's Service Payment, costs of the Settlement Administrator (as each term is defined below) and any applicable, federal, state or local taxes.

ii. The Trustee, on behalf of the Debtor's Estate, shall pay the sum of one million, eight hundred fifty thousand dollars ($1,850,000) (the "Distribution Payment") to a qualified settlement fund to be established by the Administrator (defined below) in conformity with Internal Revenue Code § 468B (the "Qualified Settlement Fund") pursuant to written instructions provided by Class Counsel. Payment of the Distribution Payment to the Designated Settlement Fund shall be in complete and final satisfaction of the Allowed Class Claim. The Settlement Administrator, Analytics (the "Settlement Administrator") of the Qualified Settlement Fund shall provide the Trustee with a W-9 for the Qualified Settlement Fund to enable payment of the Distribution Payment to the Qualified Settlement Fund. Within ten (10) business days following the Effective Date, the Trustee will deposit into the Qualified Settlement Fund the Distribution Payment, which amount is inclusive of any Employer Payroll Taxes (as defined below).

c. **<u>Allocation of Allowed Class Claims and Distribution to Class Members:</u>** The funds remaining from the Gross Settlement Amount following the distribution of the Class Representative Service Award(s) and Class Counsel Fees, Expenses and Costs, and Settlement Administration costs (the "Net Settlement Amount") shall be allocated on a *pro rata basis* based upon the total number of settlement shares derived as follows:

i. The amount of $50 per Settlement Class Member shall be deducted from the Net Settlement Amount prior to the determination of the *pro rata* individual settlement shares and allocated to each Settlement Class Member so that each Settlement Class Member receives at least $50 in exchange for the Class's Released Claims.

ii. Each Settlement Class Member's Average Daily Wage Rate is to be calculated by dividing the sum of the gross wages reported on Settlement Class Member's paystubs covering their final eight (8) workweeks worked by the number of days worked during that period.

iii. For any Settlement Class Member for which the Class List does not contain an average number of days worked per workweek, the Settlement Administrator shall utilize three (3) days per workweek for part-time employees and Adjunct Professors and shall utilize five (5) days per workweek for full-time employees, Tenured Professors and salaried employees.

iv. Each Settlement Class Member's settlement shares shall be calculated by multiplying each Settlement Class Member's average daily wage rate by the lessor of sixty (60) or the number of days between the Settlement Class Member's last day worked and 60 days after May 31, 2024 (i.e. July 30, 2024),

v. The total number of settlement shares for all Class Members will be added together and the resulting sum will be divided by the Net Settlement Amount remaining after the $50 per Settlement Class Member is allocated. The value per settlement share will then be multiplied by each Settlement Class Member's number of settlement shares to determine the Settlement Class Member's Settlement Award.

**d. <u>Taxation of the Class Member's Pro Rata Share:</u>** The Settlement Administrator shall be solely responsible for calculating, withholding, and remitting payment of all income tax withholdings and statutory taxes (both employer and employee payroll taxes) to the taxing authorities in accordance with applicable law. Payroll withholding shall include all applicable federal and local income taxes, and statutory taxes, including, without limitation, Federal Insurance Contribution Act, federal and state unemployment insurance, state disability and insurance, and employment training amounts, associated with the distributions to Class Members receiving payments under this Settlement Agreement (collectively, "<u>Payroll Taxes</u>"). The Settlement Administrator shall calculate the amount owed for the employer's share of all applicable Payroll Taxes (the "<u>Employer Payroll Taxes</u>"), which amounts shall be paid from the Distribution Payment. All such Payroll Taxes shall be paid promptly by the Administrator to the appropriate taxing authorities. The Administrator shall pay the employees' shares of such taxes by deducting such amounts from each Class Member's Pro Rata Share.

**e.** **Responsibilities of the Settlement Administrator:** In addition to Section 19(d), the Settlement Administrator shall be responsible for the calculation of settlement shares, establishing and administering the Qualified Settlement Fund, the production and mailing of all notice required to be provided to Settlement Class Members, and the printing and mailing all disbursements of the settlement funds.

**f.** **Class Representative Service Payments:** Subject to approval of the Court, the Named Plaintiffs, as Class Representatives, shall be entitled to a one-time payment of $2,500.00, payable from the Allowed Class Claim in addition to their pro rata share of the Net Allowed Class Claim.

**g.** **Class Counsel Fees and Expenses:** Subject to the approval of the Court, Class Counsel shall receive twenty-five percent (25%) of the Distribution Payment, net of the Class Representative's Service Payment, Class Counsel's expenses not to exceed $15,000 ("Class Counsel's Expenses"), and the cost of the Settlement Administrator.

**h.** **Effective Date:** The Settlement Agreement shall become effective on the date on which the Final Settlement Order becomes a Final Order. The Final Settlement Order shall become a Final Order when the time for taking an appeal under Bankruptcy Rule 8002 has expired or, in the event that an appeal has been taken, the day the Final Settlement Order has been affirmed with no further right of appeal under the Bankruptcy Rules. In the event that 10% or more of the Class Members timely opt-out of the Settlement, the Trustee shall have the right to terminate the Settlement Agreement and, if the Trustee so determines, the Effective Date shall not occur.

**i.** **Released Claims:** Except for the rights expressly arising out of, provided for, or reserved in this Settlement Agreement, upon the Effective Date, the Class Members (except for any Opt-Outs), for and on behalf of themselves, and their respective predecessors, successors, assigns, heirs, personal representatives and estates (collectively, the "Releasing Parties"), do hereby fully and forever release and discharge the Trustee, the Estate, and the Debtor, and each of their respective current and former members, subsidiaries and affiliated entities, and each of their respective officers, directors, shareholders, agents, employees, partners, members, accountants, attorneys, representatives and other agents, and all of their respective predecessors, successors and assigns (collectively, the "Released Parties"), of and from any and all claims, demands, debts, liabilities, obligations, liens, actions and causes of action, costs, expenses, attorneys' fees, and damages of whatever kind or nature, at law, in equity and otherwise, whether known or unknown, anticipated, suspected, or disclosed, that the Releasing Parties may now have or hereafter may have against the Released Parties related to or based upon the WARN Act or any other federal, state, or local laws or regulations of similar effect or any priority wage and/or benefit claims (the "Released Claims"). The Released Parties expressly reserve the right to object to, offset, or oppose any and all claims, obligations, or causes of action, of any type, except those claims expressly allowed hereunder. Upon the Effective Date, the Class Members agree that any Released Claims shall be deemed waived without need for further court order, and the Class Members agree that any Released Claims that have been filed on behalf of, or filed by, any Class Members in the Bankruptcy Case are disallowed in their entirety and shall be deemed expunged from the claims register. In addition, each Releasing Party shall be deemed upon the Effective Date to have released

the Class Representative from any and all claims whether liquidated or unliquidated, contingent or non-contingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, known or unknown that he or she may have against the Class Representative, any successors or assignees to their legal interests, or any of their present or former agents, attorneys or consultants arising out of any Released Claim or the terms of this Settlement.

> To the fullest extent allowed under applicable law each person and entity granting a release under the Settlement hereby: (a) waives and relinquishes all statutory and common law protections purporting to limit the scope or effect of a release, whether due to lack of knowledge of any claim or otherwise, including, waiving and relinquishing the terms of any law, such as section 1542 of the California Civil Code, which provides that a release may not apply to material unknown claims. Each Class Member hereby expressly waives all rights under section 1542 of the California Civil Code and any similar rights under any other federal or state law or regulation of similar effect. Section 1542 of the California Civil Code provides as follows:
>
>> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

**j.** **The Settlement is Non-Reversionary – Residual:** Within twenty (20) days after the expiration of the Second Distribution, the Settlement Administrator shall notify Class Counsel of the total amount of unclaimed funds. Any unclaimed funds from the Second Distributions of the Qualified Settlement Fund to Settlement Class Members that are not deposited, endorsed, or negotiated within ninety (90) days shall be deemed residual funds ("Residual Funds"). Any remaining funds after the Second Distribution shall be divided and paid as *cy pres* 50% to the Pennsylvania IOLTA and 50% to Philadelphia Legal Assistance, the *cy pres* recipients agreed to by Class Counsel, which shall be submitted to the Court for approval at the Final Approval Hearing. No portion of the Residual Funds shall revert to or be retained by the Estate, Trustee, Settlement Administrator, or Class Counsel for any reason.

## BASIS FOR RELIEF REQUESTED

### A. The Court Should Certify the Class.

20. The proposed Settlement Class is defined as all individuals who (i) were employed by the Debtor at one or more sites of employment qualifying pursuant to 29 U.S.C. § 2101(a)(2); suffered an "employment loss," as that term is defined in 29 U.S.C. § 2101(a)(6) and 20 C.F.R. § 639.3(f), as part of, or as the reasonably foreseeable result of, a "plant closing" or "mass layoff," as those terms are defined in 29 U.S.C. § 2101(a)(2)-(3) and 20 C.F.R. §§ 639.3(b)-(c), on or about June 7, 2024; meet the definition of "affected employee" as set forth in 29 U.S.C. § 2101(a)(5), 20

C.F.R. § 639.3(e); and (iv) do not file a timely request to opt out of the Class. The proposed Settlement Class is 625 individuals.

21. Where, as in this case, the Court has not already certified a class, before approving a class settlement pursuant to Civil Rule 23, the Court must determine whether the proposed settlement class satisfies the certification requirements of Civil Rule 23. *Amchem v. Windsor*, 521 U.S. 591, 620 (1997); *In re Community Bank of Northern Virginia*, 418 F.3d 277, 300 (3rd Cir. 2005). "[A]ll Federal Circuits recognize the utility of Rule 23(b)(3) settlement classes." *Amchem*, 521 U.S. at 618. *Accord Community Bank*, 418 F.3d at 299. "The settlement class action device offers defendants the opportunity to engage in settlement negotiations without conceding any of the arguments they may have against class certification." *Community Bank*, 418 F.3d at 299. See also, *General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig*., 55 F.3d 768, 786 (3rd Cir. 1995) ("By specifying certification for settlement purposes only…the court preserves the defendant's ability to contest certification should the settlement fall apart."). Subdivisions (a) and (b) of Rule 23 "focus court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class Representatives." *Amchem*, 521 U.S. at 621.

22. To be certified, a class must satisfy the four requirements of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. FED. R. CIV. P. 23; *Community Bank*, 418 F.3d at 302. In addition, the class must satisfy the requirements of Rule 23(b)(1), (2), or (3). In this case, the Parties have agreed to request conditional certification under Rule 23(b)(3), "the customary vehicle for damage actions." *Id.* In order to certify a class under Rule 23(b)(3), the court must make two additional findings: predominance and superiority. That is, "[i]ssues common to the class must predominate over individual issues, and the class action device must be superior to other means of handling the litigation." *Gates v. Rohm & Hass Co.*, 248

F.R.D. 434, 442-43 (E.D. Pa 2008).

23. The proposed Settlement Class meets each of the foregoing elements.

**i. <u>The Rule 23(a) Criteria</u>**

24. Numerosity requires a finding that the putative class is "so numerous that joinder of all members is impracticable." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182 (3d Cir. 2001). "No single magic number exists satisfying the numerosity requirement." *Beherend v. Comcast Corp.*, 245 F.R.D. 195, 202 (E.D. Pa. 2007) (citing *Moskovitz v. Loop*, 128 F.R.D. 624, 628 (E.D. Pa. 1989). However, the Third Circuit "typically has approved classes numbering 40 or more." *Gates*, 248 F.R.D. at 440 (citing *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)).

25. Here the proposed class of 625 Settlement Class Members (listed in Schedule 1 to the Settlement Agreement) meets the numerosity requirement and joinder of all Class Members is impractical. The Class is sufficiently numerous to make joinder of all members impractical, and thus satisfies the numerosity requirement.

26. The commonality requirement requires the existence of at least one question of law or fact common to the Class. FED. R. CIV. P. 23(a)(2); *Johnston v. HBO Film Management, Inc.*, 265 F.3d 178, 184 (3d Cir. 2001). The commonality threshold is low, (*Powers v. Lycoming Engines*, 245 F.R.D. 226, 236 (E.D. Pa. 2007)), and does not require "an identity of claims or facts among class members," *Behrend*, 245 F.R.D. at 202. Further, the existence of individual facts and circumstances will not defeat commonality so long as the class members allege harm under the same legal theory.

27. Here, fundamental issues of law and fact regarding notice of termination, applicability of several defenses, measure of damages and priority of claims and attorneys' fees are common to all Settlement Class members.

28. Typicality requires that the "named plaintiff's" claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." FED. R. CIV. P. 23(a)(3); *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-296 (3d Cir. 2006) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994)). "Typicality requires a strong similarity of legal theories to ensure that the class Representatives' pursuit of their own goals will work to benefit the entire class." *Powers*, 245 F.R.D. at 236. "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Beck*, 457 F.3d at 295-296 (quoting *Baby Neal*, 43 F.3d at 55).

29. The putative Class Representatives do not allege that they were singled out for disparate treatment in the way they were terminated. Instead, they allege that they suffered harm as a result of the same conduct that allegedly injured the other Class Members – all persons who were employed with the Debtor who were terminated without cause on or about June 7, 2024 and who were allegedly not paid their WARN damages upon termination. Accordingly, the Court should find that the typicality requirement is met.

30. With respect to adequacy, a class representative must "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4); *Gates*, 248 F.R.D at 441. The adequacy inquiry "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck*, 457 F.3d at 296. Thus, the court must determine "whether the Representatives'

interests' conflict with those of the class and whether the class attorney is capable of representing the class." *Johnston*, 265 F.3d at 185.

31. The Court should find that the Class Representatives have and will continue to adequately represent the interests of the Class Members. Indeed, the Class Representatives have maintained contact with Class Counsel and assisted them throughout the litigation to the benefit of the Class.

32. The second element of Rule 23(a)(4) is met because Plaintiffs' counsel is "qualified, experienced and generally able to conduct the proposed litigation." *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968), *vacated on other grounds*, 417 U.S. 156 (1974). The Court should find that proposed Class Counsel is well qualified and experienced to represent the Class Members. The attorneys of Willig, Williams & Davidson and Edelson & Lechtzin LLP, proposed Class Counsel, have been appointed class counsel in dozens of class actions across the country. *See* Hancock and Lehctzin Declarations attached hereto as **Exhibit E**.

**ii. <u>The Rule 23(b) Criteria</u>**

33. Common questions of law and fact predominate over the individual issues (which appear to be limited to each Settlement Class Member's pay and benefits at the time of termination). Predominance tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem*, 521 U.S. at 623-24; *Community Bank*, 418 F.3d at 30809. The proper predominance inquiry "trains on the legal or factual questions that qualify each member's case as a genuine controversy, questions that preexist any settlement." *Amchem*, 521 U.S. at 623. "In this vein a predominance analysis is similar to the requirement of Rule 23(a)(3) that claims or defenses of the named representatives must be typical of the claims or defenses of the classes." *Community Bank*, 418 F.3d at 309.

34. Here, just as typicality exists, predominance also exists. All of the claims arise from an alleged violation of the WARN Act resulting from the terminations of the Debtor's employees on or about June 7, 2024, , or as the reasonably foreseeable consequence of the mass layoffs and/or plant closings ordered by Defendant on or about June 7, 2024, and from Debtor's alleged failure to given WARN notice to those terminated employees. Accordingly, the Court should find that the predominance requirement is met.

35. Rule 23(b)(3) also requires a determination that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3); *Gates*, 248 F.R.D. at 443. In effect, "[t]he superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Krell v. Prudential Inc. Co. (In re Prudential Inc. Co.)*, 148 F.3d at 283, 316 (3d Cir. 1998).

36. Rule 23 sets forth several factors relevant to the superiority inquiry: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." FED. R. CIV. P. 23(b)(3); *Gates*, 248 F.R.D. at 443. However, when a class certification is being considered for settlement purposes only, the difficulties in managing a class action are not considered. *Gates*, 248 F.R.D. at 443.

37. Here, a class action is superior to individual actions. First, the amount of each Class Member's claim is relatively small. Individually, there is little incentive in controlling the prosecution of separate actions. *See Amchem*, 521 U.S. at 617 ("The policy at the very core of the

class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.") (quotation and citation omitted). It is appropriate that all the claims against Debtor arising from the Class Representatives' allegations should be concentrated in this Court. In addition, determining the claims of some Class Members, but not all, could prejudice the claims of the remaining Class Members. Accordingly, the Court should find that the superiority element is met.

38. Based on the foregoing, the Court should certify the Settlement Class for settlement purposes only, appoint Plaintiff as Class Representative, and appoint Plaintiff's counsel as Class Counsel.

**B. The Court Should Approve the Settlement Pursuant to Bankruptcy Rule 9019.**

39. Bankruptcy Rule 9019(a) authorizes a bankruptcy court to approve a compromise or settlement after notice and a hearing, and section 105(a) of the Bankruptcy Code empowers a bankruptcy court to issue any order that is "necessary or appropriate." *In re Key3Media Group, Inc.,* 336 B.R. 87, 92 (Bankr. D. Del. 2005) ("[T]he authority to approve a compromise settlement is within the sound discretion of the bankruptcy court."). *See also In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997). When exercising such discretion, the bankruptcy court must determine whether the compromise is "fair, reasonable, and in the best interest [sic] of the estate." *Key3Media Grp., Inc. v. Pulver.com, Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005). *See also, Fry's Metals, Inc. v. Gibbons (In re RFE Industries, Inc.*), 283 F.3d 159, 165 (3d Cir. 2002); *In re Louise's, Inc.*, 211 B.R. at 801; *In re Marvel Entertainment Group, Inc.,* 222 B.R. 243, 249 (Bankr. D. Del. 1998).

40. The bankruptcy court is not required to determine that the proposed settlement is the best possible compromise. *In re Key3Media Group,* 336 B.R. at 92-93 (*citing In re Coram Healthcare Corp.*, 315 B.R. 321, 329 (Bankr. D. Del. 2004)). Rather, the settlement should be approved as long as it does not fall below the lowest point in the range of reasonableness. *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983). In this respect, it is unnecessary for the bankruptcy court to consider the information necessary to resolve the factual dispute, nor is it necessary for the bankruptcy court to "conclusively determine claims subject to a compromise." *Key3Media Group*, 336 B.R. at 92.

**i. <u>Standards for Approval of the Settlement Agreement</u>**

41. Courts consider the following four factors when determining whether a settlement is in the best interests of the estate: (i) the probability of success in the litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attendant thereto; and (iv) the paramount interest of the creditors and a proper deference to their reasonable opinions. *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *Aetna Casualty & Surety v. Jasmine, Ltd. (In re Jasmine, Ltd.*), 258 B.R. 119, 123 (Bankr. D.N.J. 1999); *Key3Media Group*, 336 B.R. at 93; *Marvel*, 222 B.R. at 249.

42. In addition to these criteria, bankruptcy courts have also scrutinized additional factors, such as: (i) the competency and experience of counsel who support the settlement; (ii) the relative benefits to be received by individuals or groups within the class; (iii) the nature and breadth of releases to be obtained by the parties to the settlement; and (iv) the extent to which the settlement is the product of arm's length bargaining. See *Fischer v. Pereira* (*In re Charles Street, Inc.*), 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. S.D.N.Y. 1997); *In re Dow Corning Corp*., 198 B.R. 214, 223 (Bankr. E.D. Mich. 1996).

**ii. <u>Application of the Martin Factors to the Proposed Settlement.</u>**

43. The results of a trial are uncertain, and the litigation here is complex. The Action involves numerous legal issues regarding the application of the WARN Act and its statutory and other legal defenses to complex facts. These issues include, *inter alia*: (i) whether the Debtor provided adequate notice to the Class Members under the WARN Act; (ii) whether the Debtor was entitled to give fewer than sixty (60) days' notice because of statutory exceptions under the WARN Act; (iii) the computation of the amount of damages; and (iv) whether attorneys' fees are to be awarded to the Class Members if they prevail.

44. Continued litigation would be costly and time-consuming and expose the Parties to significant litigation risks. Class Counsel has asserted that the Settlement Class's priority WARN damages of sixty (60) days' wages and benefits is approximately $5,586,015.22 recovery in bankruptcy. The settlement provides for payment more than 33.12% percent of the maximum gross priority WARN damages and eliminates any further accrual of litigation expenses in prosecuting the action against the Debtor, including trial and possible appeals. Accordingly, the parties respectfully submit that approval of the Settlement Agreement is warranted.

45. The Settlement Agreement is in the best interest of creditors and the estate. When determining whether a compromise is in the best interests of the estate, a bankruptcy court must "'assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal.'" *In re Key3Media Group*, 336 B.R. at 93 (*quoting In re Martin*, 91 F.3d at 393 (*citing TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968))). *See also In re Nationwide Sports Distributors, Inc.*, 227 B.R. 455, 460 (Bankr. E.D. Pa. 1998) ("[I]n deciding whether to approve a particular compromise, courts utilize various criteria designed to achieve the objective of having the Trustee or debtor in possession act in [the] best

interests of the estate"). To properly balance these values, a bankruptcy court should consider all factors "relevant to a full and fair assessment of the wisdom of the proposed compromise." *In re Marvel*, 222 B.R. at 249 (*quoting TMT Trailer Ferry, Inc.,* 390 U.S. at 424). *See also Key3Media Group*, 336 B.R. at 92 ("[t]he bankruptcy court must be 'apprised of all relevant information that will enable it to determine what course of action will be in the best interest of the estate.'") (*quoting In re Marti*n, 91 F.3d at 393).

46. The paramount interest of creditors and reasonable deference to their views also favors approval of the Settlement Agreement. Moreover, as set forth above, the Settlement Agreement spares the Debtor's estate the significant expense and uncertainty associated with the litigation of the myriad of liability issues under the WARN Act.

47. Applying each of the *Martin* factors, the Settlement Agreement should be approved.

**C. The Court Should Preliminarily Approve the Settlement.**

48. After class certification, approval of a class settlement generally requires two hearings: one preliminary approval hearing and one final "fairness" hearing. *Gates*, 248 F.R.D. 434. "The preliminary approval decision is not a commitment [to] approve the final settlement; rather, it is a determination that "there are no obvious deficiencies and the settlement falls within the range of reason."" *Gates v. Rohm & Haas Co*, 248 F.R.D. 434, 438 (E.D. Pa. 2008) quoting *Smith v. Professional Billing & Mgmt. Sys., Inc*., No. 06-cv-04453, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007); see also, *In re Community Bank of Northern Virginia*, 2008 WL 3833271 (W.D. Pa. Aug. 15, 2008). The preliminary approval determination requires the Court to consider whether "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."

*In re General Motors Corp*., 55 F.3d 768, 785-86 (3d Cir. 1995). When class certification is sought in conjunction with preliminary approval, then class member objections are not relevant. *Gates*, 248 F. R. D. at 444.

49. The Third Circuit has emphasized that "to minimize litigation and expedite the administration of a bankruptcy estate 'compromises are favored in bankruptcy.'" *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)). See also *In re Culmtech, Ltd*., 118 B.R. 237, 238 (Bankr. M.D. Pa. 1990) ("[C]ompromises are favored in bankruptcy and ... much of litigation in bankruptcy estates results in settlements").

50. The Settlement Agreement has no obvious deficiencies and falls well within the range of reason. Each of the above-cited factors favors preliminary approval of the Settlement Agreement.

51. First, the settlement is the result of good faith, arm's length negotiations between capable adversaries.

52. Second, the Parties have informally exchanged information during litigation and settlement negotiations.

53. Third, counsel for the parties have the experience and the skill to both vigorously litigate WARN Act claims and to determine when and to what extent settlement is appropriate.

54. Considering the foregoing, the Court should preliminarily approve the Settlement Agreement.

55. Once a settlement is preliminarily approved, notice of the settlement and of the final fairness hearing is provided to class members. Federal Rule of Civil Procedure 23(e) requires that all members of the class be notified of the terms of any proposed settlement. The Rule 23(e)

requirements are "designed to summarize the litigation and the settlement and to apprise class members of the right and opportunity to inspect the complete settlement documents, papers and pleadings filed in the litigation." *In re Prudential*, 148 F.3d 283, 326-27 (3rd Cir. 1998). The proposed Notice of Settlement and Fairness Hearing will be served by Class Counsel on each Class Member. Class Counsel proposes that within fifteen business days following entry of the order preliminarily approving the Notice of Settlement and Fairness Hearing, Class Counsel will mail the notice to each Class Member at their last known addresses according to the relevant books and records, and as updated by Class Counsel.

56. The proposed Class Notice includes each of the facts required by Rule 23(c)(2)(B). Specifically, the Class Notice contains the following information:

- That the Settlement Agreement shall become effective only if it is approved by the Court and an Approval Order is entered by the Court without material modification under Bankruptcy Rules 7023 and Rule 9019;
- That, upon approval, the Settlement Agreement shall be effective as to all Class Members in the Settlement Class;
- That Class Members have the right to opt-out of the Settlement Class and object to the Settlement Agreement either in person or through counsel at the Fairness Hearing; and
- That upon the Effective Date, all Released Claims (defined in the Settlement Agreement) of a Class Member in the Settlement Class (other than those claims to be paid under the terms of the Settlement Agreement) shall be waived, and that no person, including the Class Member, shall be entitled to any further distribution thereon.

57. The Class Notice also outlines the terms of the Settlement Agreement, including the attorneys' fees proposed to be paid to Class Counsel and describes how each Class Member may obtain a copy of the pleadings in the Action and a copy of the Settlement Agreement. The proposed Notice also states the date, time, location, and purpose of the Fairness Hearing, informs Class Members of their right to appear at the Fairness Hearing, and describes the procedure for objecting

to the Settlement Agreement. Accordingly, the proposed form of and manner to distribute the Notice of Settlement and Fairness Hearing is sufficient and should be approved.

**D. The Court Should Set a Fairness Hearing and Finally Approve the Settlement at the Fairness Hearing.**

58. At the Fairness Hearing, the Court should finally approve the Settlement Agreement. Civil Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed or compromised only with the court's approval." *Id*. Final approval of a settlement pursuant to Civil Rule 23(e) turns on whether the settlement is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2); I*n re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001). "This inquiry requires the court's independent and objective analysis of the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." *Community Bank*, 2008 WL 3833271 at * 5 (quoting *General Motors*, 55 F.3d at 785.).

59. The Third Circuit has held that the following nine factors are relevant in determining whether a proposed class settlement is fair, reasonable, and adequate: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the Debtor to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). This list is not exhaustive. *Community Bank*, 2008 WL 3833272 at *6.

60. The following *Girsh* factors strongly support approval of the Settlement Agreement: (i) further litigation will be complicated, protracted and expensive; (ii) Plaintiffs supports the Settlement Agreement and Class Counsel believes that the bulk of the other Class Members will have a favorable reaction to the Settlement Agreement and will not object to it; (iii) the Settlement Agreement was reached after the essential facts had been thoroughly investigated by Class Counsel and the parties had shared their respective views of the case during settlement negotiations; (iv) the risk that Plaintiffs would be unable to establish liability was significant because of the defenses asserted by Debtor if litigation had continued; and (v) when considered in light of the best possible recovery and the attendant risks, the settlement falls well within the range of reasonableness. The settlement provides for a $1,850,000.00 million allowed priority payment in settlement of the Class's WARN claim. See *In re Cmty. Bank of Northern Virginia, NO. MDL 1674, 03-0425, 2008 WL 3833271 (W.D. Pa., August 15, 2008), vacated and remanded by In re Cmty. Bank of Northern Virginia, 622 F.3d 275 (3rd Cir. 2010)* (finding that in light of the attendant risk a settlement representing 12.6% of the prayer was reasonable).

61. Based on the foregoing, the Court should finally approve the Settlement Agreement.

**E. The Court Should Approve Class Counsel's Attorneys' Fees and Costs**

62. Class Counsel is entitled to be paid a fee out of the settlement fund created for the benefit of the Class. Fed. R. Civ. P. 23(h); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980) (the Supreme Court has consistently recognized the common fund doctrine to permit attorneys who obtain a recovery for a class to be compensated from the benefits achieved as a result of their efforts); *Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984) (calculation of fees based on the common fund

doctrine is based on a percentage of the common fund recovered). The Trustee does not oppose this request and is neutral regarding the points discussed in this section of the Motion.

63. The law in this Circuit is settled that in common fund cases, fees for class counsel are awarded primarily based on a percentage of the common fund recovered for the class and that the lodestar is considered only when the court cannot otherwise come to a resolution of class counsel's fees. *In re Cendant Corp. Litig*., 264 F.3d 201, 221, 283 (3d Cir. 2001); *Gunter v. Ridgewood Energy Corp*., 223 F.3d 190, 195, n.1 (3d Cir. 2000). Class Counsel submits that the award of a fee of one-third of the Allowed Class Claim, as provided in the Settlement Agreement, is fully warranted.

64. The percentage award should be based on seven factors, among others, that were enumerated in *Gunter*, 223 F.3d at 195, n. 1, and then quoted with approval in *Cendant,* 264 F.3d at 283, as follows: (a) the size of the fund created and the number of persons benefited; (b) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (c) the skill and efficiency of the attorneys involved; (d) the complexity and duration of the litigation; (e) the risk of nonpayment; (f) the amount of time devoted to the case by plaintiffs' counsel; and (g) the awards in similar cases. An eighth factor — "the percentage likely to have been negotiated between private parties in a similar case" — which was considered in determining the percentage fee award from a common fund in the case *In re Ikon Office Solutions, Inc. Secs. Litig*., 194 F.R.D. 166, 193 (E.D. Pa. 2000).

65. Class Counsel submits that the application of these eight factors to the Action shows that the agreed attorneys' fee of twenty-five percent (25%) of the Allowed Class Claim should be approved for the following reasons:

- As to the size of the class and the recovery, the Class is 625 members and the $1,850,000.00 million Allowed Class Claim represents more than 33.12% percent of the gross maximum priority-dollar portion of the full claim amount.

- Plaintiffs support the Settlement and Class Counsel anticipates that few, if any, Class Members will object, and that those objections, if any, will not be substantial or merited.

- As shown by the favorable settlement of this matter achieved in the face of the difficult liability issues and bankruptcy procedural issues, Class Counsel provided legal services with considerable skill. The services were rendered with efficiency, considering the complexity of the issues, the difficulty of addressing the several defenses, and the need for discovery.

- The risk of non-payment at the outset was substantial as it was not known at that time whether there would be sufficient funds available to pay the putative class's claims. In addition, the defenses asserted by the Debtor created further risk of non-payment.

- As to fees in similar cases, Class Counsel submits that in class actions that Class Counsel has prosecuted, Class Counsel's requests for attorneys' fees – almost always for one-third the class recovery – have never been denied or reduced. In this case Class Counsel is seeking a reduced fee to maximize recovery to the Class.

- As to the percentage likely to have been negotiated between private parties in a similar case, Class Counsel was retained by the Class Representatives on a one-third contingency basis, plus expenses. Class Counsel has been consistently retained in other class actions on a one-third contingency basis. Class Counsel submits that each of the factors to be weighed in considering a fee request plainly favor the award of 25%.

66. The requested fee of twenty-five percent (25%) the proposed WARN Allowed Class Claim is supported by the percentage awards of one-third in other types of common fund cases. Moreover, the "Third Circuit favors the percentage-of-recovery method of calculating fee awards in common fund cases." *Glaberson v. Comcast Corp*., 2015 WL 5582251, at *11 (E.D. Pa. Sept. 22, 2015), citing *In re AT&T Corp. Secs. Litig*., 455 F.3d 160, 164 (3d Cir. 2006); *In re Rite Aid Corp. Secs. Litig*., 396 F.3d 294, 300 (3d Cir. 2005). As pointed out in *Ikon,* 194 F.R.D. at 194, attorneys' fee awards based upon a percentage of a common fund mostly "fall in the range of nineteen to forty-five percent." See *Levit v. Filmways, Inc*., 620 F. Supp. 421 (D. Del. 1985) (33% of the common fund); *In re Flonase Antitrust Litig*., 951 F. Supp. 2d 739, 751 (E.D. Pa. 2013) (attorneys' fees of $50 million, representing 33 1/3% of common fund of $150 million, approved); *Bradburn*

*Parent Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322, 336 (E.D. Pa. 2007) (attorneys' fees of 35% of common fund approved). Class Counsel submits that the fees of twenty-five percent of the total expected Class recovery on the WARN claims should be approved under the multi-factor test applicable in this Circuit to fee awards from common fund recoveries.

67. As to fees in similar cases, Class Counsel has consistently been awarded fees of one-third of the class recovery in class actions in courts across the country. *See* Hancock Declaration.

68. In addition, to an attorney fee of twenty-five percent (25%) of the Allowed Class Claim, Class Counsel is seeking reimbursement for out-of-pocket costs incurred in the litigation (including the costs associated with the production and mailing of the Class Notices) not to exceed $15,000.00. To date, Class Counsel has incurred $1,812.48 expenses prosecuting the Action and expects to incur additional expenses in connection with seeking preliminary and final approval of the Settlement.

69. In the Third Circuit reference to the lodestar, *i.e.,* the time reasonably spent at a reasonable hourly rate is disfavored as "very time consuming" and, is only to be resorted to if the court is concerned that the fee award may result in a "windfall." To avoid that result, courts can "cross-check" the percentage award against the lodestar. *Cendant*, 264 F.3d at 285; *Bradburn*, 513 F. Supp. 2d at 338. The Court should resolve the fee request without reference to the lodestar, especially in view of the burdens of carrying-out a lodestar "cross-check." Such a cross-check would, in any event, demonstrate that the requested fee results in a multiplier of less than .44.

**F. The Court Should Approve the Service Payments to the Class Representatives.**

70. The Class Representatives should be awarded the Service Payment for the significant work they undertook on behalf of the Class. *Bradburn,* 513 F. Supp. 2d at 342

("'Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'") (citing *Cullen v. Whitman Med. Corp*., 197 F.R.D. 136, 145 (E.D. Pa. 2000)). The Trustee does not oppose the requested service payments and is neutral regarding the points discussed in this section of the Motion.

71. Plaintiffs filed a federal lawsuit that is searchable on the internet and may become known to prospective employers when evaluating their application for future employment. Plaintiffs retained Class Counsel to commence this action shortly after being terminated from their employment with Debtor. They agreed to initiate the class action at a point when their future was uncertain and employment prospects potentially dimmed by suing their former employer. Plaintiffs have expended time and effort to assist with the preparation of pleadings and informal discovery. But for their efforts, the work done in prosecuting this case would have come to naught. Accordingly, the Service Payments are appropriate and justified as part of the overall Settlement considering the value of their services to the Class in the face of considerable risks.

72. Finally, the amount of the Service Payments of $2,500 is consistent and on scale with amounts awarded in WARN Act class actions. The following is a sampling of WARN cases where service payments were commensurate with the amount requested here: *Bergeron v. DGI Services, LLC*, No. 11-2712-JNP (Bankr. D. Del.) (awarding $10,000 service award in $1.1 million settlement); *Jones v. Alliance Bancorp*, Adv. Proc. No. 07-51799-CSS (Bankr. D. Del.) ($15,000 service award in $1 million settlement with Chapter 7 debtor); *Turner et al. v. Klausner Lumber Two, LLC,* Case No. 20-115189-KBO (Bankr. D. Del) ($10,000 service payment to class representative in $540,000 settlement); *Thomay, et al. v. Klausner Lumber One LLC,* Case No. 20-

50602-KBO (Bankr. D. Del.) ($20,000 service payment to class representative in $1.4 million settlement); *Austen v. Archway Cookies*, Adv. Proc. No. 08-51530-CSS (Bankr. D. Del.) ($10,000 service award to two class representatives in $4 million settlement with Chapter 7 debtor); *Aguiar v. Quaker Fabric Corporation,* Adv. Proc. No. 07-51716-KG (Bankr. D. Del.) (service award of $15,000 in $1 million settlement); *Etzelberger v. FAH Holdings, Inc*., Case No. 13-13087-BLS (Bankr. D. Del.) (service award of $20,000); *Kohlstadt v. Solyndra, LLC.*, Adv. Proc. No. 11-53155-MFW (Bankr. D. Del.) (D.I. 51) ($20,000 combined service award to two class representatives in $3.5 million settlement); *Capizzi et al v. AWTR Liquidation, Inc.,* Adv. Proc. No. 2:13-ap-01209-NB (Bankr. C.D. CA) (ECF 89) ($20,000 combined service award to two class representatives in $1 million settlement).

**G. Proposed Notice Schedule.**

73. The Court's entry of an Order granting preliminary approval of settlement would, among other things, (i) preliminarily approve the Settlement Agreement, (ii) direct notice of settlement to the Class, and (iii) schedule a fairness hearing to consider final approval of the Settlement Agreement. Accordingly, the Parties propose the following schedule:

- Estimated Award Calculation: ten (10) business days business days following entry of the Order granting Preliminary Approval of Settlement.

- The Settlement Administrator shall mail the Class Notice by first class mail no later than five (5) business days after approval of the Estimated Settlement Award calculations by Class Counsel.
- Deadline for Notice of Settlement to be mailed to Class Members: fifteen (15) business days following entry of the Order granting Preliminary Approval of Settlement.

- Deadline to opt-out of the Settlement: ten (10) days prior to the Final Fairness Hearing.

- Deadline to Object to the Settlement: seven (7) days prior the Final Fairness Hearing.

- Final Fairness Hearing: sixty (60) days from entry of the preliminary approval Order.

## CONCLUSION

WHEREFORE, the Parties respectfully request the Court to (i) enter an Order substantially in the form attached hereto as **Exhibit B**: (1) preliminarily approving the Settlement Agreement pursuant to Bankruptcy Rule 7023; (2) approving the form and manner of notice of settlement; (3) scheduling a Fairness Hearing to consider final approval of the Settlement Agreement; and (4) granting related relief, and (ii) enter a final Order substantially in the form attached hereto as **Exhibit D**, approving the Settlement Agreement following the Fairness Hearing and granting related relief.

Dated: October 28, 2026

CHIPMAN BROWN CICERO & COLE LLP,
On behalf of the Trustee

By: *<u>/s/ David Carickhoff</u>*
David Carickhoff, Esq.
Counsel to the Chapter 7 Trustee

GELLERT SEITZ BUSENKELL & BROWN, LLC,
EDELSON LECHTZIN LLP
WILLIG WILLIAMS & DAVIDSON,
on behalf of the Class Representatives and Class Members

By: *<u>/s/ Michael Busenkell</u>*
Michael Busenkell, Esq.
Class Counsel

*<u>/s/ Eric Lechtzin</u>*
Eric Lechtzin, Esq.
Class Counsel

*<u>/s/ Ryan Allen Hancock</u>*
Ryan Allen Hancock, Esq.
Class Counsel